# EXHIBIT A

## Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x

In re:                                            :        Chapter 11
                                                  :
SPHERIS INC., et al.                              :        Case No. 10-10352 (KG)
                                 Debtors.[1]      :
                                                  :        (Jointly Administered)
                                                  :
---------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(d)(1), AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion (the "Motion") dated February 3, 2010, seeking entry of an interim order (the, "Interim Order"), *inter alia*: (a) authorizing the debtors and debtors in possession in the above-captioned cases (the "Debtors") to obtain secured postpetition financing on a superpriority basis (the "DIP Facility") pursuant to the terms and conditions of that certain Senior Secured Super-Priority Debtor In Possession Financing Agreement dated as of February 3, 2010 (as the same may be amended, supplemented, restated or otherwise modified from time to time, (the "DIP Financing Agreement") by and among Spheris Operations LLC, in its capacity as borrower (the "Borrower"), Spheris Holding II Inc., Spheris Inc, Spheris Canada Inc., Spheris Leasing LLC and Vianeta Communications each in its capacity as a guarantor (collectively, the

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Spheris Inc. (5254); (ii) Spheris Holding II, Inc. (7969); (iii) Spheris Canada Inc. (9757); (iv) Spheris Leasing LLC (4780); (v) Spheris Operations LLC (1371); and (vi) Vianeta Communications (1121). The Debtors' executive headquarters are located at 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067.

"Guarantors"), and Ableco L.L.C., in its capacity as collateral agent (the "Collateral Agent"), Cratos Capital Management LLC in its capacity as administrative agent (the "Administrative Agent", and together with the Collateral Agent, the "DIP Agents") and the other lenders party thereto from time to time, each in their capacity as such (each, a "DIP Lender" and, collectively, the "DIP Lenders") on the terms of the DIP Financing Agreement, substantially in the form of Exhibit B attached to the Motion; (b) authorizing the Debtors to execute the DIP Financing Agreement and the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, as the same may be amended, restated, supplemented or otherwise modified from time to time (collectively with the DIP Financing Agreement, the "DIP Loan Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents; (c) granting the DIP Facility and all obligations owing thereunder and under the DIP Loan Documents to the DIP Agents and the DIP Lenders (collectively, and including all "Obligations" as described in the DIP Financing Agreement, the "DIP Obligations") first priority security interests in and liens on all of the DIP Collateral (defined herein); (d) granting allowed superpriority expense claims to the DIP Agents and the DIP Lenders; (e) authorizing the use of the Prepetition Lenders' (defined herein) Cash Collateral (defined herein); (f) providing adequate protection to the Prepetition Lenders for any diminution in value of the Prepetition Collateral (defined herein); and (g) scheduling pursuant to Bankruptcy Rule 4001(c)(2) a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order"); and due notice of the Interim Hearing having been given and the Interim Hearing having been held on February__, 2010; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and

the Court having noted the appearances of all parties in interest; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and

after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:[2]**

A.      Petition Date.  On February 3, 2010 (the "Petition Date"), the Debtors

commenced their chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of Delaware (the "Court").  The Debtors are operating their businesses and managing

their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee, examiner or committee of creditors holding unsecured claims appointed under

1102(a) of the Bankruptcy Code (the "Committee") has been appointed in any of the Chapter 11

Cases.

B.      Jurisdiction; Venue.  The Court has jurisdiction over the Chapter 11

Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion

is proper under 28 U.S.C. §§ 1408 and 1409.

C.      Prepetition Secured Loan Documents.  The Debtors are party to that

certain Financing Agreement dated as of July 17, 2007 (as amended, modified and supplemented

from time to time) (the "Prepetition Credit Agreement") by and among Ableco Finance LLC as

Collateral Agent, Cratos Capital Management LLC as Administrative Agent (in such capacity,

the "Prepetition Agents") and the other lenders from time to time party thereto (in such capacity,

the "Prepetition Lenders").  The Prepetition Credit Agreement is comprised of a term loan (the

---

[2]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as
findings of fact, pursuant to Bankruptcy Rule 7052.

"Term Loan") in the aggregate principal amount of $70,000,000, and a revolving credit facility (the "Revolving Loan") in an aggregate principal amount of up to $25,000,000.

D.    Prepetition Indebtedness.  For purposes of this Interim Order, the term "Prepetition Indebtedness" shall mean all amounts outstanding, as of the Petition Date, under the Prepetition Credit Agreement, including, without limitation, all Obligations as defined in the Prepetition Credit Agreement.

E.    Prepetition Liens.  To secure the Prepetition Indebtedness, the Debtors granted the Prepetition Agent for the benefit of the Prepetition Lenders liens and security interests (the "Prepetition Liens") upon and in all or substantially all of the Debtors' property and assets, as set forth in the Prepetition Credit Agreement and the related documentation (collectively, the "Prepetition Loan Documents") including, without limitation, real property, equipment, inventory, tax refunds, insurance proceeds, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and other tangible and intangible personal property and the proceeds and products thereof (the "Prepetition Collateral").

F.    Debtors' Acknowledgments & Stipulations.  In requesting the DIP Loans under the DIP Loan Documents, the Debtors acknowledge, represent, stipulate, and agree (which acknowledgments, representations, stipulations and agreements are subject to the rights of the Committee pursuant to paragraph 16 hereof) that:

(i)    the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral (defined below) to which any Debtor is a party;

(ii)     The Debtors have requested that the Prepetition Lenders consent to, among other things, (i) the Debtors' use of the Cash Collateral and (ii) the incurrence of the DIP Loans by the Borrowers and the Guarantors' guarantees of the DIP Loans under the DIP Loan Documents and the Debtors' granting of Postpetition Liens (defined herein) in connection therewith. The Debtors acknowledge and stipulate that the Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in exchange for the Debtors' use of such Cash Collateral to the extent of the aggregate diminution in value, if any, of the Prepetition Lenders' Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors of Cash Collateral, the priming of the Prepetition Lenders' security interests and liens in the Prepetition Collateral by the DIP Agents and the DIP Lenders pursuant to the DIP Loan Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(iii)     as of the Petition Date, (A) the aggregate principal amount of (i) the Term Loan is $67,521,867.00 plus accrued and unpaid interest of at least $27,044.53, plus fees, costs, and expenses incurred in connection therewith, (ii) the Revolving Loan is $5,706,600.90 plus accrued and unpaid interest of at least $2,219.21, plus fees, costs, and expenses incurred in connection therewith, (B) all of the Prepetition Indebtedness is unconditionally due and owing by the Debtors to the Prepetition Lenders; and (C) all claims in respect of the Prepetition Indebtedness are not subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(iv)     the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens other than the Permitted Priority Liens (as defined in the Prepetition Credit Agreement) and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(v)     the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Indebtedness of the Prepetition Agent and the Prepetition Lenders, the Prepetition Liens or the Prepetition Collateral and the security for these obligations and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Agent and the Prepetition Lenders;

