# EXHIBIT C

## Form of Deposit Account Control Agreements

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Agreement is entered into as of February 3 2010, and shall become effective in accordance with Recital F, below. This Agreement is entered into among **Spheris Operations LLC**, a Tennessee limited liability company ("Company"), as a debtor and debtor-in-possession, **Ableco L.L.C.**, a Delaware limited liability company, as collateral agent for the First Lien Secured Parties (as defined below) ("First Lien Collateral Agent"), **Ableco Finance LLC**, a Delaware limited liability company, as collateral agent for the Second Lien Secured Parties (as defined below) ("Second Lien Collateral Agent"; and together with the First Lien Collateral Agent, "Collateral Agents"), and **Bank of America, N.A.** ("Bank") with respect to the following:

      A.    Company has on February 3, 2010 (the "Filing Date") commenced a case (the "Chapter 11 Case") under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and the Company has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its business as a debtor-in-possession.

      B.    Bank has agreed to establish and maintain for Company the deposit account listed in Exhibit A (the "Account").

      C.    Company has, pursuant to a Superpriority Senior Secured Super-Priority Debtor-In-Possession Financing Agreement, dated as of February 3, 2010 (as modified, supplemented and amended from time to time, the "DIP Financing Agreement"), by and among Company, Spheris Inc., a Delaware corporation ("Parent"), certain other subsidiaries of Parent, Cratos Capital Management, LLC, a Delaware limited liability company ("Cratos"), as administrative agent for the lenders thereunder (in such capacity, together with any successor administrative agent, the "First Lien Administrative Agent"), and First Lien Collateral Agent, assigned to First Lien Collateral Agent for the benefit of certain secured parties (the "First Lien Secured Parties"), represented therein by the First Lien Collateral Agent, a security interest in and first lien on, among other things, all of Company's right, title and interest in and to the Account and in checks and other payment instructions deposited in the Account ("Checks" and, together with the Account, the "Collateral").

      D.    Company has, pursuant to a Financing Agreement, dated as of July 17, 2007 (as modified, supplemented and amended from time to time, the "2007 Financing Agreement"), by and among Company, Parent, certain other subsidiaries of Parent, Cratos, as administrative agent for the lenders thereunder (in such capacity, together with any successor administrative agent, the "Second Lien Administrative Agent"), and Second Lien Collateral Agent, and security documents entered into in connection with the 2007 Financing Agreement assigned to certain secured parties (the "Second Lien Secured Parties"), represented therein by the Second Lien Collateral Agent, a security interest in and second lien on , among other things, all of Company's right, title and interest in and to the Collateral.

E.    Company, Collateral Agents and Bank are entering into this Agreement to evidence each Collateral Agent's security interest in the Collateral and to provide for the disposition of net proceeds of Checks deposited in the Account.

F.    This Agreement shall be effective only upon the occurrence of all of the following: (i) it has been executed by all of the parties hereto; (ii) signature pages evidencing such execution shall have been delivered to the Bank electronically; and (iii) the Bankruptcy Court shall have entered: (x) its Interim Order approving the interim relief sought pursuant to the Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364: (I) Authorizing Debtors to (A) Obtain Post-Petition Financing, and (B) Grant Senior Liens, Junior Liens and Superpriority Administrative Expense Status; (II) Approving Use of Cash Collateral; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief and (y) the Order approving the Debtors' Motion for Order Authorizing: (A) Continued Use of the Debtors' Cash Management System; (B) Continuation of Intercompany Transactions and According Administrative Expense Status to Claims for Such Transactions; (C) Maintenance and Continued Use of Existing Bank Accounts and Waiver of Certain Operating Guidelines Relating to Bank Accounts and the Requirements of Section 345 of the Bankruptcy Code; and (E) Granting Related Relief.

Accordingly, Company, each Collateral Agent and Bank agree as follows:

1.    (a)    This Agreement evidences Notice Agent's (as defined below) control over the Account. This Agreement constitutes an "authenticated record" and evidences each Collateral Agent's "control" over the Account and that the Account is a "deposit account" as each such term is defined in Article 9 of the Uniform Commercial Code as adopted by the State of New York. Notwithstanding anything to the contrary in the agreement between Bank and Company governing the Account and the Deposit Account Control Agreement dated as of September 14, 2007 between Bank, Company and certain other subsidiaries of Parent (the "Existing Control Agreement") governing the Account, Bank will comply with instructions originated by the Notice Agent as set forth herein directing the disposition of funds in the Account without further consent of the Company.

(b)    Company represents and warrants to each Collateral Agent and Bank that it has not assigned or granted a security interest in the Collateral, except to the Collateral Agents.

(c)    Company will not permit the Collateral to become subject to any other pledge, assignment, lien, charge or encumbrance of any kind, other than each Collateral Agent's respective security interests referred to herein.

2.    Within a reasonable period of time not to exceed four Business Days (as defined below) following the effective date of this Agreement, and continuing on each Business Day thereafter, Bank shall transfer all available balances in the Account to the account specified below.

| | |
|---|---|
| Bank Name: | Bank of America, N.A. - Chicago |
| Bank Address: | 135 South LaSalle Street, Suite 530, Chicago, IL 60603 |
| ABA No.: | 026009593 |
| Account Name: | Cratos Capital Management LLC, RE:  Account Name; Principal/Interest |

Account No.: 5800940453
Beneficiary's Name: Spheris/Ableco

Notice Agent may change the wiring instructions at any time by providing Bank with written notice of new instructions, provided that Bank shall be permitted a reasonable period of time to implement any such change in instructions.

