# EXHIBIT B

## Bidding Procedures Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re                              :     Chapter 11

Spheris Inc., <u>et al.</u>,           :     Case No. 10-*10352* ( *KJ* )

           Debtors.       :     Jointly Administered
                                         **Ref. Docket No. _____**

-------------------------------------------------------------x

### ORDER: (I) APPROVING BID PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS; (II) SCHEDULING HEARING TO CONSIDER SALE OF ASSETS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; (IV) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[1] of the above-captioned debtors (collectively, the "Debtors"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of orders approving, among other things, the sale of substantially all of the assets of the Debtors, related bidding procedures, and certain protections for potential purchasers of such assets; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**FOUND AND DETERMINED THAT:**

A. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable. See Bankruptcy Rule 7052.

B. This Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D. The Debtors' proposed notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction (as defined in the Bidding Procedures), the sale of the Purchased Assets, and the Bidding Procedures to be employed in connection therewith.

E. The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (a) the payment of the Break-Up Fee and Expense Reimbursement, if necessary, to the Purchaser in accordance with the Stalking Horse Purchase Agreement; (b) the scheduling of a bid deadline, auction and sale hearing with respect to the proposed sale of the Purchased Assets; and (c) the establishment of procedures to fix the Cure Amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Assumed Contracts and Assumed Leases.

F. The Stalking Horse Purchase Agreement and its terms were negotiated by the Debtors and the Purchasers in good faith and at arms-length.

2

G.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

H.     The Debtors have demonstrated that the Break-Up Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtors' estates by inducing the Purchasers' bid, which has established a bid standard or minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, if any, the Debtors receive the highest or best bid possible for the Purchased Assets.

I.     The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted as set forth herein.

2.     All Objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.     The Bidding Procedures, in substantially the form attached hereto as Schedule 1, are incorporated herein and approved, and shall apply with respect to the sale of the Purchased Assets.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.     As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "Bid Deadline") is [_____] at [12:00 noon] (prevailing Eastern Time).  No bid shall be deemed to be a Qualified Bid (as defined in the

Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

5.   Ableco Finance LLC as Collateral Agent (the "Prepetition Agent") for the prepetition lenders (the "Prepetition Lenders") and Ableco L.L.C. as collateral agent (the "DIP Agent", and together with the Prepetition Agent, the "Agent") for the DIP lenders (the "DIP Lenders", and together with the Prepetition Lenders, the "Lenders") for themselves and on behalf of the Lenders shall be permitted but not compelled to credit bid up to the full amount of the Lenders' prepetition secured claims and claims related to the postpetition debtor in possession financing against the Debtors at the Auction and said credit bid shall constitute for all purposes a Qualified Bid and the Agent shall for all purposes be deemed a Qualified Bidder and shall not be required under any circumstances to furnish a deposit in connection with its credit bid.

6.   The Debtors may sell the Purchased Assets by conducting an Auction in accordance with the Bidding Procedures. If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on [_____] at [10:00 a.m.] (prevailing Eastern Time) at the offices of Willkie Farr & Gallagher, LLP, 787 Seventh Avenue, New York, New York 10019, or such other place and time as the Debtors shall notify all Qualified Bidders, the Committee, and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtors may promptly seek Bankruptcy Court approval of the Stalking Horse Purchase Agreement.

7.   Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

8.     The Sale Hearing shall be held before this Court on [_____] at [10:00 a.m.] (prevailing Eastern Time), or as soon thereafter as counsel and interested parties may be heard.

