IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
In re                                      :    Chapter 11
                                           :
Spheris Inc., et al.,                      :    Case No. 10-10352 (KG)
                                           :
                    Debtors.               :    Joint Administration Pending
---------------------------------------------------x

## DEBTORS' MOTION FOR ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING AND APPROVING, EFFECTIVE AS OF THE PETITION DATE, (I) THE AGREEMENT WITH CAPSTONE ADVISORY GROUP, LLC TO PROVIDE ROBERT L. BUTLER TO SERVE AS DEBTORS' CHIEF RESTRUCTURING OFFICER; AND (II) THE EMPLOYMENT OF MR. BUTLER AND ADDITIONAL PERSONNEL

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby submit this motion for entry of an order, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") authorizing and approving, effective as of the Petition Date (defined below): (i) the agreement with Capstone Advisory Group, LLC, a copy of which is annexed hereto as Exhibit A (the "Capstone Agreement"),[2] pursuant to which Capstone Advisory Group, LLC ("Capstone") has agreed to provide Mr. Robert L. Butler to serve as the Debtors' Chief Restructuring Officer (the "CRO") and additional professional personnel (collectively, the "Additional Personnel"); and (ii) the employment of Mr. Butler as CRO and the Additional Personnel. In support of this motion (the "Motion"), the Debtors rely on the declaration of Mr. Butler attached hereto as Exhibit B and the Affidavit of

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Spheris Inc. (5254); (ii) Spheris Holding II, Inc. (7969); (iii) Spheris Canada Inc. (9757); (iv) Spheris Leasing LLC (4780); (v) Spheris Operations LLC (1371); and (vi) Vianeta Communications (1121). The Debtors' executive headquarters are located at 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067.

[2] The Capstone Agreement superseded in its entirety a previous engagement agreement dated November 4, 2009, between the Debtors and Capstone.

Robert L. Butler, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings (the "Butler Affidavit"), which was filed with the Court concurrently herewith and is incorporated herein by reference. In further support of this Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

2. On the date hereof (the "Petition Date"), Spheris Inc. and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors have requested that these chapter 11 cases be consolidated for procedural purposes.

4. As of the date hereof, no official committee of unsecured creditors has been appointed.

5. Additional information regarding the events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Butler Affidavit.

2

## RELIEF REQUESTED

6. By this Motion, the Debtors request entry of an order, pursuant to sections 105(a) and 363 of the Bankruptcy Code, authorizing and approving, effective as of the Petition Date, the Capstone Agreement, pursuant to which Mr. Butler will serve as the CRO and the Additional Personnel will be provided by Capstone to perform the services contemplated by the Capstone Agreement.

## QUALIFICATIONS

7. In November 2009, Capstone began to provide the Debtors with restructuring advisory services, including assisting with the implementation of potential performance and operating improvements. Capstone is a premier advisory firm, with vast experience in the field of restructuring and providing financial and operational guidance to companies in distressed situations. Capstone's professionals have provided services to debtors, creditors, and other constituents in numerous chapter 11 cases, including, among others, Kmart, Sunbeam Corporation, Polaroid Corporation, Collins & Aikman, W.R. Grace, Owens-Corning, National Energy Group, Federal Mogul, Adelphia Communications Corporation, Camelot Music, Hechinger's Home Centers, Ernst Home Centers, Inc., Cumberland Farms, Heilig Meyers, Caldor, Bradlees, Ames, Levitz, Seaman's Furniture, and Zany Brainy.

8. In particular, Mr. Butler, a Managing Director with Capstone, specializes in providing financial restructuring advisory services and crisis management services for troubled companies. Mr. Butler has 28 years of diverse financial consulting, bankruptcy and restructuring, executive management, and accounting experience in public and private companies. He is a Certified Public Accountant and has served as an advisor on complex bankruptcy matters including Mirant Corporation, NRG Energy, Tropicana Entertainment, and

PRC. Mr. Butler has also provided litigation support for a large lending institution in both the Enron class action and mega-claims matters. His out-of-court restructuring experience includes serving as a financial advisor on matters in the investment management, residential real estate, consumer products, professional services, and chemical manufacturing industries. As such, based on his experience, expertise, and familiarity with the Debtors' operations and financial condition, Mr. Butler is well suited to serve as the Debtors' CRO. Capstone's Additional Personnel, who have already been assisting the Debtors with their restructuring efforts, are also experienced in providing restructuring services that are essential to the Debtors during their cases.

