# EXHIBIT A

**Capstone Agreement**

EXECUTION VERSION



Capstone Advisory Group, LLC
Park 80 West, Plaza I – Plaza Level
Saddle Brook, NJ 07663

201.587.7100 telephone
201.587.7102 facsimile
www.capstoneag.com

December 9, 2009

Mr. Daniel Kohl
Chairman of the Board of Directors
Spheris Inc.
9009 Carothers Pkwy., Suite C-3
Franklin, TN 37067

Re: <u>Spheris Inc. - Retention of Robert L. Butler and Capstone Advisory Group, LLC ("Capstone")</u>

**Dear Mr. Kohl:**

This letter agreement confirms the engagement of Robert L. Butler of Capstone Advisory Group, LLC as Chief Restructuring Officer ("CRO") for Spheris Inc. (collectively with its designated affiliates, the "Company"), and supersedes in their entirety any previous agreements or arrangements related to the engagement of any personnel of Capstone by the Company. The CRO's engagement team will include professional staff from Capstone (the "Additional Personnel").

1. The Company has requested that the CRO and Additional Personnel provide the following professional services as independent consultants:

    a. In consultation with management of the Company and subject to the approval of the Board of Directors of the Company, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders.

    b. Oversee the operations of the Company through the selected course of action.

    c. Ascertain personnel, funding and other resources and actions necessary to effectuate the chosen course of action.

    d. Enter into agreements on behalf of the Company and to make payments on behalf of the Company, including without limitation, payments under this agreement to CRO and other personnel of Capstone acting as consultants of the Company hereunder and payments to other service providers in connection with the operations of the Company on the matters contemplated by this engagement.

    e. Resolve funding needs to implement the chosen course of action, including the negotiation of DIP financing and/or use of cash collateral, and related operating budgets.

    f. Assist Jefferies & Co., the Company's investment banker, in the process to sell certain assets of the Company in order to realize its highest possible value from such sales process.

g. Assist the Company in its evaluation of bids and expressions of interest in certain assets of the Company and effectuation of such sale where appropriate and practical under the circumstances.

h. Provide information deemed by the CRO to be reasonable and relevant to stakeholders.

i. To the extent reasonably requested by the Company, offer testimony before the Bankruptcy Court with respect to the services provided by the CRO and the Additional Personnel, and participate in depositions, including by providing deposition testimony, related thereto.

j. Such other services as mutually agreed upon by the CRO, Capstone and the Company.

2. The Company agrees that (i) Mr. Butler will provide services as CRO as required, and (ii) the CRO may retain as consultants on behalf of the Company other members or employees of Capstone. The Company agrees that the CRO will continue as an employee of Capstone and may continue to provide his services to other companies during the term of this agreement. The Company acknowledges that since the CRO is an employee of Capstone that Capstone must release the CRO from his full-time obligations to Capstone in order for the CRO to perform hereunder and therefore to compensate Capstone for the loss of full-time access to the CRO or any Additional Personnel providing services hereunder, all payments for the time charges of the CRO or Additional Personnel providing services hereunder to Company shall be made to Capstone. The CRO and Additional Personnel who provide services to the Company under this Agreement are independent contractors and are not, and will not be deemed to be employees of the Company. As the CRO and Additional Personnel are independent contractors, Capstone shall be solely responsible for the payment of all federal, state, and local taxes and all appropriate withholdings, the payment or provision of any unemployment insurance benefits, state disability benefits, workers' compensation insurance, vacation, overtime or holiday pay, health, medical, dental or group insurance and other employee benefits for the CRO and Additional Personnel, and shall indemnify the Company against any liabilities related to or arising from such matters, which indemnification shall survive termination of this Agreement. Engagement of the CRO hereunder may be terminated at any time by either party on fifteen (15) calendar days notice; provided that Sections 4, 5, and 8 will survive any termination of this Agreement. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, IN THE EVENT THAT THE CONSULTING ARRANGEMENT HEREUNDER IS RECLASSIFIED TO BE AN EMPLOYMENT ARRANGEMENT BY ANY GOVERNMENTAL AGENCY OR COURT OF COMPETENT JURISDICTION, THE CRO SHALL NOT SEEK TO PARTICIPATE IN OR BENEFIT FROM ANY OF THE COMPANY'S EMPLOYEE BENEFIT PLANS OR PROGRAMS AS A RESULT OF SUCH RECLASSIFICATION.

