IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re: : Chapter 11
:
Spheris Inc., et al., : Case No. 10-10352 (KG)
: Jointly Administered
Debtors. : Objections Due: February 23, 2010 at 4:00 p.m. (ET)
------------------------------------------------------x Hearing Date: March 2, 2010 at 11:00 a.m. (ET)

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING AND APPROVING, EFFECTIVE AS OF THE PETITION DATE, THE (I) EMPLOYMENT AND RETENTION OF JEFFERIES & COMPANY, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER, AND (II) WAIVER OF CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby submit this application for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving, effective as of the Petition Date (defined below), the (i) employment and retention of Jefferies & Company, Inc. ("Jefferies") as financial advisor and investment banker, and (ii) waiver of certain information requirements of Local Rule 2016-2. In support of this Application (the "Application"), the Debtors rely upon and incorporate by reference the Affidavit of Robert L. Butler, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings (the "Butler Affidavit"), which was filed with the Court on February 3, 2010 (the "Petition

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Spheris Inc. (5254); (ii) Spheris Holding II, Inc. (7969); (iii) Spheris Canada Inc. (9757); (iv) Spheris Leasing LLC (4780); (v) Spheris Operations LLC (1371); and (vi) Vianeta Communications (1121). The Debtors' executive headquarters are located at 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067.

Date"), and the Declaration of Leon Szlezinger in Support of Debtors' Application For Order Authorizing and Approving, Effective as of the Petition Date, the (i) Employment and Retention of Jefferies & Company, Inc. as Financial Advisor and Investment Banker, and (ii) Waiver of Certain Information Requirements of Local Rule 2016-2 (the "Szlezinger Declaration"), a copy of which is attached hereto as Exhibit A. In further support of the Application, the Debtors, by and through their proposed undersigned co-counsel, respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Rule 2014 of the Bankruptcy Rules and Rule 2014-1 of the Local Rules.

## BACKGROUND

2. On the Petition Date, Spheris Inc. and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. By order dated February 4, 2010, the Debtors' cases were consolidated for procedural purposes only.

4. As of the date hereof, no official committee of unsecured creditors has been appointed.

5. Additional information regarding the events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Butler Affidavit.

**RELIEF REQUESTED**

6. By this Application, the Debtors seek (i) to employ and retain Jefferies as their financial advisor and investment banker in connection with these chapter 11 cases pursuant to the terms and conditions of the agreement between the Debtors and Jefferies, dated as of February 9, 2009 (as amended on September 30, 2009, the "Engagement Letter"), a copy of which is attached hereto as Exhibit B, and (ii) the waiver of certain information requirements of Local Rule 2016-2.

**JEFFERIES' QUALIFICATIONS**

7. Jefferies is well-qualified to assist the Debtors on the matters for which the Debtors propose to retain it. Jefferies, an investment banking firm, was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group, Inc. Jefferies Group, Inc. is a public company and, together with its subsidiaries, has over $28 billion in gross assets and more than 2,500 employees in 27 cities worldwide.

8. Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to (i) general financial advice, (ii) mergers, acquisitions, and divestitures, (iii) capital raising, and (iv) corporate restructuring. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings. The employees of Jefferies have advised debtors, creditors, equity constituencies, and purchasers in

numerous reorganizations. Since 2005, Jefferies has been involved in over 100 restructurings representing over $128 billion in restructured liabilities.

9. Jefferies and its professionals have extensive experience in reorganization cases and have an excellent reputation for services they have rendered in large and complex chapter 11 cases on behalf of debtors, creditors, and creditors' committees throughout the United States, including: <u>In re DBSD North America, Inc.</u>; <u>In re Pliant Corp.</u>; <u>In re RathGibson, Inc.</u>; <u>In re SeaLaunch Company, LLC</u>; <u>In re Nortel Networks Inc.</u>; <u>In re Apex Silver Mines Ltd.</u>; <u>In re Circuit City Stores, Inc.</u>; <u>In re Quebecor World (USA) Inc.</u>; <u>In re Ames Dep't Stores, Inc.</u>; <u>In re Bally Total Fitness of Greater NY, Inc.</u>; <u>In re Tropicana Entm't, LLC</u>; <u>In re ASARCO LLC</u>; <u>In re AmeriServe Food Distrib., Inc.</u>; <u>In re Diamond Brands Operating Corp.</u>; <u>In re Fed. Mogul Corp.</u>; <u>In re Heartland Wireless Commc'n</u>; <u>In re Delphi Corp., et al.</u>; <u>In re Foamex Int'l Inc.</u>; <u>In re Int'l Wireless Commc'ns Inc., et al.</u>; <u>In re WXH Corp.</u>; and <u>In re XO Commc'ns, Inc.</u>

