IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Spheris Inc., *et al.*, | Case No. 10-10352 (KG) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: Feb. 16, 2010, noon ET |
| | Hearing Date: Feb. 19, 2010, 9 a.m. ET |

## LIMITED OBJECTION OF NUANCE COMMUNICATIONS, INC TO DEBTORS' MOTION FOR ORDERS: (A)(I) APPROVING BID PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS; (II) SCHEDULING HEARING TO CONSIDER SALE OF ASSETS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (B)(I) AUTHORIZING AND APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

Nuance Communications, Inc. ("Nuance") hereby files this limited objection to the Debtors' Motion for Orders: (A)(I) Approving Bid Procedures In Connection with Sale of Substantially All of Debtors' Assets; (II) Scheduling Hearing to Consider Sale of Assets; (III) Approving Form and Manner of Notice Thereof; and (IV) Approving Break-Up Fee and Expense Reimbursement; (B)(I) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Exeuctory Contracts and Unexpired Leases; and (C) Granting Related Relief, dated February 3, 2010 [Docket No. 14] (the "Bidding Procedures Motion").[1] In support of its limited objection (the "Limited Objection"), Nuance respectfully represents:

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Bidding Procedures Motion.

## Preliminary Statement

1. Nuance does not hereby object to the fundamental relief requested in the Bidding Procedures Motion, the approval of the sale of substantially all of the assets of the Debtors (the "Assets") and related bidding procedures (the "Bidding Procedures") either through an auction or pursuant to the Stalking Horse Purchase Agreement, dated as of February 2, 2010 with CBay and Medquist (collectively, the "Stalking Horse Purchasers"). However, Nuance respectfully submits that certain provisions of the Bidding Procedures provide the Stalking Horse Purchasers an unfair advantage, thereby chilling bidding and preventing a competitive and robust auction for the Debtors' assets that would maximize the value received by the Debtors' estates.[2] Accordingly, Nuance requests that certain modifications be made to the Bidding Procedures, as set forth below.

## Nuance's Limited Objection

### *The Debtors Should Provide All Potential Bidders with Copies of the Schedules and Exhibits to the Stalking Horse Purchase Agreement*

2. Although the Debtors filed the Stalking Horse Purchase Agreement with the Bidding Procedures Motion, the Debtors did not file the schedules and exhibits to the Stalking Horse Purchase Agreement. As such, other potential bidders do not know all the terms of the Stalking Horse Purchase Agreement that they are required to mark up in connection with submitting a Qualified Bid. In addition, without the material information contained in these schedules and exhibits, other potential bidders are handicapped from accurately valuing either

---

[2] Nuance reached out to counsel to the Debtors in an attempt to resolve its objections. Although the Debtors' counsel listened to Nuance's objections, the Debtors were unable to provide a response to Nuance prior to the objection deadline and unwilling to grant Nuance an extension of the objection deadline to attempt to work out the objections. Nuance is hopeful that subsequent to the filing of this Limited Objection, it will be able to resolve with the Debtors some or all of their objections.

the Assets themselves or the Stalking Horse Purchasers' bid for such Assets. This not only puts other potential bidders at a disadvantage vis a vis the Stalking Horse Purchasers, but this uncertainty and lack of transparency may discourage other potential bidders from submitting bids, reducing the prospects of a competitive auction that maximizes value to the estates. Nuance, therefore, seeks confirmation that all such schedules and exhibits will be provided in a timely manner to all potential bidders that execute appropriate confidentiality agreements.

### *The Bidding Procedures Should Permit Potential Bidders Other than the Stalking Horse Purchasers to Make Filings Required under the Hart-Scott-Rodino Antirust Improvements Act of 1976*

3. As the Debtors are undoubtedly aware, due to the value of the Assets, any potential bidder for the assets would be required under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act") to file certain notifications and submit to a required waiting period prior to closing any applicable transaction. It is likely that the Stalking Horse Purchasers have already made or will shortly make the required filings.

4. Notwithstanding the foregoing, section VIII, subsection (b) of the Bidding Procedures, entitled "Bid Requirements," states that to be a Qualified Bid, a bid cannot be "subject to any future corporate or ***governmental consent or approval.***" (emphasis added). The Bidding Procedures also provide that any bids submitted by the Stalking Horse Purchasers (as well as the agent for the secured lenders (the "Agent")) are Qualified Bids, regardless of the other requirements for submitting a Qualified Bid.

