# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| Spheris Inc., *et al.*, | ) | Case No. 10-10352 (KG) |
|  | ) | (Jointly Administered) |
| Debtors. | ) | Hearing Date: Feb. 23, 2010 at 11 a.m. ET |
|  | ) |  |
|  | ) | [Re: Docket No. 14] |

## SUPPLEMENTAL LIMITED OBJECTION AND RESERVATION OF RIGHTS OF NUANCE COMMUNICATIONS, INC. TO DEBTORS' MOTION FOR ORDERS: (A)(I) APPROVING BID PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS; (II) SCHEDULING HEARING TO CONSIDER SALE OF ASSETS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (B)(I) AUTHORIZING AND APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

Nuance Communications, Inc. ('Nuance') hereby files this supplemental limited

objection to and reservation of rights with respect to the Debtors' Motion for Orders: (A)(I)

Approving Bid Procedures In Connection with Sale of Substantially All of Debtors' Assets; (II)

Scheduling Hearing to Consider Sale of Assets; (III) Approving Form and Manner of Notice

Thereof; and (IV) Approving Break-Up Fee and Expense Reimbursement; (B)(I) Authorizing

and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and

(II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and

(C) Granting Related Relief, dated February 3, 2010 [Docket No. 14] (the "Bidding Procedures

Motion").[1]  In support of its supplemental limited objection and reservation of rights (the "Supplemental Limited Objection"), Nuance respectfully represents:

## Limited Supplemental Objection

1.      Unarguably, the goal of every auction held under section 363 of the Bankruptcy Code is to maximize the value of the debtor's estate by obtaining the highest possible price for the assets pursuant to a properly-fostered, competitive bidding environment.  The best way to do that is with a level playing field that encourages all bidders to continue to bid against each other until the highest price is reached for the asset.  In its initial limited objection [Docket No. 72], Nuance identified several ways in which the proposed bidding procedures (the "Bidding Procedures") provide the stalking horse bidders, CBay and Medquist (together, the "Stalking Horse Purchasers"), unfair advantages that may discourage other bidders and lead to an auction that does not yield the highest price for the estates.  Although Nuance was able to resolve a few of the points in its objection by once again reaching out to the Debtors,[2] through those discussions, Nuance became concerned that the Debtors may end up with an Auction that puts Nuance and

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Bidding Procedures Motion.

[2] In its objection, Nuance indicated that it had reached out to the Debtors to attempt to resolve its objections prior to filing the limited objection with the Court (but the Debtors did not respond), and that it was hopeful to be able to resolve some or all of the objections prior to the hearing on the Bidding Procedures.  Nuance was surprised that the Debtors did not reach out to Nuance to attempt to resolve the objections.  Finally, late Thursday afternoon, on the eve of the originally scheduled hearing, Nuance decided to reach out to the Debtors again to ask if they had developed a response to Nuance's particular objections.  Only then did the Debtors indicate they would make schedules and exhibits to the Stalking Horse Purchasers' purchase agreement available to all bidders and that they would add language to the Bidding Procedures to clarify that bidders would not be disqualified as a result of having to make filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.  The Debtors did not suggest any proposals to resolve Nuance's other objections.

other similarly situated potential bidders at a systemic disadvantage and does not maximize value for the estates.

2.  As the Debtors are aware, Nuance is potentially interested in submitting a bid for substantially all the assets of the Debtors (the "Assets") through the section 363 Auction. Having Nuance participate in the Auction would presumably be beneficial to virtually all parties in interest (other than the Stalking Horse Purchasers), as it may be that Nuance will be the potential bidder that is willing to pay the most value to the estates for the Assets or will submit a bid (or bids) that will lead to additional rounds of bidding and result in a winning bid, perhaps even from the Stalking Horse Purchasers, that is higher than the amount currently proposed by the Stalking Horse Purchasers.

3.  However, the current Bidding Procedures and a certain ambiguity leave open a possibility that Nuance's bid could be the highest and, yet, the Debtors might still reject it. This possibility, however, is easily avoidable. ███████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████



4. ████████████████████████████

████████████████████████████

It becomes clear that this uncertainty could cause the Debtors to leave millions of dollars on the table – dollars that would inure directly to the



benefit of the Debtors' unsecured creditors. It could also leave the Debtors in a position where they have no buyer for their assets – ███████████████████████████

███████████████████████████████████████████████████████

███████████████ The fact that, as Nuance pointed out in its initial objection, under the Bidding Procedures, every bidder must agree to be the Back-Up Bidder – *except the Stalking Horse Purchasers* – exacerbates the dilemma and creates an incentive for the Debtors to favor the bid of the Stalking Horse Purchasers (knowing there will be a back-up bidder) over Nuance's higher bid (given that the Stalking Horse Purchasers would not be the back-up bidder).[4]

5. One would think the Debtors would be motivated to avoid the dilemma of potentially abandoning the opportunity to obtain millions of dollars more for their estates versus potentially being left without any buyer (even though the risk of the latter outcome is not high). However, when Nuance proposed to the Debtors numerous ways to avoid the dilemma, the Debtors were unwilling to pursue any of them. Nuance believes that there will be a more level playing field, a more competitive auction, and, undeniably, a better result for the estates if the ██████ uncertainty was resolved prior to the Auction.