(vi)     any payments made on account of the Prepetition Indebtedness to or for the benefit of the Prepetition Agents or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agents and the Prepetition Lenders were oversecured, were payments out of the Prepetition Agents' and the Prepetition Lenders' Prepetition Collateral, and such payments were made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors;

(vii)     all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined in G below) of the Prepetition Agents and the Prepetition Lenders;

(viii)    until such time as all DIP Obligations and the Prepetition Indebtedness are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Financing Agreement are terminated, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) either the liens and security interests provided to the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to the Carve-Out upon the occurrence and during the continuance of an Event of Default;

(ix)    until such time as all DIP Obligations and the Prepetition Indebtedness are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Financing Agreement are terminated, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, having priority equal or superior to the priority of the DIP Superpriority Claim (defined below) and the Adequate Protection Superpriority Claim (defined below) provided herein, except with respect to the Carve Out upon the occurrence and during the continuation of an Event of Default;

(x)    the DIP Agents are not control persons or insiders of the Debtors by virtue of any of the actions taken by the DIP Agents in respect of or in connection with the DIP Loans;

G.    <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in which the DIP Agents or the Prepetition Agents have, for the benefit of the

DIP Lenders or the Prepetition Lenders, respectively, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on or after the Petition Date, arising pursuant to this Interim Order or otherwise, and shall include, without limitation, (i) all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property upon which the DIP Agents or the Prepetition Agents hold a lien or a replacement lien, whether as part of the Prepetition Collateral, the Postpetition Collateral (defined below) or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of the Chapter 11 Cases, or arose or was generated thereafter, and (ii) all of the respective deposits, refund claims and rights in retainers of the Debtors upon which the DIP Agents or the Prepetition Agents hold a lien or replacement lien, whether as part of the Prepetition Collateral, Postpetition Collateral or pursuant to an order of the Court or applicable law or otherwise.

H.   <u>Purpose and Necessity of Financing & Use of Cash Collateral</u>.  The Debtors require the financing described in the Motion to operate their businesses and to fund, among other things, ongoing working capital requirements of the Debtors consistent with the terms set forth in the DIP Loan Documents, and for other purposes permitted by the DIP Loan Documents.  If the Debtors do not obtain authorization to borrow under the DIP Financing Agreement, the Debtors will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan

Documents is not available to the Debtors without granting the DIP Agents, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), (2), and (3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the loan facility provided under the DIP Loan Documents represents the best working capital financing available to them at this time.

   I.  <u>Good Cause Shown</u>. Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents and use of Cash Collateral is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents and through the use of the Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses. Among other things, entry of this Interim Order is intended to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their estates and their creditors. The Debtors' estates will be immediately and irreparably harmed if this Interim Order is not entered.

   J.  <u>Sections 506(c) & 552(b) Waivers</u>. In light of (i) the DIP Agents' and the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and to finance the Debtors' chapter 11 cases in accordance with the Budget (defined herein) and (ii) the Prepetition Agents' and the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and the DIP Liens, the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders are each entitled to a waiver of "any equities of

the case" claims under section 552(b) of the Bankruptcy Code and, subject to entry of the Final

Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K. <u>Good Faith</u>. The terms of the DIP Loan Documents, including the interest

rates and fees applicable thereto and intangible factors, are more favorable to the Debtors than

those available from alternative sources. Based upon the record before the Court, the DIP Loan

Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP

Lenders, the DIP Agents, and the Guarantors. Any DIP Loans and other financial

accommodations made to the Debtors by the DIP Agents on behalf of the DIP Lenders pursuant

to this Interim Order and the other DIP Loan Documents shall be deemed to have been extended

by the DIP Agents on behalf of the DIP Lenders in good faith, as that term is used in section

364(e) of the Bankruptcy Code, and the DIP Agents and the DIP Lenders shall be entitled to all

protections afforded thereby.

L. <u>Fair Consideration & Reasonably Equivalent Value</u>. All of the Debtors

will receive and have received fair and reasonable consideration in exchange for access to the

DIP Loans, the use of Cash Collateral, and all other financial accommodations provided under

the DIP Loan Documents and this Interim Order. The terms of the DIP Loan Documents are fair

and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their

fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M. <u>Immediate Entry of Interim Order</u>. The Debtors have requested

immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The

permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder

is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that

entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors

as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Disposition</u>. The Motion is granted on an interim basis on the terms set forth in this Interim Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits. This Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014. The terms and provisions of the DIP Loan Documents are approved on an interim basis.

**DIP FINANCING AUTHORIZATION**

2. <u>Authorization to Obtain Financing & Use of Cash Collateral</u>.

(a) The Debtors are hereby authorized to obtain postpetition financing (the "<u>DIP Loans</u>") immediately pursuant to the terms of this Interim Order on an interim basis (the "<u>Interim Facility</u>"), in the aggregate principal amount of up to $7,500,000 (the "<u>Maximum Interim Borrowing</u>") subject at all times to the Budget (as defined below) and the DIP Loan Documents. Available financing and advances under the DIP Financing Agreement shall be made to fund, in accordance with the Budget and the DIP Loan Documents, ongoing working capital requirements of the Debtors consistent with the terms set forth in the Budget and the DIP Loan Documents, interest, fees, and expenses in accordance with this Interim Order, the Budget and the DIP Loan Documents and any other amounts required or allowed to be paid in

accordance with this Interim Order but only as authorized by the Budget and the DIP Loan Documents.

(b)      The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Budget and the DIP Loan Documents, without further approval by the Court.

3.      <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)      Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case, including any amendments thereto.  Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver any deposit account control agreements, UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, including repayment of all DIP Obligations in cash, that are requested by the DIP Agents.

(b)      Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim Order.

(c)      Upon the request of the DIP Agents, the Prepetition Agents are authorized to make, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the DIP Agents to further perfect, preserve, and enforce the Postpetition Liens (defined below).

4.    Valid & Binding Obligations. All obligations under the DIP Loan Documents

shall constitute valid and binding obligations of each of the Debtors, enforceable against each of

them and each of their successors and assigns, in accordance with their terms and the terms of

this Interim Order, and no obligation, payment, transfer or grant of a security under the DIP Loan

Documents or this Interim Order shall be stayed, restrained, voidable or recoverable under the

Bankruptcy Code or under any applicable law (including, without limitation, under section

502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset,

recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims,

cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law

or regulation by any person or entity.