A "Business Day" is each day except Saturdays, Sundays and Bank holidays. Funds are not available if, in the reasonable determination of Bank, they are subject to a hold, dispute or legal process preventing their withdrawal. "Notice Agent" means (x) the First Lien Collateral Agent at all times prior to the date on which a Notice of Termination (as defined below) is received by Bank from the First Lien Collateral Agent pursuant to Section 10(c), and (y) the Second Lien Collateral Agent at all times thereafter. For the avoidance of doubt, there shall at all times be only one Notice Agent.

3.      Bank agrees it shall not offset, charge, deduct or otherwise withdraw funds from the Account, except as permitted by Section 4, until it has been advised in writing by the Collateral Agents that all of Company's obligations that are secured by the Collateral are paid in full. Each Collateral Agent shall notify Bank promptly in writing upon payment in full of Company's obligations.

4.      Bank is permitted to charge the Account:

        (a)      for its fees and charges relating to the Account and this Agreement,

        (b)      in the event any Check deposited into the Account is returned unpaid for any reason or for any breach of warranty claim, and

        (c)      for any ACH credit entries that may have been originated by Company but that have not settled on the effective date of this Agreement or for any entries, whether credit or debit, that are subsequently returned thereafter.

5.      (a)      If the balances in the Account are not sufficient to compensate Bank for any fees or charges due Bank in connection with the Account, or this Agreement, Company agrees to pay Bank on demand the amount due Bank. Company will have breached this Agreement if it has not paid Bank, within five days after such demand, the amount due Bank.

        (b)      If the balances in the Account are not sufficient to compensate Bank for any returned Check, Company agrees to pay Bank on demand the amount due Bank. If Company fails to so pay Bank immediately upon demand, each Collateral Agent agrees to pay Bank within five days after Bank's demand to such Collateral Agent to pay any amount received by such Collateral Agent with respect to such returned Check. The failure to so pay Bank shall constitute a breach of this Agreement.

        (c)      Company hereby authorizes Bank, without prior notice, from time to time to debit any other account Company may have with Bank for the amount or amounts due Bank under subsection 5(a) or 5(b).

3

6.     In addition to the original Bank statement provided to Company, Bank will provide each Collateral Agent with a duplicate of such statement.

7.     (a)     Bank will not be liable to Company or either Collateral Agent for any expense, claim, loss, damage or cost ("Damages") arising out of or relating to its performance under this Agreement other than those Damages which result directly from its acts or omissions constituting negligence or intentional misconduct.

        (b)     In no event will Bank be liable for any special, indirect, exemplary or consequential damages, including but not limited to lost profits.

        (c)     Bank will be excused from failing to act or delay in acting, and no such failure or delay shall constitute a breach of this Agreement or otherwise give rise to any liability of Bank, if (i) such failure or delay is caused by circumstances beyond Bank's reasonable control, including but not limited to legal constraint, emergency conditions, action or inaction of governmental, civil or military authority, fire, strike, lockout or other labor dispute, war, riot, theft, flood, earthquake or other natural disaster, breakdown of public or private or common carrier communications or transmission facilities, equipment failure, or negligence or default of Company or either Collateral Agent or (ii) such failure or delay resulted from Bank's reasonable belief that the action would have violated any guideline, rule or regulation of any governmental authority.

        (d)     Bank shall have no duty to inquire or determine whether Company's obligations to the Collateral Agents are in default.  Bank may rely on notices and communications it believes in good faith to be genuine and given by the appropriate party.

        (e)     Notwithstanding any of the other provisions in this Agreement, in the event of the existence or commencement of a case pursuant to Title 11, United States Code, filed by or against Company, or in the event of the existence or commencement of any similar case under then applicable federal or state law providing for the relief of debtors or the protection of creditors by or against Company, Bank may act as Bank deems necessary to comply with all applicable provisions of governing statutes and shall not be in violation of this Agreement as a result.

        (f)     Bank shall be permitted to comply with any writ, levy order or other similar judicial or regulatory order or process concerning the Collateral and shall not be in violation of this Agreement for so doing.

8.     (a)     Company shall indemnify Bank against, and hold it harmless from, any and all liabilities, claims, costs, expenses and damages of any nature (including but not limited to allocated costs of staff counsel, other reasonable attorney's fees and any fees and expenses) in any way arising out of or relating to disputes or legal actions concerning Bank's provision of the services described in this Agreement.  This section does not apply to any cost or damage attributable to the gross negligence or intentional misconduct of Bank.  Company's obligations under this section shall survive termination of this Agreement.

(b)     Each Collateral Agent hereby agrees to indemnify, defend and hold harmless Bank against any loss, liability or expense (including but not limited to allocated costs of staff counsel, other reasonable attorney's fees and any fees and expenses) arising from Bank complying with any written instructions of such Collateral Agent pursuant to this Agreement other than if related to Bank's gross negligence, bad faith, or willful misconduct.   Collateral Agents' obligations under this section shall survive termination of this Agreement.