9.     On or before five (5) business days after entry of this Bidding Procedures Order, the Debtors will cause: (A) the notice, substantially in the form attached hereto as Schedule 2 (the "Notice of Auction and Sale Hearing"), and the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (a) the U.S. Trustee; (b) counsel for any statutory committee in these cases, if and when appointed; (c) counsel to the agents for the Debtors' prepetition secured lenders; (d) counsel to the agents for the Debtors' postpetition secured lenders; (e) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (f) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (g) all persons known or reasonably believed to have asserted an interest on any of the Purchased Assets; (h) the non-Debtor parties to the Executory Contracts and Unexpired Leases; (i) all Persons known or reasonably believed to have expressed an interest in acquiring all or substantially all of the Purchased Assets within the last six months; (j) the Attorneys General in the State(s) where the Purchased Assets are located; (k) the Environmental Protection Agency; (l) all state and local environmental agencies in any jurisdiction where the Seller owns or has owned or used real property; and (m) counsel to the Purchasers.[2] In addition to the foregoing, (i) electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on: (a) the Court's website, www.deb.uscourts.gov; and (b) the case website maintained by the Debtors'

---

[2]     The Notice of Auction and Sale Hearing will direct parties to contact Jefferies & Company, Inc., investment banker for the Debtors, for more information and will provide that any party in interest that wishes to obtain a copy of any related document (including the Stalking Horse Purchase Agreement), subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

claims and noticing agent, Garden City Group, Inc. at www.gardencitygroup.com/cases/spheris; and (ii) on or before three (3) business days after entry of the Bidding Procedures Order, the Debtors will: (a) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtors; and (b) subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in one national publication the Debtors deem appropriate.

10.     On or before five (5) business days after the entry of the Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases, substantially in the form attached hereto as Schedule 3 (the "Notice of Assumption and Assignment"), on all non-debtor parties to the Executory Contracts and Unexpired Leases. The Assumption Notice shall identify whether each Executory Contract or Unexpired Lease is a Purchased Asset and the calculation of the undisputed cure amounts that the Debtors believe must be paid to cure all defaults outstanding under the Executory Contracts and Unexpired Leases as of such date (the "Cure Amounts"). In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to Purchasers not set forth in the original Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

11.     Unless the non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount, and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Eastern Time) on the date that is three (3) business days prior to the Bid Deadline or (ii) ten (10) days after service of the Supplemental

Notice of Assumption and Assignment (collectively, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on the same day to: (a) the Debtors, 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067 (Attn: Russ Adkins, Esq.); (b) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (c) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Michael J. Kelly, Esq. and Shaunna D. Jones, Esq.), co-counsel to the Debtors; (d) counsel to any statutory committee that may be appointed in these cases; (e) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: [_____]); (f) (a) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (Attn: Adam C. Harris and Lawrence V. Gelber), and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, P.O. Box 2087, Wilmington, DE 19899 (Attn: Adam G. Landis, Esq.), co-counsel to the Agent; and (g) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019 (Attn: Richard G. Mason, Esq. and Andrew J. Nussbaum, Esq.), counsel to the Purchasers; then such non-debtor party will (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease was identified as a Purchased Asset and the Purchasers are the Successful Bidder, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease either to the Purchasers or a Purchaser Designee, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Purchasers, the Purchaser Designee, or such other

Successful Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.

12.     If an objection challenges a Cure Amount, the objection must set forth the prepetition cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of an objection to a Cure Amount, the Debtors may, in their sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Debtors and the objecting party. If the Debtors hold the Claimed Cure Amount in reserve, the Debtors may assume and assign the Assumed Contract that is the subject of an objection relating to that Assumed Contract's Cure Amount without further delay.

13.     The Debtors, the Purchasers, or the other Successful Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease (an "Excluded Contract") from the list of Purchased Assets at any time prior to the consummation of the Sale. The non-debtor party or parties to any such Excluded Contract will be notified of such exclusion by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

14.     In the event that the Purchasers are not the Successful Bidder for the Purchased Assets and for those Executory Contracts and Unexpired Leases identified in the Notice of Assumption and Assignment, within two (2) business days after the conclusion of the Auction for the Purchased Assets, the Debtors will serve a notice identifying the Successful Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid. The non-debtor parties to the Executory Contracts and

Unexpired Leases will have until 4:00 p.m. on the date that is two (2) business days prior to the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

15.     Objections to the sale of the Purchased Assets, or the relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (prevailing Eastern Time) on [_____], or such later date and time as the Debtors may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Notice Parties. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

16.     The Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Purchased Assets, substantially in the forms annexed hereto as Schedule 2 and Schedule 3, respectively, are approved.