9. The Debtors require knowledgeable advisors to render these restructuring services. As outlined above, Mr. Butler and the Additional Personnel are well qualified to provide these services and represent the Debtors' interests in these chapter 11 cases. Accordingly, the Debtors submit that their employment of Mr. Butler and the Additional Personnel should be approved.

## SCOPE OF SERVICES[3]

10. Capstone will assign Mr. Butler to serve as the Debtors' CRO and assign the Additional Personnel to perform other services required of Capstone, as set forth in the Capstone Agreement.

11. Mr. Butler will perform the ordinary course duties as the Debtors' CRO, including, but not limited to, providing daily leadership to the employees of the Debtors on restructuring matters and activities related to these chapter 11 cases. Pursuant to the Capstone

---

[3] The summary of the Capstone Agreement herein is qualified in its entirety by the Capstone Agreement. If there are any inconsistencies between the summary contained herein and the Capstone Agreement, the Capstone Agreement shall control. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Capstone Agreement.

4

Agreement, Mr. Butler and the Additional Personnel will provide the following services, among others, to the Debtors:

- a) in consultation with management of the Debtors and subject to the approval of the Board of Directors of the Debtors, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders;

- b) oversee the operations of the Debtors through the selected course of action;

- c) ascertain personnel, funding, and other resources and actions necessary to effectuate the chosen course of action;

- d) enter into agreements on behalf of the Debtors and make payments on behalf of the Debtors, including, without limitation, payments under this agreement to the CRO and other personnel of Capstone acting as consultants of the Debtors hereunder and payments to other service providers in connection with the operations of the Debtors on the matters contemplated by this engagement;

- e) resolve funding needs to implement the chosen course of action, including the negotiation of DIP financing and/or use of cash collateral, and related operating budgets;

- f) assist Jefferies & Company, Inc., the Debtors' financial advisor, in the process to sell certain assets of the Debtors in order to realize its highest possible value from such sales process;

- g) assist the Debtors in their evaluation of bids and expressions of interest in certain assets of the Debtors and effectuation of such sale where appropriate and practical under the circumstances;

- h) provide information deemed by the CRO to be reasonable and relevant to stakeholders;

- i) to the extent reasonably requested by the Debtors, offer testimony before the Court with respect to the services provided by the CRO and the Additional Personnel, and participate in depositions, including by providing deposition testimony, related thereto; and

- j) such other services as mutually agreed upon by the CRO, Capstone, and the Debtors.

## COMPENSATION

12. Pursuant to the terms and conditions contained in the Capstone Agreement, the Debtors have agreed to pay the following compensation to Capstone in consideration of the services to be performed by the CRO and the Additional Personnel in these chapter 11 cases:

   a) Hourly Fees: Professional fees based on the actual hours incurred by Capstone personnel on matters pertinent to these cases (the "Hourly Fees"), subject to a cap on such fees of: (a) $1,200,000 (in the aggregate) for the four month period beginning December 1, 2009 through March 31, 2010; and (b) $250,000 and $75,000 for the months of April 2010 and May 2010, respectively (the "Fee Cap"). Hourly rates for professional services will be billed as follows:[4]

   | | |
   |---|---|
   | CRO | $575 |
   | Executive Directors | $600 - $760 |
   | Staff | $275 - $590 |
   | Support Staff | $120 - $275 |

   b) Expenses: Capstone will be reimbursed for reasonable and documented out-of-pocket expenses including, but not limited to, costs of reproduction, research expenses, travel, typing, legal counsel, any applicable sales or excise taxes, and other direct expenses.

13. The CRO and Additional Personnel, when providing services at an hourly rate, will identify the time spent completing each task in one-tenth (.1) hour increments and the corresponding charge (time multiplied by hourly rate) for each task.

14. Capstone will file with the Court, and provide notice to the Office of the United States Trustee and counsel for the Official Committee of Unsecured Creditors appointed in these cases (the "Committee"), reports of compensation earned and expenses incurred on at

---

[4] The CRO's fees and fees for the Additional Personnel will be based on the actual hours charged at Capstone's standard hourly rates that are in effect when the services are rendered. The Capstone Agreement provides for rates different than those that appear here, as Capstone's rates are revised annually and were adjusted on January 1, 2010.

least a monthly basis (collectively, the "Fee Statements"). Such notice will provide for a time period of at least twenty (20) days for objections by parties in interest. All compensation will be subject to review by the Court in the event an objection is filed. In addition, Capstone's Hourly Fees shall be subject to final approval of the Court based on reasonableness.