3. In order for the CRO to perform his services, it will be necessary for the CRO and the Additional Personnel to have access to certain books, records and reports of the Company, and have discussions with its personnel. The Company will provide the CRO and Additional Personnel access to the Company's customers, management, records and all other data, information and records, since limited access may restrict the CRO's ability to perform services as described in this agreement.

4. The Company understands that the CRO and Additional Personnel have agreed to treat any information received from the Company, whether orally or in writing, with the utmost

2

confidentiality and, except as provided in this agreement, will not publish, distribute or disclose in any manner any information developed by or received from the Company, and will not use such information except in furtherance of the business of the Company. The CRO and Additional Personnel however can otherwise disclose such information if (a) the information sought is required to be disclosed by an order binding on such persons, issued by a court having competent jurisdiction (unless such order specifies that the information to be disclosed is to be placed under seal), provided, that, the CRO and Additional Personnel agree to provide the Company with advance notice prior to disclosing such information ; or (b) such information is otherwise publicly available. In the event that the CRO or any of the Additional Personnel hereunder are subpoenaed as the result of any work performed in connection with this engagement, the Company will compensate the CRO and the Additional Personnel for the time involved in responding to such subpoena(s). Notwithstanding the foregoing, the CRO shall have the ability to disclose the confidential information to all consultants or other professionals he retains in this matter who will also be obliged to maintain its confidential nature.

5. The CRO's fees, and fees for the Additional Personnel will be based on the actual hours charged at Capstone's standard hourly rates, which are in effect when the services are rendered. These rates are revised annually on January 1. The CRO and Capstone will also be reimbursed for reasonable out-of-pocket expenses including, but not limited to, costs of reproduction, research expenses, travel, typing, legal counsel, any applicable sales or excise taxes and other direct expenses. The current hourly rates are as follows:

| | |
|---|---|
| CRO | $530 |
| Executive Directors | $625 - $710 |
| Staff | $295 - $595 |
| Support Staff | $95 - $125 |

The CRO and Capstone reserve the right to request approval of additional compensation in circumstances where extraordinary results may warrant such additional compensation.

The CRO, on behalf of itself and the Additional Personnel, will submit to the Company monthly invoices for all services rendered and expenses incurred; the invoices are payable to Capstone at the above address upon receipt. The Company agrees that if any Members or employees of Capstone are required to testify at any administrative or judicial proceeding relating to this engagement, whether during or after the term, the CRO and Capstone will be compensated by the Company for associated time charges at the regular hourly rates for such personnel, in effect at the time, and reimbursed for reasonable out-of-pocket expenses, including counsel fees and expenses.

Notwithstanding anything contained herein to the contrary, and only in the absence of litigation (including the submission of an objection to the Company's proposed sale of assets and related bidding procedures) commenced by holders of the Company's senior subordinated notes, the Company shall not be obligated to pay any fees to the CRO and the Additional Personnel for services provided hereunder in excess of: (a) $1,200,000 (in the aggregate) for services provided hereunder for the four month period beginning December 1, 2009 through March 31, 2010; and (b) $250,000 and $75,000 for the months of April 2010 and May 2010, respectively.

3

6. Given the magnitude and scope of the requested services, a retainer of $250,000 would be appropriate in this instance. The retainer will be returned to the Company upon payment in full of all of outstanding invoices, or applied to any outstanding invoices at the conclusion of this engagement.

7. It is a condition of the CRO's retention as an officer of the Company that the Company enter into an indemnification agreement with each of them in the form attached hereto as Exhibit A (the "Indemnification Agreement"). In the event that any of the Additional Personnel fulfill officer roles at the Company, the Company shall enter into an indemnification agreement with each of them on substantially identical terms as set forth in the Indemnification Agreement.

8.a   The interpretation and application of the terms of this agreement shall be governed and construed in accordance with the laws of Delaware, excluding (to the greatest extent a court of such state would permit) any rule of law that would cause application of the laws of any jurisdiction other than the law of the state so specified. The parties consent to the jurisdiction of any federal court sitting in the State of Delaware, for any disputes under this agreement.

b.   The waiver by any party and the breach of any of the provisions of this agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

c.   The Company has all necessary right, power and authority to enter into and perform this Agreement and the Indemnification Agreement. Each of this Agreement and the Indemnification Agreement constitutes the valid and legally binding obligation of such party, enforceable against such party in accordance with its respective terms.