10. Since February 9, 2009, Jefferies has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

(a) familiarized itself with the assets and operations of the Debtors;

(b) analyzed the business projections of the Debtors;

(c) examined and sought to implement potential strategic alternatives to address liquidity restraints, covenant and business issues facing the Debtors;

(d) identified and evaluated candidates for a potential sale transaction;

(e) approached multiple parties to inquire as to their interest in engaging in a sale transaction;

(f) coordinated the analysis and delivery of the Debtors' information to interested parties;

(g) participated in negotiations with interested parties, including potential stalking horse bidders;

(h) assisted in the negotiation of asset purchase agreements with potential stalking horse bidders and the development of bid procedures;

(i) assisted in discussions and negotiations with the Debtors' prepetition secured lenders;

(j) assisted the Debtors in developing and evaluating alternative means to meet near-term liquidity requirements;

(k) with respect to debtor in possession financing, worked with the Debtors to evaluate whether alternative lenders would be available to provide financing in an amount sufficient to fund the Debtors with adequate liquidity during these chapter 11 cases;

(l) assisted in developing a strategy for communications with unsecured noteholders;

(m) assisted the Debtors in meeting the due diligence requirements of professionals retained by certain unsecured noteholders; and

(n) assisted in the negotiation of a forebearance agreement with the noteholders constituting a majority of the unsecured noteholders.

11. In providing professional services to the Debtors, Jefferies has worked closely with the Debtors' management and has become well-acquainted with the Debtors' businesses, capital structure, financial affairs, and related matters. The experience Jefferies gained before the Petition Date will facilitate the provision of the services required by the Debtors in these chapter 11 cases. The Debtors believe that Jefferies is both well-qualified and uniquely able to represent them in their chapter 11 cases in an efficient and timely manner.

## SCOPE OF SERVICES

12. In accordance with the terms of the Engagement Letter, Jefferies will perform the following advisory services, among others, to the extent they are desired or necessary:[2]

    (a) act as the Debtors' exclusive financial advisor, and provide the Debtors with customary financial advice and assistance, in connection with a possible sale, acquisition, or other business transaction or series of transactions involving (directly or indirectly) all or a portion of the Debtors' stock or all or a material portion of the Debtors' assets, through any form of transaction including, without limitation, merger, stock purchase, asset purchase, recapitalization, reorganization, consolidation, or amalgamation;

    (b) if requested by the Debtors, render an Opinion to the Debtors as to the fairness, from a financial point of view, of the consideration to be paid in any business transaction; provided that the Debtors shall not request an Opinion for any business transaction where material consideration is not paid to the Debtors;

    (c) provide customary advice and assistance to the Debtors in connection with analyzing, structuring, negotiating and effecting, including providing valuation analyses, as appropriate, and acting as exclusive financial advisor to the Debtors in connection with, any potential restructuring of the Debtors' outstanding indebtedness pursuant to existing credit facilities or bond or note indentures existing as of February 9, 2009, through any offer by the Debtors with respect to such outstanding indebtedness, a solicitation of votes, approvals, or consents giving effect thereto and including a sale under section 363(b) of the Bankruptcy Code; and

    (d) render such other financial advisory services as may from time to time be agreed upon by the Debtors and Jefferies.

13. The Debtors require Jefferies' advice and services in order to maximize the value of their estates. All of the services that Jefferies will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as

---

[2] The description of the Engagement Letter is a summary. To the extent that this Application and the terms of the of the Engagement Letter are inconsistent, the terms of the Engagement Letter control. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

to avoid duplicative efforts among the professionals retained in these cases, and Jefferies has agreed with the Debtors to use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## COMPENSATION

14. As more fully described in the Engagement Letter, and subject to the Court's approval, the Debtors have agreed to pay the following compensation to Jefferies in consideration of the services to be performed in these chapter 11 cases:

(a) Engagement Fee. An engagement fee of $75,000.