5. Thus, because all bids would by law have to be subject to the filings and waiting period under the HSR Act, but only the Stalking Horse Purchasers and the Agent are permitted to submit bids with such a qualification and still be Qualified Bidders, the Stalking Horse Purchasers and the Agent have an extreme advantage in the bidding process. This provision, if read literally, would probably disqualify all other bids. This is unfair to other

potential bidders and is antithetical to the Debtors' stated goal of having a robust, competitive, value-maximizing bidding process.

6. As such, Nuance respectfully submits that the Bidding Procedures be modified to state explicitly that a bid can still be a Qualified Bid even if it is subject to the filings and applicable waiting periods required by the HSR Act.

### *The Bidding Procedures Provide an Unfair Advantage to the Stalking Horse Purchasers and Discourage Competitive Bidding Because the Stalking Horse Purchasers are not Required to be the Back Up Bidder*

7. Section X of the Bidding Procedures, entitled "The Successful Bid," sets forth the provisions for determining the Successful Bid, and the Back Up Bid. In short, every bidder that submits a Qualified Bid is required to agree to be the Back Up Bidder, in effect tying up its deposit and keeping its offer open for as much as twenty days after the entry of the Sale Order. That is, every bidder **other than the Stalking Horse Purchasers**. Indeed the Bidding Procedures provide that "[i]n no circumstances will Stalking Horse Purchasers be required to be the Back Up Bidder."

8. Nuance respectfully submits that the aforementioned provision in the Bidding Procedures is fundamentally unfair, bestows an unnecessary advantage to the Stalking Horse Purchasers, is likely to chill bidding, and is not beneficial to the Debtors' estates. By allowing the Stalking Horse Purchasers to remain uncommitted, it is possible that the Debtors would be left without a committed purchaser in the event that a bidder other than the Stalking Horse Purchaser ends up as the Successful Bidder and that bidder fails to close. That certainly is not a good result for the Debtors' estates. Recognizing that possibility, the Debtors may be incentivized to select the Stalking Horse Purchasers as the Successful Bidder even if their bid is not the highest bid. It might, in other words, be less risky for the Debtors to select a slightly

lower purchase price from the Stalking Horse Purchasers, knowing that they will have another committed bidder if the Stalking Horse Purchasers fail to close (for example, if the Stalking Horse Purchasers do not secure ample financing), rather than a higher purchase price from another bidder if as a result of selecting the other bidder's bid, the Debtors would not have a committed back-up bidder. Sophisticated potential bidders may decide not to bid as a result of this unfair disadvantage, thereby defeating the purported purpose of the Bidding Procedures, which are supposed to have been designed to encourage competitive bidding and maximize the value of the Debtors' assets.

9. Accordingly, Nuance requests that the Bidding Procedures be modified to require the Stalking Horse Purchasers' bid to be the Back Up Bid, or in the alternative, that the concept of the Back Up Bid be removed from the Bidding Procedures for all potential bidders.

### ***The Break-Up Fee Should be Closely Scrutinized***

10. Nuance submits that a recent decision from the Third Circuit Court of Appeals requires that prior to the approval of any requested break-up fee, the facts and circumstances be closely evaluated to determine if such a break-up fee is truly necessary to preserve the value of the debtor's estate. In re Reliant Energy Channelview LP, __ F.3d __, 2010 U.S. App. LEXIS 956 (3d Cir. January 15, 2010).

11. Nuance believes that there may be considerable interest from other parties for the Debtors' Assets, and that other prospective bidders may participate in the Bidding Procedures approved by this Court even without approval of the break-up fee requested under the Stalking Horse Purchase Agreement. It may be that the Stalking Horse Purchasers would even choose to remain as the stalking horse bidders even without approval of the break-up fee due to the other advantages they receive as a result of being the stalking horse bidders, such as the expense reimbursement and having their agreement be the model that other bidders must mark

up. As such, the Break-Up Fee, which raises the cost to other bidders of bidding and, therefore, necessarily discourages competitive bidding, should be carefully evaluated here to ensure that it satisfies the requirements set forth in <u>Reliant</u>.

WHEREFORE, Nuance respectfully requests that the Court modify the Bidding Procedures, as further set forth in this Limited Objection, and grant all other and further relief that the Court deems just and proper.

Dated: February 16, 2010
      Wilmington, Delaware

*/s/ Ronit Berkovich*
Ronit J. Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Nuance Communications, Inc.*