6. Nuance believes this dilemma can be easily avoided through simple clarifications to the proposed order approving the Bidding Procedures (the "Bidding Procedures Order"). Paragraphs 11 and 14 of the Bidding Procedures Order already provide that (A) a non-debtor party to any Executory Contract or Unexpired Lease must file an objection prior to the later of (i) three days prior to the Bid Deadline or (ii) ten days after service of a Supplemental Notice of

---

███████████████████████████████████████████████████████
████████████████████████████

[4] ███████████████████████████████████████████████████████
███████████████████████████████████

Assumption and Assignment (which is a notice that would be provided if the Stalking Horse Purchasers identify additional contracts or leases to be assumed and assigned) (the "Cure/Assignment Objection Deadline") and (B) if the Stalking Horse Purchasers are not the Successful Bidders, non-debtor parties to any Executory Contract or Unexpired Lease can object after the identity of the Successful Bidder is determined "solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code." ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

7.      However, Nuance believes that to ensure certainty to all parties (as well as to avoid prejudice to a non-debtor party to an Executory Contract or Unexpired Lease that may be confused by the current somewhat ambiguous language), the Bidding Procedures Order could, and should, be more explicit on this point. ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ These simple clarifications to the Bidding Procedures Order would resolve the uncertainty surrounding ███████████████ and ensure a competitive Auction.[5]

---

[5] The Debtors have suggested that ██████████████████████████████████
██████████████████████ would not be an assignment covered by paragraph 11 of the Bidding Procedures Order. Nuance does not understand the point, but to the extent that the Debtors believe this point is ambiguous, the Bidding Procedures Order should be clarified to make clear that it does cover such situation.

8.      If the Court does not agree that this uncertainty should be resolved through the changes to the Bidding Procedures Order proposed above, there are other ways for resolving this uncertainty prior to the Auction.  The Court can simply schedule a hearing date prior to the Bid Deadline to consider the substance of the ████ issue.[6]  Alternatively, if parties do not wish to have spent resources having had to decide the issue before the Auction when it may turn out that Nuance ██████████████████████ does not submit the highest bid, then the Court could instead rule now that the Auction proceed in two steps: ████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████ Like the changes proposed in the previous paragraph, these alternative proposals would resolve the uncertainty regarding ██████ and ensure a competitive auction.

9.      There are presumably other creative mechanisms for resolving this issue. Nuance is not wedded to a particular mechanism and, in fact, invited the Debtors to propose an alternate mechanism to resolve the issue if none of the mechanisms suggested by Nuance was acceptable.  Frustratingly, the Debtors declined the invitation.

10.     The Debtors' actions to date (including the Debtors' failure to agree to the Creditors' Committee's reasonable request to adjourn the hearing on the Bidding Procedures for a

---

[6] Nuance believes that the Bidding Procedures Motion and Bidding Procedures Order are sufficient to make this issue ripe for consideration.  However, if a separate filing is needed, the

few days after the committee formation meeting was postponed due to a snowstorm) have given Nuance great concern that the Debtors are single-mindedly focused on consummating a super-quick sale to the Stalking Horse Purchasers and no one else. Presumably, this hasty sale would be the best result for the prepetition secured lenders. If it pays them in full, they would prefer a quick sale as opposed to a sale for higher value. The unsecured creditors presumably have a very different view and expect a sale process that encourages multiple bidders and leads to the highest value for the estates. Nuance recognizes that sometimes in a chapter 11 case, it is important to consummate a section 363 sale in a somewhat accelerated timeframe, but it also knows that fairness and due process must not be abandoned for the sole sake of expediency. Given that, as the Debtors' Sale Motion indicates, the sale process has been going on for months, it cannot be that the need to sell the Assets is so urgent that the Debtors cannot afford a little extra time to ensure that the process yields maximum value for its creditors.

11. As the Debtors certainly understand, the fact that the Stalking Horse Purchasers are the stalking horse *does not mean that the Stalking Horse Bidders will be the ultimate successful bidders*. As such, Nuance expects that the Debtors will not engage in any actions that would either (i) provide the Stalking Horse Purchasers an advantage in the bidding process or (ii) cause the Assets to be worth less in the bidding process if they end up in the hands of someone other than the Stalking Horse Purchasers. Such actions might in fact scare away other bidders and make it a self-fulfilling prophecy that the Stalking Horse Purchasers will be the Successful Bidders. Similarly, the confidentiality agreements other potential bidders are required to execute should not be more restrictive than those signed by the Stalking Horse Purchasers.

---

Debtors or the Creditors' Committee can agree to file such a pleading. If not, Nuance is willing to file the pleading.

12. Nuance reserves all of its rights in the event that the issues described herein are not addressed in a manner that creates a level playing field and ensures an auction that is designed to maximize value for the estates.

WHEREFORE, Nuance respectfully requests that the Court modify the Bidding Procedures, as further set forth in this Supplemental Limited Objection, and grant all other and further relief that the Court deems just and proper.

Dated: February 22, 2010
Wilmington, Delaware

DORSEY & WHITNEY (DELAWARE) LLP

/s/ Eric Lopez Schnabel
Eric Lopez Schnabel (DE #3672)
Robert W. Mallard (DE #4279)
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177

Ronit J. Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Nuance Communications, Inc.*