5.    Termination of DIP Loan Documents and Cash Collateral Usage.

Notwithstanding anything in this Interim Order to the contrary, the provisions of this Interim

Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall

expire, and the DIP Loans made pursuant to this Interim Order and the DIP Loan Documents

will mature, and together with all interest thereon and any other obligations accruing under the

DIP Loan Documents, will become due and payable (unless such obligations become due and

payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way

of acceleration or otherwise) on the date that is the earliest of (the "Termination Date") (i) 30

days from the date of the entry of this Interim Order in the event a Final Order granting the

Motion and approving the DIP Loan Documents shall not have been entered, (ii) if the Final

Order has been entered on or prior to 30 days following the date of entry of this Order, then May

4, 2010, (iii) the date of final indefeasible payment and satisfaction in full in cash of the DIP

Obligations and the termination of the commitments under the DIP Facility; (iv) the effective

date of any confirmed plan of reorganization in any or all of the Chapter 11 Cases; (v) the

consummation of the sale or other disposition of all of the capital stock or substantially all of the

assets of the Debtors whether done by one or a series of transactions; (vi) upon receipt of written

notice to the Debtors of the occurrence of (A) any violation by the Debtors of this Interim Order,

(B) any Event of Default or (C) breach of any negative covenant or affirmative covenant under

the DIP Loan Documents which breach is not cured within the period specified therefor in the

DIP Loan Documents, in each case immediately after expiration of the Remedies Notice Period

(defined herein); (vii) the dismissal of any of the Chapter 11 Cases or the conversion of any of

the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code; (viii) a trustee or an

examiner with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the

Bankruptcy Code) relating to the operation of the business of any Debtor is appointed in any of

the Chapter 11 Cases without the prior written consent of the DIP Agents (which consent may be

withheld in their sole discretion), or any Debtor applies for, consents to, acquiesces in or fails to

object to, any such appointment without the prior written consent of the DIP Agents (which

consent may be withheld in its sole discretion); (ix) this Interim Order is stayed, reversed,

vacated, amended, modified in any respect or subject to appeal without the prior written consent

of the DIP Agents; (x) this or any other Court enters an order or judgment in any of the Chapter

11 Cases modifying, limiting, subordinating or avoiding the priority of the DIP Obligations or

the perfection, priority or validity of the Superpriority Claim, Adequate Protection Claim or the

Postpetition Liens, the Replacement Liens or the Prepetition Liens (all as defined herein) or,

subject to entry of the Final Order, imposing, surcharging or assessing against the DIP Agents,

the DIP Lenders, the Prepetition Agents or the Prepetition Lenders or their claims or any DIP

Collateral or Prepetition Collateral any costs or expenses, whether pursuant to section 506(c) of

the Bankruptcy Code or otherwise, or (xi) such earlier date on which the DIP Loans shall

become due and payable in accordance with the terms of this Interim Order and/or the DIP Loan

Documents.

6.    Repayment of Prepetition Indebtedness.  Immediately upon entry of this Interim

Order, the Debtors are hereby authorized, pursuant to the terms set forth in the DIP Financing

Agreement and the Budget, to borrow or obtain cash advances under the DIP Loan Documents in

an amount sufficient to pay in full the Revolving Loans.  Subject to paragraph 16 herein, the

payment of the Revolving Loans shall be indefeasible.

7.    Authorization for Payment of DIP Financing Fees & Expenses.  All fees paid and

payable, and costs and/or expenses reimbursed or reimbursable (including, without limitation, all

fees, costs and expenses referred to in the DIP Loan Documents and the DIP Agents' attorneys'

fees and expenses), as set forth in the DIP Loan Documents, by the Debtors to the DIP Agents

are hereby approved, subject to this paragraph 7 (the "DIP Fees/Expenses").  The Debtors are

hereby authorized to pay all DIP Fees/ Expenses in accordance with the terms of the DIP Loan

Documents and this Interim Order, without the Debtors, the DIP Agents or the DIP Agents'

counsel having to file any further application with the Court for approval or payment of such DIP

Fees/Expenses. The Debtors are also authorized to pay all reasonable pre-petition and post-

petition out of pocket costs and expenses of the DIP Agents and DIP Lenders (including all

reasonable fees, expenses and disbursements of outside counsel and consultants) in connection

with the preparation, execution and delivery of the DIP Loan Documents and the funding of all

DIP Loans under the DIP Facility, the administration of the DIP Facility and any amendment or

waiver of any provision of the DIP Loan Documents and in connection with the enforcement or

protection of any of their rights and remedies under the DIP Loan Documents.  None of the DIP

Agents' nor the DIP Lenders' attorneys, financial advisors and accountants' fees and disbursements shall be subject to the prior approval of this Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Notwithstanding the foregoing, the Debtors shall, promptly after payment of invoices for any such fees and disbursements, provide copies of same to the United States Trustee and counsel for the Committee.

8. <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors, with the express written consent of the DIP Agents, may enter into any amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court, provided, however, that the Debtors shall provide the United States Trustee and counsel to the Committee with three (3) business days advance notice (which may be provided through electronic mail) prior to entering into any material amendments, consents, waivers or modifications to the DIP Loan Documents and the nature thereof.

## GRANTING OF POSTPETITION LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDERS

9. <u>DIP Lenders' Lien Priority</u>.

(a) To secure the DIP Obligations, the DIP Agents are hereby granted, for the benefit of the DIP Agents and the DIP Lenders, valid, enforceable and fully perfected, first priority priming liens on and senior security interests in (collectively, the "<u>Postpetition Liens</u>") all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created as of the Petition Date, including, without limitation, Cash Collateral, all accounts, receivables, inventory, goods, contracts, contract rights, investment property, instruments,

documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general

intangibles, payment intangibles, tax or other refunds, insurance proceeds, all proceeds received

in connection with the Confidential Settlement Agreement and Release dated as of December 23,

2009 among certain of the Debtors and CHS Community Health Systems Inc., and Community

Health Systems Professional Services Corporation, letters of credit, letter-of-credit rights,

supporting obligations, machinery and equipment, real property (including all facilities), fixtures,

leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock

entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) provided that the

capital stock is issued by a Person that is not a CFC (as defined in the DIP Financing Agreement)

or is a CFC and the pledge of 100% of the voting capital stock of such CFC could not reasonably

be expected to result in material adverse tax consequences to the Loan Parties (as defined in the

DIP Financing Agreement) in which case the pledge shall be limited to 65% of the voting capital

stock and the DIP Agent and the DIP Lenders shall have a lien on all proceeds of the capital

stock, and all of the issued and outstanding capital stock not entitled to vote (within the meaning

of Treas. Reg. Section 1 .956-2(c)(2)) of each subsidiary of such Debtor, all of the capital stock

of all other Persons that are not subsidiaries directly owned by such Debtor, money, investment

property, deposit accounts, all commercial tort claims and other causes of action arising under

the Bankruptcy Code or otherwise, including, without limitation, but subject to entry of the Final

Order, all claims, causes of action and recoveries realized pursuant to sections 542, 544, 545,

547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code (the "Avoidance Actions"),

and all proceeds, products, offspring, rents and profits of all of the foregoing and all cash and

non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral

described above (collectively, the "DIP Collateral"), subject only to (i) the Permitted Priority

Liens (as defined in the DIP Financing Agreement) and (ii) upon the occurrence and during the continuance of an Event of Default, the Carve-Out.

(b) The Postpetition Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Permitted Priority Liens.