9.     (a)     Company shall pay to Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in connection with the enforcement of this Agreement and any instrument or agreement required hereunder, including but not limited to any such costs, expenses and fees arising out of the resolution of any conflict, dispute, motion regarding entitlement to rights or rights of action, or other action to enforce Bank's rights in a case arising under Title 11, United States Code. Company agrees to pay Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in the preparation and administration of this Agreement (including any amendments hereto or instruments or agreements required hereunder).

(b)     Each Collateral Agent shall pay to Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in connection with the enforcement against such Collateral Agent of this Agreement and any instrument or agreement required hereunder to the extent that Bank is the prevailing party in such enforcement action.  The Bank shall pay to the applicable Collateral Agent, upon receipt of such Collateral Agent's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by such Collateral Agent in connection with the enforcement against the Bank of this Agreement and any instrument or agreement required hereunder to the extent that such Collateral Agent is the prevailing party in such enforcement action.

10. Termination and Assignment of this Agreement shall be as follows:

(a)     Either Collateral Agent may assign this Agreement upon 30 day's prior written notice to Company, the other Collateral Agent and Bank.  Bank may terminate this Agreement upon 30 days' prior written notice to Company and each Collateral Agent.  Company may not terminate this Agreement except with the written consent of each Collateral Agent and upon prior written notice to Bank.

(b)     Notwithstanding subsection 10(a), Bank may terminate this Agreement at any time by written notice to Company and each Collateral Agent if either Company or any one of the Collateral Agents breaches any of the terms of this Agreement, or, in the case of Company, any other agreement with Bank.

(c)     This Agreement shall terminate with respect to the First Lien Collateral Agent, but shall remain in effect with respect to Company, the Second Lien Collateral Agent and Bank, upon receipt by Bank (with a copy to the Second Lien Collateral Agent) of a written notice substantially in the form of Exhibit B hereto (a "Notice of Termination") signed by the First Lien Collateral Agent.  This Agreement shall terminate with respect to the Second Lien Collateral Agent, but shall remain in effect with respect to Company, the First Lien Collateral Agent and

Bank, upon receipt by Bank (with a copy to the First Lien Collateral Agent) of a Notice of Termination signed by the Second Lien Collateral Agent. The termination of this Agreement shall not alter the obligations of Bank to Company pursuant to any other agreement with respect to the Account.

11.    (a)    Each party represents and warrants to the other parties that (i) this Agreement constitutes its duly authorized, legal, valid, binding and enforceable obligation; (ii) the performance of its obligations under this Agreement and the consummation of the transactions contemplated hereunder will not (A) constitute or result in a breach of its certificate or articles of incorporation, by-laws or partnership agreement, as applicable, or the provisions of any material contract to which it is a party or by which it is bound or (B) result in the violation of any law, regulation, judgment, decree or governmental order applicable to it; and (iii) all approvals and authorizations required to permit the execution, delivery, performance and consummation of this Agreement and the transactions contemplated hereunder have been obtained.

        (b)    The parties each agree that it shall be deemed to make and renew each representation and warranty in subsection 11(a) on and as of each day on which Company uses the services set forth in this Agreement.

12.    (a)    This Agreement may be amended only by a writing signed by Company, each Collateral Agent and Bank; except that Bank's charges are subject to change by Bank upon 30 days' prior written notice to Company.

        (b)    This Agreement may be executed in counterparts; all such counterparts shall constitute but one and the same agreement.

        (c)    This Agreement controls in the event of any conflict between this Agreement and any other document or written or oral statement. This Agreement and the Deposit Account Control Agreement, Account With Activation dated as of the date hereof and effective in accordance with Recital F, above, among Company, Spheris Inc., a Delaware corporation as debtor and debtor-in-possession, Spheris Leasing LLC, a Tennessee limited liability company as debtor and debtor-in-possession, First Lien Collateral Agent, Second Lien Collateral Agent and Bank, jointly supersede all prior understandings, writings, proposals, representations and communications, oral or written including the Existing Control Agreement, of any party relating to the subject matter hereof and jointly amend and restate the Existing Control Agreement.

        (d)    This Agreement shall be interpreted in accordance with New York law without reference to that state's principles of conflicts of law.

13.    Any written notice or other written communication to be given under this Agreement shall be addressed to each party at its address set forth on the signature page of this Agreement or to such other address as a party may specify in writing. Except as otherwise expressly provided herein, any such notice shall be effective upon receipt.

14.    Nothing contained in the Agreement shall create any agency, fiduciary, joint venture or partnership relationship between Bank, Company or either Collateral Agent.

**(remainder of page is intentionally blank, signature pages follow)**

In Witness Whereof, the parties hereto have executed this Agreement by their duly authorized officers as of the day and year first above written.

**Spheris Operations LLC**
**("Company")**

By: _____

Name: _____

Title: _____

Address for notices:
9009 Carothers Parkway
Franklin, TN 37067
Attention: Chief Financial Officer
Facsimile: (615) 261-1792

< Signature Page to Deposit Account Control Agreement - Without Activation >

**Ableco, L.L.C.**
**("First Lien Collateral Agent")**

By: _____

Name: _____

Title: _____

Address for notices:

299 Park Avenue, 23rd Floor
New York, NY 10171
Attention:    Gerald M. Daniello
Telephone:   (212) 284-7810
Telecopier:   (212) 909-1489

< Signature Page to Deposit Account Control Agreement - Without Activation >

**Ableco Finance, LLC**
**("Second Lien Collateral Agent")**

By: _____

Name: _____

Title: _____

Address for notices:

299 Park Avenue, 23rd Floor
New York, NY 10171
Attention:      Gerald M. Daniello
Telephone:    (212) 284-7810
Telecopier:    (212) 909-1489

< Signature Page to Deposit Account Control Agreement - Without Activation >

**Bank of America, N.A.**
**("Bank")**

By: _____

Name: _____

Title: _____

Address for notices:

Bank of America, N.A.