17.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

18.     The Break-Up Fee and Expense Reimbursement, as set forth in the Stalking Horse Purchase Agreement, are approved. The obligations of Debtors to pay the Break-Up Fee and Expense Reimbursement: (i) shall be entitled to administrative expense claim status

under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (ii) shall not be subordinate to any other administrative expense claim against the Debtors (other than any super-priority claim granted under the DIP Order, any carve-out for professional fees and expenses included in the DIP Order, or any adequate protection order in existence as of the date hereof); and (iii) shall survive the termination of the Stalking Horse Purchase Agreement.

19.     Except as otherwise provided herein and in the Bidding Procedures, Local Rule 6004-1(c)(ii) is waived.

20.     Except as otherwise provided in the Stalking Horse Purchase Agreement or this Bidding Procedures Order, and subject to the right of the Agent to Credit Bid and the classification of any such Credit Bid as a Qualified Bid and the Agent as a Qualified Bidder for all purposes, the Debtors shall have the right as they may reasonably determine (after consultation with the Agent and the official committee of unsecured creditors, as applicable) to be in the best interests of their estates, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (c) remove some of the Purchased Assets from the Auction; (d) waive terms and conditions set forth herein with respect to all potential bidders; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; (g) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (h) modify the Bidding Procedures as the Debtors (after consultation with the Agent) may determine

to be in the best interest of their estates or to withdraw the Motion at any time with or without prejudice.

21.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

22.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated: _____
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## Schedule 1

### Bidding Procedures

# BIDDING PROCEDURES

By a motion dated February 3, 2010 (the "Motion"), Spheris Holding II, Inc., Spheris Inc., Spheris Operations LLC, Vianeta Communications, Spheris Leasing LLC, and Spheris Canada Inc., as debtors and debtors in possession (collectively, the "Debtors") sought, among other things, approval of the procedures related to the proposed sale of substantially all of the Purchased Assets and Spheris India Capital Stock (as defined below). On _____, 2010, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Sale Procedures Order") authorizing the Debtors to market the Purchased Assets and Spheris India Capital Stock through, among other means, the bidding procedures described below (the "Bidding Procedures"). As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Purchased Assets and the Spheris India Capital Stock to the Successful Bidder (as defined below), to be conducted on _____, at _____ (prevailing Eastern Time), in Room [ ] at the Bankruptcy Court, before the Honorable [ ] (the "Sale Hearing").

## I.    Stalking Horse Bid

The Debtors have executed a Stock and Asset Purchase Agreement (collectively with all ancillary documents and agreements, the "Purchase Agreement") with Medquist, Inc. and CBay, Inc. as purchasers ("Purchasers"), dated as of February ___, 2010, which contemplates a set of related transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets and Spheris India Capital Stock to the Purchasers in consideration for the Purchase Price (as defined in the Purchase Agreement), all subject to the terms and conditions set forth in the Purchase Agreement.

## II.    Important Dates for Potential Competing Bidders

These Bidding Procedures provide for an opportunity for interested parties to qualify and participate in the Auction (as defined below) and submit competing bids for all or substantially all of the Purchased Assets and Spheris India Capital Stock.  The Debtors shall, in consultation with the Agent (as defined below):

(a)    assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept Bids (as defined below) until _____ (prevailing Eastern Time), on _____;

(b)    conduct an auction (the "Auction") among Qualified Bidders (as defined below) on _____ to identify the Successful Bid (as defined below); and

(c)    seek authority to sell all or substantially all of the Purchased Assets and Spheris India Capital Stock to the Successful Bidder(s) (as defined below) at the Sale Hearing.