15. With the Fee Statement, Capstone will file a report of staffing on the engagement for the month that is the subject of each respective Fee Statement (collectively, the "Staffing Reports"). Staffing Reports will include the names and functions filled by the Capstone personnel assigned to the engagement with the Debtors. Staffing Reports will be subject to review by the Court in the event an objection is filed on or before the applicable deadline for the corresponding Fee Statement.

16. Capstone received a prepetition retainer in the amount of $350,000 (the "Retainer"). Approximately $350,000 of the Retainer remains and will be held by Capstone in accordance with the terms of the Capstone Agreement and will be returned to the Debtors upon payment in full of all outstanding invoices, or applied to any outstanding invoices at the conclusion of the engagement.

17. To the best of the Debtors' knowledge, the compensation arrangement provided in the Capstone Agreement, and described herein, is consistent with and typical of arrangements entered into by Capstone and other restructuring consulting firms rendering similar services to clients such as the Debtors.

18. To the best of the Debtors' knowledge, there is no agreement or understanding between Capstone and any other person or entity for sharing compensation received, or to be received, for services rendered by Capstone personnel in connection with these chapter 11 cases.

7
DB02:9227416.2                                                                                              068920.1001

## INDEMNIFICATION

19.     The Capstone Agreement provides that it is a condition of the CRO's retention as an officer of the Debtors that the Debtors enter into an indemnification agreement with Mr. Butler in the form contained within Exhibit A (the "Indemnification Agreement"). In the event that any of the Additional Personnel assume officer positions with the Debtors, the Debtors shall enter into an indemnification agreement with each of them on substantially identical terms as set forth in the Indemnification Agreement.

20.     The Indemnification Agreement requires the Debtors to maintain directors and officer's liability insurance on terms and with limits comparable to those provided by the Debtors' Directors, Officers and Corporate Liability Insurance Policy, as in effect on December 3, 2009 (the "Policy"), for as long as Mr. Butler serves as CRO or as a director, officer, employee, or agent of the Debtors. Furthermore, the Policy must be maintained by the Debtors for at least one (1) year after Mr. Butler ceases to serve as a director, officer, employee, or agent of the Debtors or the Debtors are required to purchase and maintain a tail policy or other policy specifically covering Mr. Butler that has comparable terms and coverage to the Policy.

## BASIS FOR RELIEF[5]

21.     Section 363(b) of the Bankruptcy Code provides in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment. See In re Delaware & Hudson Ry. Co.,

---

[5] Pursuant to section 363(c) of the Bankruptcy Code, entering into contractual arrangements for the provision of interim management is within the ordinary course of Debtors' business as contemplated by the Bankruptcy Code. Corporations routinely employ and terminate senior executives. Notwithstanding this contention, the Debtors have filed the Motion in the interest of full disclosure to the Court and stakeholders.

124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); In re Phoenix Steel Corp., 82 B.R. 334, 336-36 (Bankr. D. Del. 1987).

22. The proposed use, sale, or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. See In re Montgomery Ward, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. See, e.g., Institutional Creditors of Continental Air Lines v. Continental Air Lines (In re Continental Air Lines), 780 F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105 of the Bankruptcy Code, a court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets. See, e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986).

23. Once a debtor articulates a valid business justification, the "business judgment" standard "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a

business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

24. Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. See, e.g., In re Flying J, Inc., Case No. 08-13384 (MFW) (Bankr. D. Del. 2008); In re Eddie Bauer Holdings, Inc., Case No. 09-12099 (MFW) (Bankr. D. Del. 2009); In re Indalex Holdings Finance, Inc., Case No. 09-10982 (PJW) (Bankr. D. Del. 2009); In re Fluid Routing Solutions Intermediate Holding Corp., Case No. 09-10384 (CSS) (Bankr. D. Del. 2009); In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. 2008).

## NOTICE

25. Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the agents for the Debtors' prepetition secured lenders; (c) counsel to the indenture trustee for the Debtors' subordinated notes; (d) counsel to the agent for the Debtors' proposed postpetition secured lenders; and (e) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis. The Debtors submit that, under the circumstances, no other or further notice is required.

26. No previous application for the relief sought herein has been made to this or any other Court.

*The remainder of this page is intentionally left blank.*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order in the form attached hereto and identified as <u>Exhibit D</u>, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
February 3, 2010

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Ryan M. Bartley
Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

WILLKIE FARR & GALLAGHER LLP
Michael J. Kelly
Shaunna D. Jones
Elizabeth K. Horowitz
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Proposed Co-Counsel to the Debtors and Debtors in Possession*