d.   The execution, delivery and performance by the Company of this agreement and the Indemnification Agreement will not, with or without the giving of notice or the passage of time or both, (a) violate the provisions of any law, rule or regulation applicable to the Company, (b) violate any judgment, decree, order or award of any court, governmental body or arbitrator applicable to the Company or (c) conflict with or violate any agreement to which the Company is a party or by which it is bound.

e.   This agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, legal representatives, executors, administrators and heirs. The CRO and Capstone may not subcontract or assign this Agreement or any rights or obligations hereunder to any party without the prior written consent of the Company.

f.   Each of the provisions of this agreement is a separate and distinct agreement and independent of all others, so that if any provision hereof shall be held to be invalid or unenforceable for any reason, such invalidity or enforceability shall not affect the validity or enforceability of any other provisions hereof.

g.   No amendment or modification of this agreement shall be effective unless in writing and signed by both parties hereto.

h.   IN NO EVENT SHALL THE COMPANY, THE CRO, CAPSTONE OR CAPSTONE PERSONNEL WHO SERVE AS OFFICERS OF THE COMPANY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES OF ANY KIND IN CONNECTION WITH THIS AGREEMENT.

4

We look forward to working with you on this matter. Please sign and return a copy of this agreement signifying your agreement with the terms and provisions herein. If you have any questions, please call Ed Ordway or Bob Butler at 201-587-7124 or 678-575-4864, respectively.

Respectfully submitted,

Capstone Advisory Group, LLC

By: _____

Edwin N. Ordway, Jr.
Executive Director and Manager of the Firm


Agreed and accepted by:

Spheris Inc.
By: _____
Date: 9 DEC '09

5

# EXHIBIT "A"

## INDEMNIFICATION AGREEMENT

This Agreement is made as of the 3rd day of December, 2009 by and between Spheris Inc. (the "Company"), and Robert L. Butler (the "Indemnitee").

The Indemnitee is considering serving as the Chief Restructuring Officer ("CRO") of the Company. The Certificate of Incorporation of the Company (the "Certification of Incorporation") provides for the indemnification of the officers, directors, employees and agents of the Company to the fullest extent authorized by law in the State of Delaware, as the same exists or may hereafter be amended or supplemented (the "Delaware Company Law"). The Delaware Company Law provides that the indemnification provisions contained therein are not exclusive, and contemplates that contracts may be entered into between the Company and its officers (including without limitation the CRO), with respect to indemnification of such officers or CRO.

The Indemnitee has indicated his concern that, regardless whether the indemnities available under the Certificate of Incorporation and the retention/engagement letter to which this Agreement is appended are adequate to protect him against the risks associated with his service to the Company, the Indemnitee wishes further assurances from the Company in this regard. The parties acknowledge that the Indemnitee is, and will continue to be, a member of Capstone Advisory Group, LLC ("Capstone"), which may also be engaged as an agent of the Company. However the parties also recognize that services as an officer may be recharacterized from time to time as services as an agent, and it is necessary to protect the Indemnitee as an individual for liabilities relating to such recharacterized services. In order to induce the Indemnitee to agree to serve as an officer and in consideration of the Indemnitee's service after the date hereof, therefore, the parties hereby agree as follows:

1. (a) If the Indemnitee is made a party or is threatened to be made a party or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (the "proceeding"), by reason of the fact that he or a person for whom he is the legal representative is or was a director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, limited liability company, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is an alleged action in an official capacity as a director, officer, employee or agent, the Company shall indemnify and hold harmless the Indemnitee to the fullest extent authorized by the Delaware Company Law, as the same exists or may hereafter be amended, against all costs, expenses, liabilities, judgments and losses (including reasonable attorneys' fees, judgments, fines, excise taxes or penalties under the Employee Retirement Income Security Act of 1974, as amended) and amounts paid or to be paid in settlement of any proceeding, reasonably incurred or suffered by the Indemnitee in connection therewith.