(b) Opinion Delivery. Upon delivery of an Opinion, if applicable, a fee of $400,000; provided that the amount of such fee actually paid to Jefferies shall be credited once against any Transaction Fee payable to Jefferies in connection with the Business Transaction for which an Opinion was rendered.

(c) Consummation of a Business Transaction. Upon consummation of a Business Transaction (i) in which greater than 50% of the equity interests, or a material portion of the assets, of the Debtors are transferred to or acquired by a person or persons other than the Affiliated Parties, a fee equal to the greater of (x) a minimum fee paid at consummation of $1.25 million or (y) the sum of (I) 1.25% of the difference of the Transaction Value less the Equity Value (but, in any event, an amount not less than zero), if any and (II) 3.00% of the Equity Value, if any; and (ii) in which 50% or less of the equity interests of the Debtors are transferred to or acquired by a person or persons other than the Affiliated Parties, the Transaction Fee that would otherwise be payable shall be reduced proportionately based upon the amount by which such percentage of equity interests being transferred is less than 50.01% of the equity interests of the Debtors outstanding at the time of such transfer, subject to the Minimum Fee.

(d) Consummation of a Restructuring. Upon consummation of a Restructuring, an amount equal to the greater of (x) a minimum fee of $1.75 million and (y) 1.00% of the amount of the Restructured Liabilities of the Debtors. In the event that a Restructuring is or involves a 363 Sale, the Restructuring Fee shall be earned upon the consummation of the 363 Sale, which fee shall be the greater of the Restructuring Fee and the Transaction Fee that would be payable if such 363 Sale were a Business Transaction.

(e) <u>Consummation of a Nuance Excluded Transaction</u>. Upon consummation of a Nuance Excluded Transaction, a fee equal to $750,000; provided that 100.00% of such fee shall be credited once against any Transaction Fee subsequently paid to Jefferies in connection with a Business Transaction with the same counterparty, or any affiliate thereof, as the consummated Nuance Excluded Transaction.

(f) <u>Monthly Retainer</u>. Upon the Debtors determining to take significant steps towards becoming a debtor under chapter 11 of the Bankruptcy Code, the Debtors shall commence paying Jefferies monthly retainers in cash equal to $150,000 per month until the termination of Jefferies' engagement. 50% of the Monthly Retainers actually paid to Jefferies shall be creditable against the fees due to Jefferies under paragraphs 14(b), 14(c), and 14(d) above.

15. Additionally, the Debtors have agreed to reimburse Jefferies, promptly upon receipt of an invoice therefore, for all reasonable out-of-pocket expenses incurred by Jefferies in connection with the engagement (including reasonable fees and expenses of Jefferies' counsel, and the reasonable fees and expenses of any other independent experts retained by Jefferies), subject to an aggregate cap of $50,000 without prior notice and consent of the Debtors.[3]

16. Jefferies has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date. The Debtors submit that Jefferies is both well-qualified and uniquely able to perform these services and assist the Debtors in these chapter 11 cases. Moreover, the Debtors believe that without the skills and services of Jefferies, their ability to reorganize would be hampered. Jefferies' strategic and financial expertise as well as its capital markets knowledge,

---

[3] The Expense Reimbursement Cap does not apply to the fees and expenses of Jefferies' counsel incurred in connection with Jefferies rendering an Opinion.

financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Jefferies' engagement hereunder, were important factors in determining the compensation structure set forth above (the "Fee Structure"), and the Debtors believe that the ultimate benefit to the Debtors of Jefferies' services hereunder cannot be measured by reference to the number of hours to be expended by Jefferies' professionals in the performance of such services.

17. The Fee Structure is consistent with Jefferies' normal and customary compensation for comparable cases, both in and out-of-court, involving the services to be provided. In addition, the Debtors believe that the Fee Structure is reasonable and within the range of fees typically charged by firms of similar caliber for comparable services.

18. To induce Jefferies to do business with the Debtors in bankruptcy, the Fee Structure was established to reflect the difficulty of the extensive assignments Jefferies expects to undertake and the potential for failure. In addition, the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Jefferies and its professionals hereunder, and in light of the fact that such commitment may foreclose other opportunities for Jefferies and that the actual time and commitment required of Jefferies and its professionals to perform its services hereunder may vary substantially from week to week or month to month.