(c) The Postpetition Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Agents or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agents, for the benefit of the DIP Agents and the DIP Lenders, a first priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors

in favor of the DIP Agents, for the benefit of the DIP Agents and the DIP Lenders, in accordance with the terms of the DIP Financing Agreement and the other DIP Loan Documents.

10.     DIP Lenders' Superpriority Claim. The DIP Agents, for the benefit of the DIP Agents and the DIP Lenders, are hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor cases under the Bankruptcy Code (including a case under chapter 7 of the Bankruptcy Code, the "Successor Cases") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of the Debtors and all proceeds thereof including, without limitation, subject to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of Avoidance Actions. The Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to, during the occurrence and continuance of an Event of Default (as defined in the DIP Financing Agreement), payment of the Carve-Out. Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

11.     Survival of Postpetition Liens & Superpriority Claim. The Postpetition Liens, Superpriority Claim, and other rights and remedies granted under this Interim Order to the DIP

Agents, for the benefit of the DIP Agents and the DIP Lenders, shall continue in this and any

Successor Cases and shall be valid and enforceable against any trustee appointed in the Debtors'

Chapter 11 Cases and/or upon the dismissal of any of the Debtor's Chapter 11 Cases or any

Successor Cases and such liens and security interests shall maintain their first priority as

provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in

cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan

Documents.

## CASH COLLATERAL AUTHORIZATION & GRANTING OF ADEQUATE PROTECTION FOR PREPETITION LENDERS

12.     <u>Adequate Protection for Prepetition Lenders</u>.  As adequate protection in respect of

any diminution in the value of the Prepetition Collateral resulting from the incurrence of the DIP

Obligations, the use of Cash Collateral, the granting of the Postpetition Liens, the imposition of

the automatic stay or otherwise, the Prepetition Agents and the Prepetition Lenders are hereby

granted (in each case subject to the Postpetition Liens, Permitted Priority Liens and the Carve

Out) the following ((a) through (e) below shall be referred to collectively as the "<u>Adequate</u>

<u>Protection Obligations</u>"):

(a)      <u>Adequate Protection Liens</u>.  The Prepetition Agents for the benefit of the

Prepetition Lenders are hereby granted (effective and perfected upon the date of this Interim

Order and without the necessity of execution by the Debtors of mortgages, security agreements,

pledge agreements, financing statements, and other agreements or instruments) valid, perfected,

postpetition security interests in and liens (the "<u>Replacement Liens</u>") on any and all of the assets

of the Debtors including those that fall within the definition of Prepetition Collateral and DIP

Collateral, <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary, the Replacement

Liens shall be and remain subject and subordinate to (i) the Postpetition Liens and/or payment of

any DIP Obligations on account thereof, (ii) the Permitted Priority Liens, (iii) permitted liens as set forth in the Prepetition Credit Agreement, and (iv) payment of the Carve-Out.

(b)     <u>Adequate Protection Superpriority Claims</u>. As further adequate protection, the Prepetition Agents and the Prepetition Lenders are hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and any other provision of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claim</u>"), *provided, however,* that for the purposes of this Interim Order, the Adequate Protection Superpriority Claim shall not attach to any proceeds from Avoidance Actions. The Adequate Protection Superpriority Claim shall at all times be subordinate to the DIP Superpriority Claim and the Carve Out.

(c)     <u>Fees, Expenses & Interest</u>. As further adequate protection for the use of the Prepetition Collateral (including Cash Collateral) by the Debtors, and in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Prepetition Agents and the Prepetition Lenders shall receive, as applicable, from the Debtors:

i.     <u>Fees and Expenses</u>. Upon the closing of the Interim DIP Facility, immediate payment in cash of all accrued and unpaid fees, costs and expenses in respect of the Prepetition Indebtedness and all other accrued and unpaid fees, costs and disbursements, accrued (whether before or after the Petition Date) under any of the Prepetition Loan Documents, as applicable, as of such date. The Prepetition Agents and the Prepetition Lenders shall also receive

current cash payment of such fees, costs and expenses (including those incurred prior to the Petition Date which remain unpaid as of the Petition Date), including, all fees and disbursements of their counsel, Schulte Roth & Zabel LLP and Landis Rath & Cobb LLP and such other professionals or consultants retained by the Prepetition Lenders with services performed prior to and during these Chapter 11 Cases incurred under any of the Prepetition Loan Documents. Any such fees, costs and expenses shall be paid within ten (10) business days of delivery of an invoice to the Debtors and without the need for further order of the Court. If requested, the Debtors shall provide a copy of all such invoices to the United States Trustee and counsel for any Committee. Notwithstanding anything to the contrary herein, (x) any and all such fees, costs and expenses (including the fees and expenses of counsel and other professionals for the Prepetition Agents and the Prepetition Lenders), shall be deemed fully earned, non-refundable, and irrevocable as of the date of this Interim Order and (y) the payment of any and all such fees shall not be subject to challenge, recharacterization or reduction, pursuant to paragraph 16 hereof or otherwise.

ii. <u>Interest</u>. Payment of interest on the Prepetition Indebtedness pursuant to the terms of the Prepetition Credit Agreement until such time as the Prepetition Indebtedness is indefeasibly paid in full in Cash.

(d) <u>Consent to Priming and Adequate Protection</u>. The Prepetition Agents and the Prepetition Lenders consent to use of Cash Collateral, the priming of their Prepetition Liens by the Postpetition Liens and the Carve-Out provided for herein; <u>provided</u>, <u>however</u>, that the Prepetition Agents' and the Prepetition Lenders' consent to the priming, the use of Cash Collateral, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order (in form and substance satisfactory to them)

relating to the DIP Loan Documents and DIP Loans set forth herein and such consent shall not

be deemed to extend to any other replacement financing or debtor in possession financing other

than the DIP Loans provided under the DIP Loan Documents; and provided, further, that such

consent shall be of no force and effect in the event this Interim Order is not entered and the DIP

Loan Documents and DIP Loans as set forth herein are not approved.

    (e) <u>Further Adequate Protection</u>.  Nothing in this Interim Order waives any

rights of the Prepetition Agents or the Prepetition Lenders to request at any time that the Court

provide additional or further protection of their interests in the Prepetition Collateral (including

the Cash Collateral), or to seek further or additional adequate protection in the event the adequate

protection provided herein proves to be inadequate.