2000 Clayton Road, Building D
Concord, CA 94520-2425
Attn: Blocked Account Support
Mail Code: CA4-704-06-37

Telephone: 925.675.7169
Facsimile: 877.207.2524

< Signature Page to Deposit Account Control Agreement - Without Activation >

The undersigned is signing this Agreement solely to recognize that transfers from the Account are being made to an account of Cratos in its capacity as both First Lien Administrative Agent and Second Lien Administrative Agent (and subagent of both First Lien Collateral Agent and Second Lien Collateral Agent)

**Cratos Capital Management, LLC**

By: _____

Name: _____

Title: _____

< Signature Page to Deposit Account Control Agreement - Without Activation >

Deposit Account:

Spheris Operations LLC - Depository (0037-8063-0441)

**DEPOSIT ACCOUNT CONTROL AGREEMENT - NOTICE OF TERMINATION**

[Letterhead of applicable Collateral Agent]

To:     Bank of America, N.A.
        [Address]

Re:     Spheris Operations LLC - Depository (0037-8063-0441)

Ladies and Gentlemen:

Reference is made to the Deposit Account Control Agreement dated as of February ___, 2010 (the "Agreement") Spheris Operations LLC, a Tennessee limited liability company ("Company") as a debtor and debtor-in-possession, _____, as [First/Second] Lien Collateral Agent, us and you regarding the above-described account (the "Account"). You are hereby notified that the Agreement is terminated with respect to the undersigned, and you have no further obligations to the undersigned thereunder. **[If the Deposit Account Control Agreement is being terminated as to all parties, add: Notwithstanding any previous instructions to you, you are hereby instructed to accept all future directions with respect to the Collateral from the Company.]** This notice terminates any obligations you may have to the undersigned with respect to the Collateral; *however,* nothing contained in this notice shall alter any obligations that you may otherwise owe to Company pursuant to any other agreement. The Agreement shall remain in effect until you are in receipt of notices in the form of this Exhibit B from both the First Lien Collateral Agent and the Second Lien Collateral Agent.

Very truly yours,

_____

as [First Lien/Second Lien]
    Collateral Agent


By:_____
Name:_____
Title:_____


cc:     [First Lien/Second] Collateral Agent
        Company

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Agreement is entered into as of February 3, 2010, and shall become effective in accordance with Recital F, below. This Agreement is entered into among **Spheris Inc.,** a Delaware corporation ("Parent") as a debtor and debtor-in-possession, **Spheris Operations LLC,** a Tennessee limited liability company ("Borrower") as a debtor and debtor-in-possession, and **Spheris Leasing LLC,** a Tennessee limited liability company ("Spheris Leasing") as a debtor and debtor-in-possession (each of Parent, Borrower and Spheris Leasing herein called a "Company" and, collectively, "Companies"), **Ableco L.L.C.,** a Delaware limited liability company, as collateral agent for the first Lien Secured Parties (as defined below) ("First Lien Collateral Agent"), **Ableco Finance LLC,** a Delaware limited liability company, as collateral agent for the Second Lien Secured Parties (as defined below) ("Second Lien Collateral Agent"; and together with the First Lien Collateral Agent, "Collateral Agents"); and **Bank of America, N.A.** ("Bank") with respect to the following:

A.      Companies have on February 3, 2010 (the "Filing Date") commenced cases (the "Chapter 11 Cases") under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and the Companies have retained possession of their assets and are authorized under the Bankruptcy Code to continue the operation of their businesses as debtors-in-possession.

B.      Bank has agreed to establish and maintain for each Company the deposit accounts listed in Exhibit A (each an "Account" and, collectively, the "Accounts").

C.      Each Company has, pursuant to a Superpriority Senior Secured Super-Priority Debtor-In-Possession Financing Agreement, dated as of February 3, 2010 (as modified, supplemented and amended from time to time, the "DIP Financing Agreement"), by and among Companies, certain other subsidiaries of Parent, Cratos Capital Management, LLC, a Delaware limited liability company ( "Cratos"), as administrative agent for the lenders thereunder (in such capacity, together with any successor administrative agent, the "First Lien Administrative Agent"), and First Lien Collateral Agent, assigned to First Lien Collateral Agent for the benefit of certain secured parties (the "First Lien Secured Parties"), represented by therein by the First Lien Collateral Agent, a security interest in and first lien on, among other things, all of each Company's right, title and interest in and to the Accounts and in checks and other payment instructions deposited in each Account ("Checks" and together with the Accounts, the "Collateral").

D.      Each Company has, pursuant to a Financing Agreement, dated as of July 17, 2007 (as modified, supplemented and amended from time to time, the "2007 Financing Agreement"), by and among Companies, certain other subsidiaries of Parent, Cratos, as administrative agent for the lenders thereunder (in such capacity, together with any successor administrative agent, the "Second Lien Administrative Agent"), and Second Lien Collateral Agent, and security documents entered into in connection with the 2007 Financing Agreement assigned to certain secured parties (the "Second Lien Secured Parties"), represented therein by

the Second Lien Collateral Agent, a security interest in and second lien on, among other things, all of each Company's right, title and interest in and to the Collateral.