### III.  Assets to Be Sold

The Debtors seek to sell substantially all of the Debtors' assets, defined as the "Purchased Assets" in Section 2.1 of the Purchase Agreement, including the Assumed Contracts and Assumed Leases, and, in addition, all right, title and interest in and to the Spheris India Capital Stock (as such terms are defined in the Purchase Agreement).

### IV.  The Bidding Process

The Debtors shall: (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Purchased Assets and Spheris India Capital Stock; (b) determine whether any person or entity is a Qualified Bidder (as defined below); (c) receive and evaluate bids from Qualified Bidders; and (d) administer the Auction. The foregoing activities are referred to, collectively, as the "Bidding Process."

Any person or entity who wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders below and must thereafter submit a Qualified Bid to become a Qualified Bidder.  Notwithstanding the foregoing, or any requirement set forth in Section V or VII of these Bidding Procedures, the Agent (as defined below), for itself and on behalf of the Lenders (as defined below), shall be deemed to be a Potential Bidder and a Qualified Bidder for all purposes in connection with these Bidding Procedures and, pursuant to 11 U.S.C. §363(k), shall be permitted, but not compelled, to credit bid up to the full amount of the Lenders' prepetition secured claims and claims related to postpetition debtor in possession financing against the Debtors at the Auction.

### V.  Participation Requirements

To participate in the Bidding Process, each interested person or entity must deliver the following documents to the parties set forth below (the "Participation Materials"):

(a)     An executed confidentiality agreement in form and substance satisfactory to the Debtors;

(b)     A statement demonstrating to the Debtors' and Agent's satisfaction a *bona fide* interest in purchasing all of the Purchased Assets and Spheris India Capital Stock from the Debtors;

(c)     Current audited financial statements of (i) the Potential Bidder, or (B) if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements of the equity holder(s) of the Potential Bidder who shall either guarantee the obligations of the Potential Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement reasonably acceptable to the Debtors and the Agent; and

(d)     Information that can be publicly filed and/or disseminated representing that the Potential Bidder has the financial wherewithal to satisfy adequate assurance requirements with respect to the Assumed Contracts and Assumed Leases under the Bankruptcy Code, which

information may be required to be supplemented at the request of the Debtors or other parties in interest.

The Participation Materials must be transmitted so as to be received no later than _____ (prevailing Eastern Time), on _____ by each of the following parties (collectively, the "Notice Parties"): (i) the Debtors, 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067 (Attn: Robert Butler); (ii) co-counsel to the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019-6099 (Attn: Michael J. Kelly, Esq. and Mark A. Cognetti, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.); (iii) financial advisors to the Debtors, Jefferies & Company, Inc., 1050 Winter Street, Waltham, MA (Attn: Jason Auerbach and Jasson S. Cohen) ("Jefferies"); (iv) co-counsel to Ableco Finance LLC as collateral agent (the "Prepetition Agent") for the prepetition lenders (the "Prepetition Lenders") and Ableco L.L.C. as collateral agent (the "DIP Agent", and together with the Prepetition Agent, the "Agent") for the DIP lenders (the "DIP Lenders", and together with the Prepetiton Lenders, the "Lenders"), (a) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (Attn: Adam C. Harris and Lawrence V. Gelber), and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, P.O. Box 2087, Wilmington, DE 19899 (Attn: Adam G. Landis, Esq.); and (v) counsel to the official committee of unsecured creditors (the "Committee") [          ].

Any party that delivers the Participation Materials shall be a "Potential Bidder," and by delivering the Participation Material each Potential Bidder acknowledges that its identity will be made public, including in court filings. If the Debtors determine that a Potential Bidder has a *bona fide* interest in all or substantially all of the Purchased Assets and Spheris India Capital Stock, then no later than two (2) business days after such determination, the Debtors will deliver to the Potential Bidder: (a) an electronic copy of the Purchase Agreement; and (b) access information for a confidential electronic data room concerning the Purchased Assets and Spheris India Capital Stock which shall contain any and all documents furnished by the Debtors to the Purchasers in connection with its due diligence in connection with the Purchase Agreement (the "Data Room").