(b) Following the mutual execution of this Agreement, the Company will furnish to the Indemnitee a true, correct and complete copy of the Directors, Officers and Corporate Liability Insurance Policy (the "Policy") issued to the Company by its insurer (the "Insurer"). The Company represents that the Policy is in full force and effect and that, to the best of the Company's knowledge, no event has occurred that constitutes or, with the passage of time or notice would constitute, an event of default thereunder or that would otherwise give the Insurer any right to cancel the Policy. Promptly following the execution of this Agreement the Company shall notify the Insurer of the appointment of the Indemnitee as CRO. The Company shall cause its insurance broker to send copies of all documentation and other communications regarding the Policy, including without limitation any renewal or cancellation thereof, to the attention of the Indemnitee at Capstone Advisory Group LLC, Park 80 West, Plaza 1, Saddle Brook, NJ 07663. The Company shall maintain directors and officer's liability insurance coverage covering each director, officer, employee or agent comparable as to terms and amounts as that provided under the Policy for as long as the Indemnitee serves as CRO or as a director, officer, employee or agent. Upon any such cancellation or non-renewal, the Company shall promptly notify the Indemnitee. For a period of at least one year after Indemnitee ceases to serve as a director, officer, employee or agent of the Company, the Company shall either (i) maintain directors and officer's liability insurance coverage covering former directors, officers, employees and agents comparable as to terms and amounts as that provided under the Policy, or (ii) purchase and maintain a tail policy or other policy specifically covering Indemnitee that is comparable as to terms and amounts as that provided under the Policy. Any coverage and policies required to be maintained by the Company under this Section 1(b) shall be obtained from an insurer with a rating from a nationally recognized rating agency not lower than that of the Insurer.

2. Subject to Section 9 below, the Company shall (within 15 days of written request therefor by the Indemnitee) pay to the Indemnitee all costs and expenses (including, but not limited to, reasonable attorneys, accountants, investment or other advisor and expert witness fees) incurred by the Indemnitee or reasonably anticipated to be incurred by the Indemnitee in defending any such proceeding in advance of its final disposition.

3. If a claim under this Agreement is not paid by the Company, or on its behalf, within thirty days after a written claim has been received by the Company, the Indemnitee may at any time thereafter bring suit against the Company and the Company shall have the burden of proving that the Indemnitee is not entitled to payment under this Agreement. If successful in whole or in part, the Indemnitee shall be entitled to be paid also all expenses (including reasonable attorneys' fees and expenses) of prosecuting such claim together with interest at Prime Rate (as defined below) per annum from the date the expenses were paid by the Indemnitee. "Prime Rate" means the rate of interest per annum quoted in the "Money Rates" section of The Wall Street Journal from time to time and designated as the "Prime Rate". If such prime rate, as so quoted, is split between two or more different interest rates, then the Prime Rate shall be the highest of such interest rates.

4. In the event of payment to the Indemnitee under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of the Indemnitee (and his executors, administrators, and heirs), who shall execute all documents and take all actions reasonably requested by the Company to implement such right of subrogation.

5. The Company shall not be liable under this Agreement to make any payment in satisfaction of adjudged liabilities assessed against the Indemnitee:

(a) for which payment is actually made to the Indemnitee under a valid and collectible insurance policy maintained by the Company, except in respect of any excess beyond the amount of payment under such insurance;

(b) based upon liability for a claim arising from a final adjudication by a court of competent jurisdiction that the Indemnitee is liable to the Company; provided that if and to the extent that the court in which such action or suit giving rise to such adjudication of liability was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, the Indemnitee is fairly and reasonably entitled to indemnity for such expenses as such court shall deem proper, the Company shall indemnify the Indemnitee for such expenses;

(c) on account of the Indemnitee's conduct which is finally adjudged in a court of competent jurisdiction to have been knowingly fraudulent, deliberately dishonest, grossly negligent or willful misconduct; or

(d) for which indemnification under this Agreement is determined by a final adjudication of a court of competent jurisdiction to be unlawful and violative of public policy.

6. Within five business days after receipt by the Indemnitee of notice of the commencement of any proceeding, the Indemnitee will, if a claim in respect thereof is to be made against the Company under this Agreement, notify the Company of the commencement thereof; but the omission so to notify the Company will not relieve the Company from any liability which it may have to the Indemnitee otherwise than under this Agreement except to the extent that the Company is prejudiced by such delay. With respect to any such action, suit or proceeding as to which the Indemnitee notifies the Company of the commencement thereof;

(a) the Company will be entitled to participate therein at its own expense;

(b) Except as otherwise provided below, to the extent that it may wish, the Company jointly with any other indemnifying party similarly notified will be entitled to assume the defense thereof, with counsel reasonably satisfactory to the Indemnitee. After notice from the Company to the Indemnitee of its election so to assume the defense thereof, the Company will not be liable to the Indemnitee under this Agreement for any legal or other expenses subsequently incurred by the Indemnitee in connection with the defense thereof other than reasonable costs of investigation or as otherwise provided below. The Indemnitee shall have the right to employ his counsel in such action, suit or proceeding, but the fees and expenses of such counsel incurred after notice from the Company of its assumption of the defense thereof shall be at the expense of the Indemnitee unless (i) the employment of counsel by the Indemnitee has been authorized by the Company, (ii) the Indemnitee shall have reasonably concluded, upon the advice of counsel, that there may be a conflict of interest between the Company and the Indemnitee in the conduct of the defense of such action or (iii) the Company shall not in fact have employed counsel reasonably satisfactory to Indemnitee assume the defense of such action, in each of which cases the fees and expenses of counsel shall be at the expense of the Company.