19. In light of the foregoing and given the numerous issues which Jefferies may be required to address in the performance of its services hereunder, Jefferies' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee Structure is market-based, fair, and

reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. Accordingly, as more fully described below, the Debtors believe that the Court should approve Jefferies' retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Jefferies' compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

20. As set forth in the Szlezinger Declaration, Jefferies has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## **INDEMNIFICATION**

21. The Engagement Letter further provides that the Debtors will indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates under certain circumstances (such indemnification obligations, as modified by the proposed retention order, the "Indemnification Provisions"), which provisions are attached to and made a part of the Engagement Letter. The Indemnification Provisions are standard provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on indemnification provisions that are customary in Delaware and other jurisdictions.

22. The Debtors and Jefferies believe that the Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases. See, e.g., In re Pliant Corp., No. 09-10443 (MFW) (Bankr. D. Del. Apr. 1, 2009) (authorizing retention of Jefferies on similar indemnification terms); In re

- 10 -

DB02:9236502.1                                                                                                                                    068920.1001

Nortel Networks Inc., No. 09-10138 (KG) (Bankr. D. Del. Mar. 5, 2009) (same); In re Foamex Int'l Inc., No. 05-12685 (KG) (Bankr. D. Del. Nov. 8, 2005) (same).

23. The Indemnification Provisions are similar to other indemnification provisions that have been approved by this Court and other bankruptcy courts. See, e.g., In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (authorizing indemnification of Lazard Freres & Co. LLC by debtors); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (same); see also In re Comdisco, Inc., No 02-C-1174 (N.D. Ill. Sep. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); In re United Artists Theatre Company, No. 00-3514 (SLR) (Bankr. D. Del. Nov. 14, 2000) (authorizing indemnification of Houlihan Lokey by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (overruling U.S. Trustee's objection to indemnity provision).

24. The terms and conditions of the Engagement Letter, including the Indemnification Provisions, were negotiated by the Debtors and Jefferies at arm's length and in good faith. The Debtors respectfully submit that the Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Jefferies' proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Jefferies' services for a successful result in these cases.

25. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions, as outlined in the Engagement Letter, subject to the modifications set forth in the proposed retention order.

## BASIS FOR RELIEF AND WAIVER

26. The Debtors seek approval of the Engagement Letter, including the Fee Structure, pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a).

27. Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. This is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in In re Nat'l Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants 'reasonable compensation' based on relevant factors of time and comparable costs, etc. Under present § 328 the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (internal references omitted). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. See, e.g., In re J.L. French Auto. Castings, Inc., No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

28. The Fee Structure appropriately reflects the nature and scope of services to be provided by Jefferies, Jefferies' substantial experience with respect to investment banking

services, and the fee structures typically utilized by Jefferies and other leading investment bankers, who do not bill their clients on an hourly basis.

29. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases in this Court and other courts. See, e.g., In re Pliant Corp., No. 09-10443 (MFW) (Bankr. D. Del. Apr. 1, 2009) (authorizing retention of Jefferies on similar terms); In re Nortel Networks Inc., No. 09-10138 (KG) (Bankr. D. Del. Mar. 5, 2009) (same); In re Foamex Int'l Inc., No. 05-12685 (KG) (Bankr. D. Del. Nov. 8, 2005) (same); see also In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (authorizing retention of Lazard Freres & Co. LLC by debtors); In re Covad Commc'ns Group, Inc., No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); In re Harnischfeger Indus., et al., No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors); In re Casual Male Corp., No. 01-41404 (REG) (Bankr, S.D.N.Y. March 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to section 328(a) standard of review).

30. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a change was made to section 328(a) which is emphasized below:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis,** or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This change makes clear the ability of the Debtors to retain, with bankruptcy court approval, a professional on a fixed fee basis such as the Fee Structure with Jefferies in this case.

31.     Notwithstanding approval of its Engagement Letter under section 328 of the Bankruptcy Code, Jefferies will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court.

32.     Jefferies has informed the Debtors that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis, and that Jefferies' restructuring personnel do not maintain their time records on a "project category" basis. However, Jefferies' restructuring professionals, when formally retained in chapter 11 cases and when required by local rules, do, and in these chapter 11 cases will, keep reasonably detailed time records describing their general daily activities, the identity of persons who performed such activities, and the estimated amount of time expended on such activities on a daily basis.

33.     The Debtors have been advised that to have Jefferies' restructuring personnel record their time and activities as prescribed by Local Rule 2016-2 would be, in each case, unduly burdensome and time-consuming.