**PROVISIONS RELATING TO THE CARVE OUT, INVESTIGATION PERIOD, REMEDIES NOTICE PERIOD & RESTRICTIONS ON THE USE OF FUNDS & CASH COLLATERAL**

   13. <u>Carve-Out</u>.  Upon (i) the occurrence and during the continuation of an Event of

Default under the DIP Loan Documents, or (ii) the consummation of the sale of all or

substantially all of the Debtors' assets in a transaction in which the cash consideration received

by the Debtors is insufficient to pay in full all Priority Professional Expenses (as defined below)

after satisfaction in full of the sum of (x) the aggregate amount of outstanding DIP Obligations,

plus (y) the aggregate amount of outstanding Prepetition Obligations, payment of any amounts

on account of the Postpetition Liens, and Superpriority Claim or on account of the Prepetition

Indebtedness, Replacement Liens, the Adequate Protection Obligations or the Permitted Priority

Liens shall be subject and subordinate only to the payment of:

    (a) the statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §

1930(a)(6);

(b)     fees payable to the Clerk of this Court;

(c)     up to $500,000 to Jefferies & Company on account of any transaction or success fee payable pursuant to the terms of the engagement letter dated February 9, 2009 (as subsequently amended on September 30, 2009) upon the consummation of a Transaction (as defined therein) consented to by the DIP Agent and the Prepetition Agents; and

(d)     subject to the terms and conditions of this Interim Order and the Budget, the unpaid and outstanding fees and expenses actually incurred on or after the Petition Date, and otherwise allowed by the Bankruptcy Court and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code (but excluding success, transaction or any similar fee) and any interim procedures order (collectively, the "Priority Professional Expenses"), by attorneys, accountants and other professionals retained by the Debtors and any Committee under sections 327 or 1103(a) of the Bankruptcy Code ( the "Professionals"), incurred (i) prior to the occurrence of an Event of Default (as defined in the DIP Financing Agreement) but in no event greater than the aggregate amount for such Professional set forth in the Budget with respect to such Professional, and (ii) upon the occurrence and during the continuation of an Event of Default (A) in an aggregate amount not to exceed $400,000, which amount shall be used to pay Priority Professional Expenses incurred by the Debtors' professionals retained in these Cases after the occurrence of such Event of Default and (B) in an aggregate amount not to exceed $100,000, which amount may be used to pay the Priority Professional Expenses incurred by the attorneys and financial advisors of the Committee, and the reimbursement of expenses allowed by the Bankruptcy Court and incurred by such Committee members in the performance of their duties, including, but not limited to fees expended by the Committee in connection with the investigation of the Prepetition Liens, after the occurrence of such Event of Default (inclusive of

any holdbacks required by the Court), provided that the aggregate amount of Priority Professional Expenses under this clause (d) shall in no event exceed $1,600,000 (the "Priority Professional Expenses Cap") (the sums identified in clauses (a), (b), (c) and (d) being collectively referred to as the "Carve-Out"); provided further, that any Professional holding a retainer shall apply such retainer to payment of such Professional's Priority Professional Expenses before seeking any payment from the Carve-Out, however, such retainer application shall not otherwise reduce the Priority Professional Expenses Cap) and provided further, that (I) any payments (other than by application of a retainer pursuant to this paragraph) actually made to such professionals under sections 330 or 331 of the Bankruptcy Code or any other provision of the Bankruptcy Code or order of the Bankruptcy Court shall reduce the Priority Professional Expense Cap, and (II) any payments (other than by application of a retainer pursuant to this paragraph) actually made to such professionals under sections 330 or 331 of the Bankruptcy Code or any other provision of the Bankruptcy Code or order of the Bankruptcy Court after the occurrence of an Event of Default (and during the continuance of such an Event of Default) on account of fees and expenses actually incurred after the occurrence of an Event of Default and during the continuance thereof shall reduce the amounts set forth in clauses (d)(ii)(A) and (B), in each case on a dollar-for-dollar basis.

14.    Payment of Carve Out After Event of Default  Any payment (other than by application of a retainer pursuant to paragraph 13 hereof) of Priority Professional Expenses incurred after an Event of Default and during the continuance thereof, shall permanently reduce the Carve Out on a dollar for dollar basis.  The DIP Agents' and the DIP Lenders' obligation to fund or otherwise pay the Carve Out may be budgeted or reserved against borrowing availability under the DIP Financing Agreement and shall be added to and made part of the DIP Obligations

and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

15. <u>Restriction on Use of Funds</u>. The DIP Superpriority Claim and the Postpetition Liens, the Replacement Liens, the Prepetition Liens and the Adequate Protection Obligations shall be senior to, and no proceeds of the DIP Loan nor any DIP Collateral, Cash Collateral or Prepetition Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any Committee (except as set forth herein) or any other party in connection with the investigation of, assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter against the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders in connection with the challenge of any claims or liens arising under or with respect to the DIP Obligations or the Prepetition Indebtedness. In addition, notwithstanding anything herein to the contrary, no proceeds from the DIP Loans and/or DIP Collateral, Cash Collateral or Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used by any of the Debtors, any Committee, and/or any trustee appointed in these Chapter 11 Cases, or any other person, party or entity to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from or as expressly consented to by the DIP Agents and the DIP Lenders; (b) assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the DIP Agents, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors (in their

capacity as such), with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action relating to any act, omission or aspect of the relationship between the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders and the Debtors and their affiliates; (ii) any action with respect to the validity and extent of the DIP Obligations, the Prepetition Indebtedness, or the validity, extent, and priority of the Postpetition Liens or Prepetition Liens; (iii) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the Prepetition Indebtedness, the Postpetition Liens or the Prepetition Liens; and/or (iv) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders in respect of their liens and security interests in the DIP Collateral, the Prepetition Collateral or the Cash Collateral; and/or (c) pay any prepetition Claim (as such term is defined in the Bankruptcy Code) without the prior written consent of the DIP Agents and the Prepetition Agents. Any claim incurred in connection with any activities described in subparagraph (b) of this paragraph 15 shall not be paid from any portion of the DIP Collateral, the Prepetition Collateral, Cash Collateral or the Carve Out.

16.     <u>Investigation Period</u>.  Notwithstanding anything herein or in the DIP Loan Documents to the contrary, from the date of appointment of a Committee through the sixtieth (60th) day thereafter or seventy-five (75) days from the date of entry of this Order if no Committee is appointed in the Chapter 11 Cases (the "<u>Investigation Termination Date</u>"), the Committee, if appointed, and solely if no Committee has been appointed, a party in interest with the requisite standing, other than the Debtors, shall be entitled to investigate the validity, perfection, enforceability, and extent of the Prepetition Indebtedness and Prepetition Liens and any potential claims of the Debtors or their estates against the Prepetition Lenders arising from

the Prepetition Indebtedness. Notwithstanding paragraph 15 above, the Committee (and only the Committee) will be authorized to expend up to a maximum of $50,000 prior to the expiration of the Investigation Termination Date in connection with its investigation of the validity, perfection, enforceability, and extent of the Prepetition Indebtedness and Prepetition Liens. If no such action is filed on or before the Investigation Termination Date, the Committee, all holders of claims and interests as well as all other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors' stipulations made in paragraph F and the release (as set forth below in paragraph 20) shall be irrevocably binding on the Committee, all holders of claims and interests and all parties in interest, including any equity committee. If such an action is timely and properly brought, any claim or action that is not brought shall be forever barred. The Investigation Termination Date shall not be extended without the written consent of the Prepetition Agents and the Prepetition Lenders.