        E.      Companies, Collateral Agents and Bank are entering into this Agreement to evidence each Collateral Agent's security interest in the Collateral and to provide for the disposition of net proceeds of Checks deposited in the Accounts.

        F.      This Agreement shall be effective only upon the occurrence of all of the following: (i) it has been executed by all of the parties hereto; (ii) signature pages evidencing such execution shall have been delivered to the Bank electronically; and (iii) the Bankruptcy Court shall have entered: (x) its Interim Order approving the interim relief sought pursuant to the Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364: (I) Authorizing Debtors to (A) Obtain Post-Petition Financing, and (B) Grant Senior Liens, Junior Liens and Superpriority Administrative Expense Status; (II) Approving Use of Cash Collateral; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief and (y) the Order approving the Debtors' Motion for Order Authorizing: (A) Continued Use of the Debtors' Cash Management System; (B) Continuation of Intercompany Transactions and According Administrative Expense Status to Claims for Such Transactions; (C) Maintenance and Continued Use of Existing Bank Accounts and Waiver of Certain Operating Guidelines Relating to Bank Accounts and the Requirements of Section 345 of the Bankruptcy Code; and (E) Granting Related Relief.

<u>Accordingly, each Company, each Collateral Agent and Bank agree as follows:</u>

1.     (a)    This Agreement constitutes an "authenticated record" and evidences each Collateral Agent's "control" over the Accounts and that each Account is a "deposit account" as each such term is defined in Article 9 of the Uniform Commercial Code as adopted by the State of New York. Notwithstanding anything to the contrary in the agreement between Bank and Companies governing the Accounts and the Deposit Account Control Agreement dated as of September 14, 2007 between Bank and Companies (the "Existing Control Agreement") governing the Accounts, Bank will comply with instructions originated by the Notice Agent (as defined below) as set forth herein directing the disposition of funds in the Accounts without further consent of Companies.

     (b)    Each Company represents and warrants to each Collateral Agent and Bank that it has not assigned or granted a security interest in the Collateral, except to the Collateral Agents.

     (c)    Each Company will not permit the Collateral to become subject to any other pledge, assignment, lien, charge or encumbrance of any kind, other than each Collateral Agent's respective security interests referred to herein.

     (d)    The Accounts may receive merchant card deposits and chargebacks. Each Company acknowledges and agrees that during the Activation Period (as defined below), chargebacks will be blocked from debiting the Accounts. Each Company further acknowledges and agrees that, prior to the Activation Period, it will arrange with its merchant card vendor for chargebacks to be directed towards an unblocked account.

2.      During the Activation Period, Bank shall prevent each Company from making any withdrawals from the Accounts. Prior to the Activation Period, each Company may operate and transact business through its Accounts in its normal fashion, including making withdrawals from the Accounts, but covenants to the Collateral Agents it will not close any Account. Bank shall have no liability in the event any Company breaches this covenant to the Collateral Agents. A reasonable period of time following the commencement of the Activation Period, and continuing on each Business Day thereafter, Bank shall transfer all available balances in excess of the Retained Balance (as defined below) in the Accounts to the Notice Agent at its account specified in the Notice (as defined below) without further consent by any Company or any other person. The "Activation Period" means the period which commences within a reasonable period of time not to exceed two Business Days after Bank's receipt of a written notice from the Notice Agent in the form of Exhibit B (the "Notice"). A "Business Day" is each day except Saturdays, Sundays and Bank holidays. Funds are not available if, in the reasonable determination of Bank, they are subject to a hold, dispute or legal process preventing their withdrawal. "Notice Agent" means (x) the First Lien Collateral Agent at all times prior to the date on which a Notice of Termination (as defined below) is received by Bank from the First Lien Collateral Agent pursuant to Section 10(c), and (y) the Second Lien Collateral Agent at all times thereafter. For the avoidance of doubt, there shall at all times be only one Notice Agent.

3.      Bank agrees it shall not offset, charge, deduct or otherwise withdraw funds from any Account, except as permitted by Section 4, until it has been advised in writing by the Collateral Agents that all of Companies' obligations that are secured by the Collateral are paid in full. Each Collateral Agent shall notify Bank promptly in writing upon payment in full of Companies' obligations.

4.      Bank is permitted to charge each Account:

        (a)     for its fees and charges relating to the Accounts or associated with this Agreement;

        (b)     in the event any Check deposited into the Accounts is returned unpaid for any reason or for any breach of warranty claim; and

        (c)     for any ACH credit entries that may have been originated by any Company but that have not settled at the time of Bank's receipt of the Notice or for any entries, whether credit or debit, that are subsequently returned thereafter.

Money and other items credited to the Accounts will not be subject to deduction, set-off, banker's lien, or any other right in favor of any person other than the Collateral Agents (except Bank may set off items specified above in this Section 4). If Bank has or subsequently obtains by agreement, operation of law, or otherwise a security interest in the Accounts or any funds credited thereto, Bank agrees that, except as set forth herein, such security interest shall be subordinate to the security interest of each Collateral Agent.