## VI.    Due Diligence

Until the Bid Deadline (as defined below), the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. All due diligence requests shall be directed to Jefferies, as indicated above. The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. If the Debtors determine that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder, the Debtors shall post such materials in the Data Room and provide email notice of such posting to all Potential Bidders, as well as to the Notice Parties, and shall provide such materials to the Purchasers.

Unless otherwise determined by the Debtors, in consultation with the Agent and the Creditors Committee, the availability of additional due diligence to a Potential Bidder will cease on the Bid Deadline. Except as provided above with respect to the copy of the Purchase Agreement provided by the Debtors to the Potential Bidders, and information in the Data Room, neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets and Spheris India Capital Stock to any party.

## VII.  Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid to the Notice Parties so as to be received not later than _____ (prevailing Eastern Time), on _____, 2010 (the "Bid Deadline").

## VIII.  Bid Requirements

To participate in the Auction, if any, a bidder must deliver to the Notice Parties a written offer, which must provide or otherwise comply with, at a minimum, the items noted below to be deemed a "Qualified Bid:"

(a)     The Potential Bidder offers to purchase all or substantially all of the Purchased Assets and Spheris India Capital Stock from the Debtors at the purchase price and upon the terms and conditions set forth in an executed purchase agreement in the same form as the Purchase Agreement, and submits to the Notice Parties an executed clean copy of its purchase agreement together with a marked copy showing any proposed changes to the Purchase Agreement (the "Marked Agreement");

(b)     The bid is not subject to any due diligence or financing contingency, is not conditioned on bid protections, other than those contemplated in the Bidding Procedures for subsequent overbids, and is not subject to any future corporate or governmental consent or approval.

(c)     The purchase price in such bid is a higher and/or better offer for the Purchased Assets and Spheris India Capital Stock (as compared to the offer of the Purchasers), and such offer shall not be considered a higher and/or better offer unless such bid provides for net consideration to the Debtors' estates of at least $3,000,000 more than that provided by the Purchasers, such amount to be deemed to include the amount of the Break-Up Fee and the Expense Reimbursement (the "Minimum Overbid Purchase Price");

(d)     The bid is received by the Debtors by the Bid Deadline;

(e)     The bid does not entitle a bidder to any break-up fee, termination fee or similar type of payment or reimbursement and, by submitting a bid the bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or the Bidding Procedures;

(f)     A cash deposit in the amount of 10% of the purchase price of the bid; and

(g)     The bid demonstrates the Qualified Bidder's commitment to pay all Cure Costs and ability to provide adequate assurance of future performance under any executory contracts or unexpired leases to be assumed and/or assigned pursuant to such bid.

A Potential Bidder shall accompany its bid with: (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder and such other evidence of ability to consummate the Sale Transaction as the Debtors, in consultation with the Agent and the Creditors Committee, may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws or other aspects of the bid.

A bid received from a Potential Bidder will be considered a "Qualified Bid" only if it meets the above requirements. Each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes hereof, both the Agent for itself and on behalf of the Lenders and the Purchasers constitute Qualified Bidders and the Agent's Credit Bid for itself and on behalf of the Lenders and the Purchase Agreement executed by the Purchasers are Qualified Bids. The Agent shall not be required to furnish a cash deposit in connection with its Credit Bid. A Qualified Bid will be valued based upon factors such as: (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the ability to close the proposed Sale Transaction without delay and within the timeframes contemplated by the Purchase Agreement; (d) the ability to obtain all necessary antitrust or other regulatory approvals for the proposed transaction; and (e) any other factors the Debtors may deem relevant. Within one day after the Debtors, in consultation with the Agent, determine that a bid is a Qualified Bid, the Debtors shall distribute a copy of such bid to counsel to the Purchasers by e-mail, hand delivery or overnight courier. The Debtors also shall provide copies of all Qualified Bids to each of the other Qualified Bidders promptly following the expiration of the Bid Deadline.