The Company shall not be entitled to assume the defense of any action, suit or proceeding brought by or on behalf of the Company or as to which the Indemnitee shall have made the conclusion provided for in (ii) above; and

(c) the Company shall not be liable to indemnify the Indemnitee under this Agreement for any amounts paid in settlement of any action or claim effected without its written consent, provided such claim is filed within the applicable statute of limitations. The Company shall not settle any action or claim without the Indemnitee's written consent. Neither the Company nor the Indemnitee shall unreasonably withhold its or his consent to any proposed settlement.

7. All agreements and obligations of the Company contained herein shall continue during the period the Indemnitee is serving in any of the capacities referred to in Section 1 hereof and shall continue thereafter so long as the Indemnitee or his executors, administrators, or heirs could be subject to any possible claim or threatened, pending or completed proceeding by reason of the fact that the Indemnitee was serving in any of such capacities.

8. (a) Any notice or other communication under this Agreement shall be in writing and shall be deemed given when delivered personally or mailed by certified mail, return receipt requested, to the parties as follows:

If to the Company:

Spheris Inc.
9009 Carothers Pkwy., Suite C-3
Franklin, TN 37067
Fax: (615) 261-1792
ATTN: Russ Adkins

If to the Indemnitee:

Robert L. Butler
Capstone Advisory Group, LLC
Park 80 West, Plaza 1
Saddle Brook, NJ 07663
Fax: (201) 587-7102

With a copy to:

Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022
Fax: 212-478-7400
Attn: James Kardon

or to such other address or person as any party hereto may specify by notice to the other.

(b) The waiver by any party and the breach of any of the provisions of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

(c) This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, legal representatives, executors, administrators and heirs.

(d) This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without regard to conflict of law provisions.

(e) Each of the parties hereto submits to the jurisdiction of the State of New York with respect to any disputes, directly or indirectly, to any matter of interpretation of this Agreement or the respective rights or obligations of each of the parties hereto (whether or not any such party is otherwise subject to the jurisdiction or venue of the federal and state courts sitting in the County of New York, State of New York). Each of the parties specifically waives any objection which it may otherwise have to the jurisdiction or venue of any such courts and acknowledges that service of process may be made by mailing a copy thereof in accordance with the provisions of subsection (a) above.

(f) Each of the provisions of this Agreement is a separate and distinct agreement and independent of all others, so that if any provision hereof shall be held to be invalid or unenforceable for any reason, such invalidity or enforceability shall not affect the validity or enforceability of any other provisions hereof. This Agreement is being entered into pursuant to the Delaware Company Law and as such is intended to be supplemental to any other rights to indemnification available to the Indemnitee. Nothing herein shall be deemed to diminish or otherwise restrict the Indemnitee's right to indemnification under any provision of the Certificate of Incorporation or LLC Agreement of the Company.

(g) No amendment, modification, termination or cancellation of this Agreement shall be effective unless in writing and signed by both parties hereto.

9. The Indemnitee agrees that he will reimburse the Company for all costs and expenses advanced by the Company in defending any proceeding against him in the event and only to the extent that it shall ultimately be determined by a court of competent jurisdiction that he was not entitled to be indemnified by the Company for such expenses under the provisions of the Delaware Company Law, this Agreement or otherwise at the time the costs and expenses were advanced.

10. The obligations of the Company hereunder are solely Company obligations, and no officer, director, employee, agent, shareholder, member, manager or controlling person of the Company shall be subjected to any personal liability whatsoever to Indemnitee, nor will any such claim be asserted by or on behalf of Indemnitee, his heirs, assigns or personal representatives. The limitations on liability and indemnification contained in this Agreement shall survive the completion, expiration, termination or suppression of this Agreement.

-5-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

By: _____
　　　　　　　Spheris Inc.
Name, Title: **DANIEL J. KOHL**
　　　　　　　**PRESIDENT & CEO**

_____
Robert L. Butler, Indemnitee