34.     As such, the Debtors respectfully submit that the time descriptions that Jefferies' restructuring personnel intend to submit to the Court should be sufficient for any review of the time entries in connection with a subsequent fee application. Accordingly, the Debtors respectfully request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, Jefferies shall not be required to bill activities in one-tenths (.1) of an hour or to provide or conform to any schedule of hourly rates; provided, however, that

- 14 -

DB02:9236502.1                                                                                                  068920.1001

Jefferies shall maintain reasonably detailed time records describing their general daily activities, the identity of persons who performed such activities, and the estimated amount of time expended on such activities on a daily basis.

35. In sum, the Debtors believe that the Fee Structure and other terms and conditions in the Engagement Letter, including the Indemnification Provisions, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee structure appropriately reflects (a) the nature and scope of the services to be provided by Jefferies in these chapter 11 cases and work already performed by Jefferies prior to the retention date, and (b) the fee structures typically utilized by Jefferies and other leading financial advisory and investment banking firms in and out of the chapter 11 context.

## **DISINTERESTEDNESS**

36. Jefferies has informed the Debtors that, except as may be set forth in the Szlezinger Declaration, Jefferies (a) has no connection with the Debtors, their creditors, equity security holders, or other parties in interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee, in any matter related to the Debtors and their estates, (b) does not hold any interest adverse to the Debtors' estates, and (c) believes it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

37. Prior to the Petition Date, Jefferies received an engagement fee of $75,000 and Monthly Retainer fees totaling $750,000. In addition, Jefferies received $55,910.25 in reimbursement for expenses including expense retainers of $20,000. Although Jefferies' records indicate that Jefferies is not owed any amounts in respect of prepetition services provided to the

- 15 -

DB02:9236502.1    068920.1001

Debtors, it is possible that certain expenses that were incurred by Jefferies and reimbursable under the terms of the Engagement Letter were not yet reflected on Jefferies' respective books and records as of the Petition Date. To the extent that payments made to Jefferies prior to the Petition Date are insufficient to satisfy such expenses, Jefferies has agreed to waive any claim for payment thereof

38. In total, Jefferies received $880,910.25 prior to the Petition Date. The payments received in the 90 days before the Petition Date are described in more detail below:

| Payment Date | Invoiced Amount | | | Amount Received | | |
|---|---|---|---|---|---|---|
| | Fee | Expenses | Total | Fee | Expenses | Total |
| 11/13/2009 | 150,000 | - | 150,000 | 150,000 | - | 150,000 |
| 12/1/2009 | 150,000 | -- | 150,000 | 150,000 | - | 150,000 |
| 12/16/2009 | - | 30,203.67 | 30,203.67 | - | 30,203.67 | 30,203.67 |
| 12/16/2009 | - | 1,595.43 | 1,595.43 | - | 1,595.43 | 1,595.43 |
| 12/29/2009 | 150,000 | 14,972.50 | 164,972.50 | 150,000 | 14,972.50 | 164,972.50 |
| 2/1/2010 | 150,000 | 9,138.65 | 159138.65 | 150,000 | 9,138.65 | 159,138.65 |

39. The Debtors have been informed that Jefferies will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Jefferies will inform the Court.

## NOTICE

40. Notice of this Application will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the agents for the Debtors' prepetition secured lenders; (c) the indenture trustee for the Debtors' subordinated notes or its counsel; (d) counsel to

the agent for the Debtors' postpetition secured lenders; and (e) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis. The Debtors submit that, under the circumstances, no other or further notice is required.

41. No previous application for the relief sought herein has been made to this or any other Court.

*The remainder of this page is intentionally left blank.*

DB02:9236502.1　　　　　　　　　　　　　　　　　　　　　　　　　　　　068920.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>: (i) approving the agreement terms contained within the Engagement Letter; (ii) retaining Jefferies as financial advisor in these chapter 11 cases; and (iii) granting such other and further relief as is just or proper.

Dated: Wilmington, Delaware
February 5, 2010

SPHERIS INC.
SPHERIS HOLDING II, INC.
SPHERIS CANADA INC.
SPHERIS LEASING LLC
SPHERIS OPERATIONS LLC
VIANETA COMMUNICATIONS

By: /s/ Robert L. Butler
Robert L. Butler
Chief Restructuring Officer