17.    Prohibition on Charging or Marshalling    Effective upon entry of this Interim Order, no party shall be entitled, directly or indirectly, to (i) charge the Carve-Out, the DIP Collateral, the Prepetition Collateral or the Cash Collateral whether by operation of sections 105, 506(c) (subject to entry of the Final Order) or 552(b) of the Bankruptcy Code or otherwise or (ii) direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of DIP Collateral, the Prepetition Collateral or the Cash Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents.

18.    Prohibition on Granting of Additional Liens & Interests.    No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to, *pari passu* or junior to that of the Postpetition Liens or

the Superpriority Claim granted by this Interim Order, shall be granted while any portion of the DIP Obligations or the Prepetition Indebtedness remains outstanding, or any commitment under the DIP Loan Documents or the Prepetition Loan Documents remains in effect, without the prior written consent of the DIP Agents and the Prepetition Agents.

19. <u>Events of Default</u>. Each of the following shall constitute an Event of Default under the terms of this Interim Order: (i) the Final Order, in form and substance satisfactory to the DIP Agents, shall not have been entered by March 5, 2010; (ii) an Event of Default under the DIP Financing Agreement shall have occurred and be continuing; (iii) a violation of any of the terms of this Interim Order shall have occurred; (iv) the Interim Order shall have been stayed, amended, modified, reversed, vacated or subject to appeal without the DIP Agents' or the DIP Lenders' consent; (v) the use by the Debtors of DIP Collateral or Prepetition Collateral in any manner not authorized hereby or in the DIP Loan Documents or the Budget; (vi) any fraudulent act, fraudulent conduct or fraudulent omission by the Debtors; (vii) filing of an application for entry of an order approving use of DIP Collateral or Prepetition Collateral (other than any application related to this Interim Order or the Final Order) and/or to obtain financing or loans secured by liens which are senior, *pari passu* or junior to the DIP Agents' and the DIP Lenders' Liens on DIP Collateral or the Prepetition Agents' and the Prepetition Lenders Liens on Prepetition Collateral or the Replacement Liens without the prior written consent of the DIP Agents and the Prepetition Agents; and (viii) except as otherwise consented to by the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, a sale order shall be entered or a plan confirmed in any of the Debtor's chapter 11 cases that does not provide for payment in full in cash of the DIP Obligations (and termination of the commitments thereunder) and the Prepetition Indebtedness on the closing date of the sale or the effective date of the plan or

an order shall be entered that dismisses any of the Debtor's chapter 11 cases and which does not provide for the termination of the use of DIP Collateral and Prepetition Collateral and payment in full in cash of the DIP Obligations (and termination of the commitments thereunder) and the Prepetition Indebtedness.

20.    Release.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 20 will be deemed effective upon entry of this Interim Order, subject only to the rights set forth in paragraph 14 and 16 above.  The Debtors forever and irrevocably (a) release, discharge, and acquit the Prepetition Agents and the Prepetition Lenders, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (each of the foregoing in their capacity as such) (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Prepetition Lenders or the Prepetition Agents and the Debtors and their affiliates including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Indebtedness, the Prepetition Liens, the Prepetition Loan Documents, the Debtors' attempts to restructure the Prepetition Indebtedness, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Lenders; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability of the Prepetition Indebtedness and the Prepetition Liens.

21. <u>Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(a)      whether or not a Default or an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred, (i) to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agents and the DIP Lenders under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, (ii) the right to setoff funds in accounts maintained by the Debtors with the DIP Agents or any of the DIP Lenders to repay the DIP Obligations, (iii) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iv) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (v) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this Interim Order.

(b)      in the event of a Default or upon the occurrence of an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order, and without application and motion to, or orders from the Court or any

DB02:9227347.1
068920.1001

other court, and without any interference from any Debtor or any other party in interest but subject to three (3) business days prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order or under other applicable bankruptcy and nonbankruptcy law to the extent permitted under the DIP Loan Documents and this Interim Order including, without limitation, (i) terminate the commitments under the DIP Loan Documents, (ii) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Loan Documents, (iii) declare all or any portion of the DIP Obligations immediately due and payable and/or (iv) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; provided, however, that immediately upon the occurrence of an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order or the DIP Loan Documents, the DIP Agents, for the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Financing Agreement without being subject to the Remedies Notice Period.

(c)     The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Committee and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  The Debtors, the Committee and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the sole issue at any hearing to re-

impose the automatic stay or to obtain any other injunctive or other relief shall be limited to whether or not an Event of Default has occurred under the DIP Loan Documents.

(d)     Subject to the Remedies Notice Period, the automatic stay pursuant to § 362 of the Bankruptcy Code shall be further modified, to the extent necessary, to permit the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders without further application or motion to, or order from the Court to foreclose or otherwise enforce their security interests in or liens on any or all of the DIP Collateral and/or to exercise any other default-related rights and remedies under the DIP Loan Documents or this Order, and neither § 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders from exercising or enforcing such default-related rights and remedies, regardless of any change in circumstances (whether or not foreseeable).

(e)     If the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders have elected to enforce their liens or security interests or exercise any other default-related remedies, and provided that the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders in their sole discretion, have made available to the Debtors sufficient funds to pay the reasonable and necessary costs thereof, if any, the Debtors shall cooperate with the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders (as applicable) in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders (including any collateral liquidator or consultant), (ii) providing the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders and their representatives during normal business

hours in a manner that minimizes disruption to the Debtors' business, access to the Debtors'

books and records and any information or documents requested by the DIP Agents, the DIP

Lenders, the Prepetition Agents, the Prepetition Lenders or their respective representatives, (iii)

assisting the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders in

connection with any reasonable request by the DIP Agents or the Prepetition Agents to sell all or

any portion of the DIP Collateral or the Prepetition Collateral, including, without limitation,

filing on an expedited basis, a 363 sale motion, and (iv) taking reasonable steps to safeguard and

protect the DIP Collateral, the Cash Collateral and the Prepetition Collateral and the Debtors

shall not otherwise interfere with or actively encourage others to interfere with the DIP Agents',

the Prepetition Agents', the DIP Lenders' and/or the Prepetition Lenders' enforcement of rights.

(f)     This Court shall retain exclusive jurisdiction to hear and resolve any

disputes and enter any orders required by the provisions of this Interim Order and relating to the

application, re-imposition or continuance of the automatic stay of section 362(a) of the

Bankruptcy Code, use of Cash Collateral or other injunctive relief requested.

(g)     Upon the occurrence and during the continuance of a Default or an Event

of Default under the DIP Loan Documents, a violation of the terms of this Interim Order, or any

other Termination Event, the DIP Agents and the DIP Lenders shall have no further obligation to

provide financing under the DIP Loan Documents and the DIP Agents, the DIP Lenders, the

Prepetition Agents and the Prepetition Lenders shall have no obligation to permit the continued

use of Cash Collateral after the expiration of the Remedies Notice Period.