5.      (a)     If the balances in the Accounts are not sufficient to compensate Bank for any fees or charges due Bank in connection with the Accounts or this Agreement, Companies jointly and severally agree to pay Bank on demand the amount due Bank. Companies will have breached

this Agreement if they have not paid Bank, within five days after such demand, the amount due Bank.

(b)    If the balances in the Accounts are not sufficient to compensate Bank for any returned Check, Companies jointly and severally agree to pay Bank on demand the amount due Bank. If Companies fail to so pay Bank immediately upon demand each Collateral Agent agrees to pay Bank within five days after Bank's demand to such Collateral Agent to pay any amount received by such Collateral Agent, during the Activation Period, with respect to such returned Check. The failure to so pay Bank shall constitute a breach of this Agreement.

(c)    Each Company hereby authorizes Bank, without prior notice, from time to time to debit any other account such Company may have with Bank for the amount or amounts due Bank under subsection 5(a) or 5(b).

6.    (a)    Bank will send any information regarding deposits to the Accounts to the address specified below for Companies or as otherwise specified in writing by Companies to Bank, and will send a copy of each such deposit advice to the address specified below for each Collateral Agent.

(b)    In addition to the original Bank statement provided to Companies, Bank will provide each Collateral Agent with a duplicate of such statement.

7.    (a)    Bank will not be liable to any Company or either Collateral Agent for any expense, claim, loss, damage or cost ("Damages") arising out of or relating to its performance under this Agreement other than those Damages which result directly from its acts or omissions constituting negligence or intentional misconduct.

(b)    In no event will Bank be liable for any special, indirect, exemplary or consequential damages, including but not limited to lost profits.

(c)    Bank will be excused from failing to act or delay in acting, and no such failure or delay shall constitute a breach of this Agreement or otherwise give rise to any liability of Bank, if (i) such failure or delay is caused by circumstances beyond Bank's reasonable control, including but not limited to legal constraint, emergency conditions, action or inaction of governmental, civil or military authority, fire, strike, lockout or other labor dispute, war, riot, theft, flood, earthquake or other natural disaster, breakdown of public or private or common carrier communications or transmission facilities, equipment failure, or negligence or default of any Company or either Collateral Agent or (ii) such failure or delay resulted from Bank's reasonable belief that the action would have violated any guideline, rule or regulation of any governmental authority.

(d)    Bank shall have no duty to inquire or determine whether any Company's obligations to the Collateral Agents are in default or whether the Notice Agent is entitled to provide the Notice to Bank. Bank may rely on notices and communications it believes in good faith to be genuine and given by the appropriate party.

(e)    Notwithstanding any of the other provisions in this Agreement, in the event of the existence or commencement of a case pursuant to Title 11, United States Code, filed by or

against any Company, or in the event of the existence or commencement of any similar case under then applicable federal or state law providing for the relief of debtors or the protection of creditors by or against any Company, Bank may act as Bank deems necessary to comply with all applicable provisions of governing statutes and shall not be in violation of this Agreement as a result.

(f)     Bank shall be permitted to comply with any writ, levy order or other similar judicial or regulatory order or process concerning the Collateral and shall not be in violation of this Agreement for so doing.

8.     (a)     Companies jointly and severally shall indemnify Bank against, and hold it harmless from, any and all liabilities, claims, costs, expenses and damages of any nature (including but not limited to allocated costs of staff counsel, other reasonable attorney's fees and any fees and expenses) in any way arising out of or relating to disputes or legal actions concerning Bank's provision of the services described in this Agreement. This section does not apply to any cost or damage attributable to the gross negligence or intentional misconduct of Bank. Companies' obligations under this section shall survive termination of this Agreement.

(b)     Each Collateral Agent hereby agrees to indemnify, defend and hold harmless Bank against any loss, liability or expense (including but not limited to allocated costs of staff counsel, other reasonable attorney's fees and any fees and expenses) arising from Bank complying with any written instructions of such Collateral Agent pursuant to this Agreement other than if related to Bank's gross negligence, bad faith, or willful misconduct. Collateral Agents' obligations under this section shall survive termination of this Agreement.

9.     (a)     Companies jointly and severally shall pay to Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in connection with the enforcement of this Agreement and any instrument or agreement required hereunder, including but not limited to any such costs, expenses and fees arising out of the resolution of any conflict, dispute, motion regarding entitlement to rights or rights of action, or other action to enforce Bank's rights in a case arising under Title 11, United States Code. Companies jointly and severally agree to pay Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in the preparation and administration of this Agreement (including any amendments hereto or instruments or agreements required hereunder).

(b)     Each Collateral Agent shall pay to Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in connection with the enforcement against such Collateral Agent of this Agreement and any instrument or agreement required hereunder to the extent that Bank is the prevailing party in such enforcement action. The Bank shall pay to the applicable Collateral Agent, upon receipt of such Collateral Agent's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by such Collateral Agent in connection with the enforcement against the Bank of this Agreement and any instrument or agreement required hereunder to the extent that such Collateral Agent is the prevailing party in such enforcement action.

10. Termination and Assignment of this Agreement shall be as follows:

(a)    Either Collateral Agent may assign this Agreement upon 30 day's prior written notice to Companies, the other Collateral Agent and Bank. Bank may terminate this Agreement upon 30 days' prior written notice to Companies and each Collateral Agent. Companies may not terminate this Agreement except with the written consent of each Collateral Agent and upon prior written notice to Bank.