The Debtors, in consultation with the Agent, shall reject any bid if, among other things, such bid:

(i)     is on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement; or

(ii)     includes a non-cash instrument or similar consideration that is not freely marketable.

Any bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

## IX.     The Auction

In the event that the Debtors receive one or more Qualified Bids (other than the bid of the Purchasers), the Debtors will hold an auction (the "Auction") on [_____], commencing at 9:00 a.m. (prevailing Eastern Time) at the offices of Willkie Farr & Gallagher LLP, co-counsel

to the Debtors, at 787 Seventh Avenue, New York, New York, for consideration of the Qualified Bids, each as may be increased at such Auction. Bidding will start at the highest Qualified Bid and will continue with minimum bid increments of $500,000, subject to the right of the Purchasers to credit the Break-Up Fee (as defined in the Purchase Agreement) to its bid at each round of bidding. The auction may be adjourned as the Debtors deem appropriate. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to all entities that submitted a Qualified Bid.

The Auction shall run in accordance with the following procedures:

(a)     Only the Debtors, proper representatives of statutorily appointed committees, the Agent, or other constituents permitted in advance by the Debtors, the Purchasers and any other Qualified Bidder that has timely submitted a Qualified Bid, shall attend the Auction in person, and only the Purchasers and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale by the Debtors of the Purchased Assets and Spheris India Capital Stock.

(c)     At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder. At least one (1) Business Day prior to the Auction, the Debtors will provide notice of the Qualified Bid which the Debtors believe, in their reasonable business judgment, is the highest or otherwise best offer (the "Starting Bid") to the Purchasers, the Agent, and all other Qualified Bidders which have informed the Debtors of their intent to participate in the Auction.

(d)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person. All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

(e)     The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine, in consultation with the Agent and the Creditors Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estate of at least U.S. $500,000 over the Starting Bid or the Leading Bid, as the case may be. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchasers), the Debtors will, at each round of bidding, give effect to the Break-Up Fee that may be payable to the Purchasers under the Agreement, as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors by such Qualified Bid.

## X.     The Successful Bid

Immediately at the conclusion of the Auction, the Debtors shall, in consultation with the Agent and Creditors Committee (a) determine, consistent with the Bidding Procedures, which bid constitutes highest and best bid (such bid, the "Successful Bid") and (b) communicate to the Purchasers and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. At such time, the Debtors shall, in consultation with the Agent and the Creditors Committee, also determine which bid constitutes the second highest and best bid (such bid, the "Back Up Bid") and communicate to Purchasers and other Qualified Bidders the identity of the Back up Bidder and the details of the Back Up Bid. In no circumstances will Purchasers be required to be the Back Up Bidder. If no Qualified Bids are received other than the Purchase Agreement, the Purchase Agreement shall be designated as the Successful Bid, and there shall be no Auction. The bidder making the Successful Bid is referred to as the "Successful Bidder." The determination of the Successful Bid and the Back Up Bid by the Debtors at the conclusion of the Auction, in consultation with the Agent and Creditors Committee, shall be final subject to approval by the Bankruptcy Court. The Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Court has entered an order approving such Successful Bid.

EACH QUALIFIED BID SUBMITTED (OTHER THAN THE PURCHASE AGREEMENT, WHICH MAY BE TERMINATED IN ACCORDANCE WITH ITS TERMS) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE QUALIFIED BIDDER FROM THE TIME THE BID IS SUBMITTED UNTIL THE ENTRY OF THE SALE ORDER. THE BACK UP BID SHALL BE IRREVOCABLE AND BINDING ON THE BIDDER UNTIL THE EARLIER OF TWO (2) BUSINESS DAYS AFTER THE CLOSING OF THE SALE OF THE PURCHASED ASSETS AND SPHERIS

INDIA CAPITAL STOCK OR TWENTY (20) DAYS AFTER THE SALE ORDER IS
ENTERED.