(h)     The rights of the Prepetition Agent and the Prepetition Lenders to exercise

remedies under any subparagraph of this paragraph 21 shall terminate upon the indefeasible

payment in full in cash of all outstanding DIP Obligations.

(i)     Upon the occurrence and during the continuance of a Default or an Event

of Default under the DIP Loan Documents or a violation of the terms of this Interim Order or any

other Termination Event, the DIP Agents or the DIP Lenders may at all times continue to collect

and sweep cash as provided herein or as provided in the DIP Loan Documents.

## ADDITIONAL PROVISIONS COMMON TO DIP FINANCING AND USE OF CASH COLLATERAL AUTHORIZATION

22.     <u>Limitation on Surcharges</u>.  No costs or expenses of administration which have

been or may be incurred in the Chapter 11 Cases or any subsequent cases at any time shall be

charged against, and no person may seek to charge any costs or expenses of administration

against, the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders any

of their respective claims or the DIP Collateral, Cash Collateral or Prepetition Collateral pursuant

to sections 105 and 506(c) (subject to entry of the Final Order) of the Bankruptcy Code, without

the prior written consent, as applicable, of the DIP Agents, the DIP Lenders, the Prepetition

Agents or the Prepetition Lenders.  No action, inaction or acquiescence by the DIP Agents, the

DIP Lenders, the Prepetition Agents or the Prepetition Lenders shall be deemed to be or shall be

considered evidence of any alleged consent to a charge against the DIP Collateral, the Prepetition

Collateral or the Cash Collateral.

23.     <u>No Marshaling</u>.  The DIP Agents, the DIP Lenders, the Prepetition Agents and the

Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other

similar doctrine with respect to any of the DIP Collateral, the Cash Collateral or the Prepetition

Collateral.

24.     <u>Equities of the Case Waiver</u>.  The DIP Agents, the DIP Lenders, the Prepetition

Agents and the Prepetition Lenders shall be entitled to all of the rights and benefits of section

552(b) of the Bankruptcy Code.  No person may assert an "equities of the case" claim under

section 552(b) of the Bankruptcy Code against the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the DIP Collateral, the Cash Collateral or the Prepetition Collateral.

25. <u>Additional Perfection Measures</u>. The Postpetition Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order. None of the Debtors, the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waivers or consents, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Postpetition Liens or the Replacement Liens.

(a) If the DIP Agents or the Prepetition Agents, each in its sole discretion, chooses to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

i. all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

ii. no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agents or the Prepetition Agents, may, each in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of Collateral, and such filing by the DIP Agents or the Prepetition Agents shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

26.     <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the DIP Loan Documents, after (a) an Event of Default and (b) solely to the extent that the DIP Obligations are still outstanding, the Debtors are hereby authorized and obligated to remit to the DIP Agents or the DIP Lenders, as the case may be, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, including, but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets, and any other assets, including, without limitation, sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agents and the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with this Interim Order and the DIP Loan Documents to the DIP Obligations, first to fees, costs and expenses owed under the DIP Loan Documents (including the Carve-Out), then to interest, and then to principal, and then to the Prepetition Indebtedness, first to fees, cost and expenses owed under the Prepetition Credit Agreements and then to principal.

27.     <u>Access to Collateral</u>.

(a)     Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agents or the DIP Lenders contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon three (3) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred and is continuing, the DIP Agents or the DIP Lenders (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agents or the DIP Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph, without interference from lienholders, landlords or licensors thereunder, subject to such lienholders, landlords or licensors rights under applicable law, <u>provided</u>, <u>however</u>, that the DIP Agents or the DIP Lenders shall pay only base rent payable during the period of such occupancy or use by the DIP Agents or the DIP Lenders, as the case may be, calculated on *a per diem* basis. Nothing herein shall require the Debtors, the DIP Agents or the DIP Lenders to assume any lease

or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to

the DIP Agents and the DIP Lenders in this paragraph.

28.  <u>Cash Management Systems</u>.  The Debtors are authorized and obligated to

maintain their cash management system in a manner consistent with the DIP Loan Documents,

this Interim Order, and the order of this Court approving the maintenance of the Debtors' cash

management system, <u>provided</u>, <u>however</u>, that such order is and remains at all times on terms and

conditions acceptable to the DIP Agents and such order is not inconsistent with the terms

specified herein or the DIP Loan Documents.

29.  <u>Budget Maintenance</u>.  The Debtors have agreed that the Budget shall at all times

be in form and substance acceptable to the DIP Agents, the DIP Lenders, the Prepetition Agents

and the Prepetition Lenders and approved in writing by the DIP Agents, the DIP Lenders, the

Prepetition Agents and the Prepetition Lenders in their sole discretion.  The Debtors have agreed

that they shall provide updates to the Budget and financial reporting with respect to the Debtors

in accordance with the terms of the DIP Loan Documents.  The Debtors' failure to (a) maintain

the Budget in a form acceptable to the DIP Agents, the DIP Lenders, the Prepetition Agents and

the Prepetition Lenders as set forth above or (b) provide updates as required shall constitute an

Event of Default under the DIP Loan Documents.  The DIP Agents and the DIP Lenders shall

have no obligation with respect to the Debtors' use of the proceeds of the DIP Loans or DIP

Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the

Budget or to pay (directly or indirectly from their DIP Collateral) any expenses incurred or

authorized to be incurred pursuant to the Budget.  Funds borrowed under the DIP Financing

Agreement and DIP Collateral used under this Interim Order shall be used by the Debtors in

accordance with this Interim Order.  The DIP Agents', the DIP Lenders', the Prepetition Agents'

and the Prepetition Lenders' consent to the Budget shall not be construed as a consent to the use of any DIP Collateral, Prepetition Collateral or Cash Collateral or a commitment to continue to provide DIP Loans or the use of Cash Collateral after the occurrence of a Default or an Event of Default or beyond the Termination Date, regardless of whether the aggregate funds shown on the Budget have been expended.

30.     The Budget may be modified or supplemented from time to time only by written agreement of the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders and the Debtors without the need of further notice, hearing or order of this Court. A copy of any such modifications or supplements will be provided by the Debtors to counsel for the Committee and the U.S Trustee.

31.     Delivery of Documentation. The Debtors have agreed that they (and/or their legal or financial advisors) shall deliver to the DIP Agents, counsel to the DIP Agents, and any financial advisors to the DIP Agents, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings (together, the "Documentation") that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agents, the DIP Lenders, and/or the DIP Agents' legal and financial advisors pursuant to the DIP Loan Documents or (ii) requested by the DIP Agents and/or the DIP Lenders (or their legal and financial advisors). The failure of the Debtors to comply with this paragraph 31 shall constitute an Event of Default under the DIP Loan Documents.