(b)    Notwithstanding subsection 10(a), Bank may terminate this Agreement at any time by written notice to Companies and each Collateral Agent if either Companies or any one of the Collateral Agents breaches any of the terms of this Agreement, or, in the case of Companies, any other agreement with Bank.

(c)    This Agreement shall terminate with respect to the First Lien Collateral Agent, but shall remain in effect with respect to Companies, the Second Lien Collateral Agent and Bank, upon receipt by Bank (with a copy to the Second Lien Collateral Agent) of a written notice substantially in the form of Exhibit C hereto (a "Notice of Termination") signed by the First Lien Collateral Agent. This Agreement shall terminate with respect to the Second Lien Collateral Agent, but shall remain in effect with respect to Companies, the First Lien Collateral Agent and Bank, upon receipt by Bank (with a copy to the First Lien Collateral Agent) of a Notice of Termination signed by the Second Lien Collateral Agent. The termination of this Agreement shall not alter the obligations of Bank to Companies pursuant to any other agreement with respect to the Accounts.

11.    (a)    Each party represents and warrants to the other parties that (i) this Agreement constitutes its duly authorized, legal, valid, binding and enforceable obligation; (ii) the performance of its obligations under this Agreement and the consummation of the transactions contemplated hereunder will not (A) constitute or result in a breach of its certificate or articles of incorporation, by-laws or partnership agreement, as applicable, or the provisions of any material contract to which it is a party or by which it is bound or (B) result in the violation of any law, regulation, judgment, decree or governmental order applicable to it; and (iii) all approvals and authorizations required to permit the execution, delivery, performance and consummation of this Agreement and the transactions contemplated hereunder have been obtained.

(b)    The parties each agree that it shall be deemed to make and renew each representation and warranty in subsection 11(a) on and as of each day on which any Company uses the services set forth in this Agreement.

12.    (a)    This Agreement may be amended only by a writing signed by Companies, each Collateral Agent and Bank; except that Bank's charges are subject to change by Bank upon 30 days' prior written notice to Companies.

(b)    This Agreement may be executed in counterparts; all such counterparts shall constitute but one and the same agreement.

(c)    This Agreement controls in the event of any conflict between this Agreement and any other document or written or oral statement. This Agreement and the Deposit Account Control Agreement, Account Without Activation dated as of the date hereof and effective in

accordance with Recital F, above, among Borrower, First Lien Collateral Agent, Second Lien Collateral Agent and Bank, jointly supersede all prior understandings, writings, proposals, representations and communications, oral or written, including the Existing Control Agreement, of any party relating to the subject matter hereof and jointly amend and restate the Existing Control Agreement.

(d) This Agreement shall be interpreted in accordance with New York law without reference to that state's principles of conflicts of law.

13. Any written notice or other written communication to be given under this Agreement shall be addressed to each party at its address set forth on the signature page of this Agreement or to such other address as a party may specify in writing. Except as otherwise expressly provided herein, any such notice shall be effective upon receipt.

14. Nothing contained in the Agreement shall create any agency, fiduciary, joint venture or partnership relationship between Bank, any Company or either Collateral Agent.

15. During the Activation Period, there shall remain at all times an aggregate minimum balance of $450,000 (the "Retained Balance") in one or more Accounts maintained by any Company at the Bank for the benefit of Bank to pay amounts owed, if any, to Bank under Sections 4, 5, 8 and 9 of this Agreement. Nothing in this Section 15 of this Agreement shall require the Retained Balance immediately prior to the commencement of the Activation Period to be at least $450,000 or require any Company to deposit funds in such Accounts in order to reach the Retained Balance level.

*The remainder of this page is intentionally left blank.*

In Witness Whereof, the parties hereto have executed this Agreement by their duly authorized officers as of the day and year first above written.

**Spheris Inc.**

**("Parent")**

By: _____

Name: _____

Title: _____

Address for notices:
9009 Carothers Parkway
Franklin, TN 37067
Attention: Chief Financial Officer
Facsimile: (615) 261-1792

**Spheris Operations LLC**

**("Borrower")**

By: _____

Name: _____

Title: _____

Address for notices:
9009 Carothers Parkway
Franklin, TN 37067
Attention: Chief Financial Officer
Facsimile: (615) 261-1792

**Spheris Leasing LLC**

**("Spheris Leasing")**

By: _____

Name: _____

Title: _____

Address for notices:
9009 Carothers Parkway
Franklin, TN 37067
Attention: Chief Financial Officer
Facsimile: (615) 261-1792

**Ableco, L.L.C.**
**("First Lien Collateral Agent")**

By: _____

Name: _____

Title: _____

Address for notices:

299 Park Avenue, 23rd Floor
New York, NY 10171
Attention:      Gerald M. Daniello
Telephone:      (212) 284-7810
Telecopier:     (212) 909-1489

< Signature Page to Deposit Account Control Agreement - With Activation >

**Ableco Finance, LLC**
**("Second Lien Collateral Agent")**

By: _____
Name: _____
Title: _____

Address for notices:

299 Park Avenue, 23rd Floor
New York, NY 10171
Attention:      Gerald M. Daniello
Telephone:     (212) 284-7810
Telecopier:     (212) 909-1489

< Signature Page to Deposit Account Control Agreement - With Activation >

**Bank of America, N.A.**
**("Bank")**

By: _____
Name: _____
Title: _____

Address for notices:

Bank of America, N.A.

2000 Clayton Road, Building D
Concord, CA 94520-2425
Attn: Blocked Account Support
Mail Code: CA4-704-06-37

Telephone: 925.675.7169
Facsimile: 877.207.2524

< Signature Page to Deposit Account Control Agreement - With Activation >

Deposit Accounts:

Spheris Leasing LLC - Operating Account (0037-8207-7141)
Spheris Leasing LLC - Payroll Account (0037-8207-7154)
Spheris Leasing LLC - Accounts Payable (0037-8207-7167)
Spheris Operations LLC -Accounts Payable (0037-8685-8609)
Spheris Operations LLC - Payroll (0037-8063-0467)
Spheris Operations LLC - Merchant e-chart (0044-4028-7379)
Spheris Inc. - Depository Account (0037-8685-8780)
Spheris Inc. - Accounts Payable (0037-8685-8777)

# DEPOSIT ACCOUNT CONTROL AGREEMENT

[Letterhead of applicable Collateral Agent]

To:   Bank of America, N.A.
      [Address]

Re:   Spheris Leasing LLC - Operating Account (0037-8207-7141)
      Spheris Leasing LLC - Payroll Account (0037-8207-7154)
      Spheris Leasing LLC - Accounts Payable (0037-8207-7167)
      Spheris Operations LLC -Accounts Payable (0037-8685-8609)
      Spheris Operations LLC - Payroll (0037-8063-0467)
      Spheris Operations LLC - Merchant e-chart (0044-4028-7379)
      Spheris Inc. - Depository Account (0037-8685-8780)
      Spheris Inc. - Accounts Payable (0037-8685-8777)

Ladies and Gentlemen:

　　　　Reference is made to the Deposit Account Control Agreement dated as of February __ 2010 (the "Agreement") among Spheris Inc., a Delaware corporation ("Parent") as a debtor and debtor-in-possession, Spheris Operations LLC, a Tennessee limited liability company ("Borrower") as a debtor and debtor-in-possession, and Spheris Leasing LLC, a Tennessee limited liability company ("Spheris Leasing") as a debtor and debtor-in-possession (each of Parent, Borrower and Spheris Leasing herein called a "Company" and, collectively, "Companies"), _____, us, [_____, as Second Lien Collateral Agent] and you regarding the above-described accounts (the "Accounts"). In accordance with Section 2 of the Agreement, we, as Notice Agent under the Agreement, hereby give you notice of our exercise of control of the Accounts. [You are hereby instructed not to accept any direction, instructions or entitlement orders with respect to the Accounts from any person other than the undersigned, unless otherwise ordered by a court of competent jurisdiction.] [We hereby instruct you to transfer funds to our account as follows:

Bank Name:      _____
ABA No.:        _____
Account Name:_____
Account No.:    _____

　　　　　　　　　　Very truly yours,

　　　　　　　　　　_____, as Notice Agent

　　　　　　　　　　By:_____
　　　　　　　　　　Name:_____
　　　　　　　　　　Title:_____

cc:     _____ (Company)
        [Second Lien Collateral Agent]

**EXHIBIT C**
**DEPOSIT ACCOUNT CONTROL AGREEMENT**

[Letterhead of applicable Collateral Agent]

To:    Bank of America, N.A.
       [Address]

Re:    Spheris Leasing LLC - Operating Account (0037-8207-7141)
       Spheris Leasing LLC - Payroll Account (0037-8207-7154)
       Spheris Leasing LLC - Accounts Payable (0037-8207-7167)
       Spheris Operations LLC -Accounts Payable (0037-8685-8609)
       Spheris Operations LLC - Payroll (0037-8063-0467)
       Spheris Operations LLC - Merchant e-chart (0044-4028-7379)
       Spheris Inc. - Depository Account (0037-8685-8780)
       Spheris Inc. - Accounts Payable (0037-8685-8777)

Ladies and Gentlemen:

Reference is made to the Deposit Account Control Agreement dated as of February __, 2010 (the "Agreement") among Spheris Inc., a Delaware corporation ("Parent") as a debtor and debtor-in-possession, Spheris Operations LLC, a Tennessee limited liability company ("Borrower") as a debtor and debtor-in-possession, and Spheris Leasing LLC, a Tennessee limited liability company ("Spheris Leasing") as a debtor and debtor-in-possession (each of Parent, Borrower and Spheris Leasing herein called a "Company" and, collectively, "Companies"), _____, as [First/Second] Lien Collateral Agent, us and you regarding the above-described accounts (the "Accounts"). You are hereby notified that the Agreement is terminated with respect to the undersigned, and you have no further obligations to the undersigned thereunder. **[If the Deposit Account Control Agreement is being terminated as to all parties, add: Notwithstanding any previous instructions to you, you are hereby instructed to accept all future directions with respect to the Collateral from the Companies.]** This notice terminates any obligations you may have to the undersigned with respect to the Collateral; *however*, nothing contained in this notice shall alter any obligations that you may otherwise owe to Companies pursuant to any other agreement. The Agreement shall remain in effect until you are in receipt of notices in the form of this Exhibit C from both the First Lien Collateral Agent and the Second Lien Collateral Agent.

Very truly yours,

_____

as [First Lien/Second Lien]
   Collateral Agent

By:_____
Name:_____
Title:_____

cc:    [First Lien/Second] Collateral Agent