## XI.   The Sale Hearing

The Successful Bid will be presented to the Bankruptcy Court for approval at the Sale
Hearing. If no other Qualified Bid is received by the Debtors and the Purchasers's original
Purchase Agreement is the Successful Bid, then the Debtors will seek entry of an order at the
Sale Hearing authorizing and approving the Sale Transaction, including the sale of the Purchased
Assets and Spheris India Capital Stock to the Purchasers, pursuant to the terms and conditions
set forth in the Purchase Agreement. If a different bid is the Successful Bid, then the Debtors
anticipate that they will seek the entry of an order, modified as necessary to reflect the terms of
the Successful Bid, authorizing and approving the sale of the applicable Purchased Assets and
Spheris India Capital Stock to the Successful Bidder. The Sale Hearing may be adjourned or
rescheduled without notice, other than by an announcement of such adjournment at the Sale
Hearing.

Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary
hearing on all matters relating to the proposed sale, and parties shall be prepared to present their
evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided,
however,* that issues relating to the assumption and assignment of executory contracts and
unexpired leases may be addressed at separate hearings before the Bankruptcy Court.

## XII.   "As Is, Where Is"

The Sale Transaction shall be on an "as is, where is" basis and without representations or
warranties of any kind, nature or description by the Debtors, their agents or their estates, except
to the extent expressly set forth in the Purchase Agreement or the Marked Agreement
corresponding to the Successful Bid, as the case may be. Except as otherwise provided in the
Successful Bid or such other bid which may ultimately be consummated in the sale of all or
substantially all of the Purchased Assets and Spheris India Capital Stock, all of the Debtors'
right, title and interest in and to the Purchased Assets and Spheris India Capital Stock shall be
sold free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy
Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests and
contractual commitments of any kind or nature whatsoever, whether arising before or after the
Petition Date, whether at law or in equity, including all rights or claims based on any successor
or transferee liability, all environmental claims, all change in control provisions, all rights to
object or consent to the effectiveness of the transfer of the Purchased Assets and Spheris India
Capital Stock to the Purchasers, all as more specifically set forth and defined in the Sale Motion
and the proposed order approving the Sale Transaction (the "Claims"), and as set forth in the
Purchase Agreement and the Sale Order, with such Claims to attach to the net proceeds of the
sale with the same validity and priority as such Claims applied against the Purchased Assets and
Spheris India Capital Stock.

Notwithstanding the foregoing, the Debtors reserve the right to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

## XIII.  Return of Deposits

A Deposit submitted by the Back Up Bidder will be held by the Debtors until forty eight (48) hours after the Back Up Bid has been terminated in accordance with the Bid Procedures. As to all other bidders (except the Successful Bidder), Deposits will be returned promptly after conclusion of the Sale Hearing. Other than with respect to the Deposit of the Purchasers, which shall be governed by the Purchase Agreement, if the Successful Bidder or the Back Up Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder or the Back Up Bidder, the Debtors shall be entitled to retain the Deposit in partial satisfaction of any damages resulting from the breach or failure to perform by the Successful Bidder or the Back Up Bidder, without prejudice to any other rights the Debtors may have. The Debtors may, in consultation with the Agent and the Creditors Committee, credit the Deposit of the Successful Bidder or the Back Up Bidder towards the purchase price on the closing of the sale of the Purchased Assets and Spheris India Capital Stock.

## XIV.  Reservation of Rights

Except as otherwise provided in the Purchase Agreement or the Bidding Procedures Order, and subject to the right of the Agent to Credit Bid and the classification of any such Credit Bid as a Qualified Bid and the Agent as a Qualified Bidder for all purposes, the Debtors (in consultation with the Agent and the Creditors Committee as further set forth herein) reserve the right as they may reasonably determine to be in the best interests of their estates, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove some of the Purchased Assets from the Auction, (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures as it may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.