32.     Access to Books & Records. The Debtors have agreed that they (and/or their legal and financial advisors) will (i) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities, (ii) cooperate, consult with, and provide to the DIP

Agents and the DIP Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of this Interim Order or that is afforded to any Committee and/or such Committee's respective legal or financial advisors, (iii) permit representatives of the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (iv) permit representatives of the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations; provided, that, activities conducted by the representatives of the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders pursuant to subsections (iii) and (iv) hereof shall be conducted upon reasonable advance notice (no less than one (1) business days' notice) during regular business hours in a manner that minimizes disruption to the business, operations and activities of the Debtors. The failure of the Debtors to comply with this paragraph 32 shall constitute an Event of Default under the DIP Loan Documents.

33.     Agents & Lenders Not Responsible Persons.  In (a) making the decision to make the DIP Loans; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents; (d) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (e) administering the loans

and financial accommodations extended under the Prepetition Loan Documents; (f) extending

other financial accommodations to the Debtors under the Prepetition Loan Documents and (e)

making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP

Agents, the DIP Lenders, the Prepetition Agents nor the Prepetition Lenders shall be considered

to be exercising control over any operations of the Debtors or acting in any way as a responsible

person, or as an owner or operator under any applicable law, including without limitation, any

environmental law (including but not limited to the Comprehensive Environmental Response,

Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and

Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any

similar federal or state statute).

34.     Successors and Assigns.  The DIP Loan Documents and the provisions of this

Interim Order shall be binding upon the Debtors, the DIP Agents, the DIP Lenders, the

Prepetition Agents and the Prepetition Lenders, and each of their respective successors and

assigns, and shall inure to the benefit of the Debtors, the DIP Agents, the DIP Lenders, the

Prepetition Agents and the Prepetition Lenders, and each of their respective successors and

assigns including, without limitation, any trustee, responsible officer, estate administrator or

representative, or similar person appointed in a case for any Debtor under any chapter of the

Bankruptcy Code.  The provisions of this Interim Order shall also be binding on all of the

Debtors' creditors, equity holders, and all other parties in interest.

35.     Binding Nature of Agreement.  Each of the DIP Loan Documents to which any of

the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the

Debtors party thereto, enforceable in accordance with their terms.  The DIP Loan Documents

have been or will be properly executed and delivered to the DIP Agents and the DIP Lenders by

the Debtors, no later than one day after entry of this Interim Order. The rights, remedies, powers, privileges, liens, and priorities of the DIP Agents and the DIP Lenders provided for in this Interim Order and in the DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including any sale or confirmation order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code, in each case, unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

36.     Subsequent Reversal or Modification.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Agents and the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order are hereafter reversed, amended, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Agents, the Prepetition Agents, the DIP Lenders or any of the Prepetition Lenders prior to the date of receipt by the DIP Agents or the Prepetition Agents of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents.  Notwithstanding any such reversal, stay, amendment, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Agents, the Prepetition Agents, the DIP Lenders or any of the Prepetition Lenders prior to written notice to the DIP Agents or the Prepetition Agents of the effective date of such action shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agents, the Prepetition Agents, the DIP Lenders and the Prepetition Lenders shall be entitled to

all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

37.     Collateral Rights.  In the event that any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the Postpetition Liens, the Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of (i) all DIP Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, and (ii) the Prepetition Indebtedness under the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition Lenders and shall immediately turnover such proceeds for application, in the following order, (a) to the D1P Obligations under the DIP Loan Documents in accordance with the DIP Loan Documents and this Interim Order until indefeasibly paid in full, (b) to the Prepetition Indebtedness under the Prepetition Loan Documents in accordance with the priorities set forth in the Prepetition Loan Documents and this Interim Order until indefeasibly paid in full.

38.     No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders may have to bring or be heard on any matter brought before this Court.

39.     Sale/Conversion/Dismissal.

(a)     Except as expressly agreed to in writing by the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, no order providing for either the

sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to a party shall be entered by the Court unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to indefeasibly pay in full in cash, and completely satisfy, in cash, all DIP Obligations, the Prepetition Indebtedness, and Adequate Protection Obligations owed to the Prepetition Lenders, and such DIP Obligations, the Prepetition Indebtedness and Adequate Protection Obligations owed to the Prepetition Lenders are indefeasibly paid in full in cash and the commitments under the DIP Loan Documents and this Interim Order are terminated in accordance therewith on the closing date of such sale

(b)     No order dismissing or converting these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee or an examiner with expanded powers, shall be entered unless and until (i) the DIP Obligations and the Prepetition Indebtedness are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents and the Prepetition Loan Documents are terminated in accordance therewith or (ii) the DIP Agents and the Prepetition Agents expressly consent in writing. If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (i) the Postpetition Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Obligations granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Loan Documents until all DIP Obligations and the Prepetition Indebtedness are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan

Documents and (ii) this Court shall retain jurisdiction to the fullest extent permitted by law, notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Obligations.

40.    <u>Limits on DIP Lenders' Liability</u>.  Nothing in this Interim Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents or the DIP Lenders of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

41.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

42.    <u>Plan Treatment</u>.  No plan shall be confirmed in these Chapter 11 Cases that could not have been confirmed but for the provisions of section 1129(b)(2)(A) of the Bankruptcy Code, as applied to the secured claims of the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders unless otherwise agreed, as applicable, by the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders.

43.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

44.    <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded to the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases or (ii) converting any of the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the Postpetition Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Obligations shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the Postpetition Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Obligations shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Agents and the DIP Lenders in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until (i) all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith, and (ii) the Prepetition Indebtedness has been or is deemed to have been satisfied in accordance with the Bankruptcy Code.

45.    <u>Adequate Notice/ Scheduling of Final Hearing</u>. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 (c)(2), and the local rules of this Court, and, under the circumstances was adequate and sufficient. No further notice of the request for the relief granted at the Interim Hearing is required. The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing which shall be

held on February ___ 2010 in this Court to any known party affected by the terms of this Interim Order and/or Final Order and any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than five business (5) days prior to the Final Hearing by the following: (i) co-counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, NY 10019-6099 (attn: Michael J. Kelly, Esq. and Shaunna D. Jones, Esq.) and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 (attn: Matthew B. Lunn, Esq. and Ryan Bartley, Esq.); (ii) co-counsel to the DIP Agents, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (attn: Adam C. Harris, Esq. and Lawrence V. Gelber, Esq. ) and Landis Rath & Cobb LLP, 919 Market Street Suite 1800 P.O. Box 2087, Wilmington DE 19899 (attn: Adam G. Landis, Esq.); (iii) counsel to the Prepetition Agents, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (attn: Adam C. Harris, Esq. and Lawrence V. Gelber, Esq. ) and Landis Rath & Cobb LLP, 919 Market Street Suite 1800 P.O. Box 2087, Wilmington DE 19899 (attn: Adam G. Landis, Esq.) and (iv) the U.S. Trustee.

    46.    <u>Entry of Interim Order; Effect</u>. This Interim Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

    47.    <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

48.     <u>Binding Effect of Interim Order</u>.  The terms of this Interim Order shall be binding

on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated:  Wilmington, Delaware
        February __, 2010

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE