IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re                                    :   Chapter 11
                                         :
Spheris Inc., et al.,                    :   Case No. 10-10352 (KG)
                                         :
              Debtors.[1]                :   Jointly Administered
                                         :
                                         :   Docket Ref. No. 14
-----------------------------------------------------x
```

## ORDER AUTHORIZING (I) SALE OF CERTAIN OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

Upon the motion, dated February 3, 2010 (the "Motion")[2] of the debtors and

debtors-in-possession in the above-captioned cases (the "Debtors") for, inter alia, entry of an

order under sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy

Code") and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (the "Sale Order") authorizing: (i) the

sale (the "Sale") by the Debtors of the Purchased Assets and Spheris India Capital Stock,

pursuant to and as described in the Stock and Asset Purchase Agreement, dated as of February 2,

2010 (as amended, the "Agreement"), by and among the Debtors, MedQuist, Inc. ("Medquist")

and CBay Inc. ("CBay" and, together with Medquist, the "Purchasers"); (ii) the Debtors'

assumption and assignment to Medquist or a Medquist Designee, as applicable, of the Assumed

Contracts and Leases (as defined below); and (iii) the assumption by Purchasers or a Purchaser

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses:  (i) Spheris Inc. (5254); (ii) Spheris Holding II, Inc. (7969); (iii) Spheris Canada Inc. (9757); (iv) Spheris Leasing LLC (4780); (v) Spheris Operations LLC (1371); and (vi) Vianeta Communications (1121).  The Debtors' executive headquarters are located at 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the Agreement, as the case may be; as to any conflicts with respect to such terms, the meanings contained in the Agreement shall control over the meanings contained in the Motion.

Designee of certain liabilities of the Debtors, pursuant to and as described in the Agreement; and the Court having entered an order on February 23, 2010 [Docket No. 122] (the "Bidding Procedures Order") approving (a) the Bidding Procedures, (b) the form and manner of notice of the Auction, and (c) the form and manner of the notice of the assumption and assignment of executory contracts and unexpired leases; and a hearing on the Motion and the Objection of Multimodal Technologies, Inc. to Assumption and Assignment of Executory Contract and Objection to Cure Amount in Response to Debtor's Notice of Assumption and Assignment of Agreements [Docket No. 200] (the "MModal Objection") having been held on April 12 and 14, 2010 ( the "MModal Hearing") and on April 15, 2010 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the MModal Hearing and the Sale Hearing and these cases; and after due deliberation thereon; and good cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[3]

A.     The findings and conclusions set forth herein and read into the record on April 14, 2010 at the MModal Hearing (the "MModal Findings") constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

DB02:9228759.7                                                                                         068920.1001

B.      The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief sought in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.

D.      As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the MModal Hearing and the Sale Hearing (collectively, the "Hearings"), (i) due, proper, timely, adequate and sufficient notice of the Motion, the Hearings, the Auction, the Sale, and the assumption and assignment of the Assumed Leases and Assumed Contracts (the "Assumed Contracts and Leases") has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 9014, and in substantial compliance with the Bidding Procedures Order, to each party entitled thereto; (ii) such notice was good and sufficient, and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the Hearings, the Auction, the Sale or the assumption and assignment of the Assumed Contracts and Leases is or shall be required.

E.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Hearings, and (ii) the representations of counsel made on the record at the Hearings, the Debtors have marketed the Purchased Assets and Spheris India Capital Stock and conducted the sale process substantially in compliance with the Bidding Procedures Order and the Auction was duly noticed.

3

F.     The Debtors (i) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale by the Debtors has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, (iii) have taken all corporate action necessary to authorize and approve the Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (iv) require no consents or approvals, other than those expressly provided for in the Agreement, to consummate such transactions.

G.     Approval of the Agreement and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

H.     The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the Sale the value of the Debtors' assets will be harmed.

I.     A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) counsel for any statutory committee in these cases; (iii) counsel to the agents for the Debtors' prepetition secured lenders; (iv) counsel to the agents for the Debtors' postpetition secured lenders; (v) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (vi) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vii) all Persons known or reasonably believed to have asserted an Interest on any of the Purchased Assets; (viii) the non-Debtor parties to the Executory Contracts and Unexpired Leases; (ix) all Persons

4

known or reasonably believed to have expressed an interest in acquiring all or substantially all of the Purchased Assets and the Spheris India Capital Stock within the last six months; (x) the Attorneys General in the State(s) where the Purchased Assets are located; (xi) the United States Environmental Protection Agency; and (xii) any applicable state environmental agency.

J.      The Agreement was negotiated, proposed and entered into by the Debtors and Purchasers without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, nor Purchasers, nor any Affiliate of Purchasers have engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code.

K.      Purchasers and Purchaser Designee(s) are good faith purchasers under section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereby.

L.      Purchasers and Purchaser Designee(s) are not "insiders" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

M.      The consideration provided by Purchasers for the Purchased Assets and Spheris India Capital Stock pursuant to the Agreement (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets and Spheris India Capital Stock; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

N.      The Sale must be approved and consummated promptly in order to preserve the value of the Debtors' assets.

DB02:9228759.7

068920.1001

O.      As of the Closing, pursuant and subject to the terms of the Agreement, the transfer of the Purchased Assets and Spheris India Capital Stock to Purchasers (or Purchaser Designee(s), as applicable) will be a legal, valid, enforceable, and effective transfer of the Purchased Assets and Spheris India Capital Stock and will vest Purchasers (or Purchaser Designee(s), as applicable) with all right, title, and interest of the Debtors in the Purchased Assets and Spheris India Capital Stock free and clear of all liens, claims, encumbrances and interests, other than the Permitted Encumbrances (as defined in the Agreement), including, but not limited to: (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or Purchasers' (or Purchaser Designee(s),' as applicable) interest in the Purchased Assets and Spheris India Capital Stock, or any similar rights; (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets and Spheris India Capital Stock prior to the Closing; (iii) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, options, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and (iv) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor

liability ((i) through (iv), collectively (other than only those Permitted Encumbrances (as defined in the Agreement) that are not extinguished by this Order under applicable Law and Assumed Liabilities (as defined in the Agreement)), the "Interests").

P.     Purchasers would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if each of (i) the sale of the Purchased Assets and Spheris India Capital Stock to Purchasers (or Purchaser Designee(s)), and (ii) the assignment of the Assumed Contracts and Leases and the Assumed Liabilities to Medquist (or a Medquist Designee) were not free and clear of all Interests of any kind or nature whatsoever, or if Purchasers would, or in the future could, be liable for any of the Excluded Liabilities.

Q.     The Debtors may sell the Purchased Assets and Spheris India Capital Stock free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Those (i) holders of Interests and (ii) non-debtor parties to Assumed Contracts and Leases who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those (i) holders of Interests and (ii) non-debtor parties to Assumed Contracts and Leases who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the portion of the Purchase Price ultimately attributable to the property against or in which they claim an Interest, in the order of their priority, with the same validity, force and effect which they now have as against such property, subject to any claims and defenses the Debtors may possess with respect thereto.

DB02:9228759.7                                                                                                          068920.1001

R.   Neither of the Purchasers, nor any Purchaser Designee, nor any of their Affiliates is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and neither the Purchasers, nor any Purchaser Designee, nor any of their Affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Agreement.

S.   The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts and Leases to Medquist (or the Medquist Designee(s)), in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts and Leases is in the best interests of the Debtors, their estates, and their creditors.  The Assumed Contracts and Leases and Assumed Liabilities being assigned to Purchasers (or the Purchaser Designee(s)) are an integral part of the Agreement and, accordingly, such assumption and assignment of Assumed Contracts and Leases and Assumed Liabilities are reasonable and enhance the value of the Debtors' estates.

T.   The Debtors have, including by way of entering into the Agreement, and the provisions relating to the Assumed Contracts and Leases therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts and Leases, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts and Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and Purchasers (or the Purchaser Designee(s)) have provided adequate assurance of future performance of and under the Assumed Contracts and Leases, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and Purchaser has

DB02:9228759.7                                                                                                068920.1001

guaranteed the obligations of any Purchaser Designee that has assumed any Assumed Contract and Lease. The Purchaser's promise pursuant to the terms of the Agreement to pay the Cure Amounts and to perform the obligations under the Assumed Contracts and Leases after the Closing shall constitute adequate assurance of its future performance under the Assumed Contracts and Leases being assigned to it within the meanings of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

U.     Approval of the Agreement and assumption and assignment of the Assumed Contracts and Leases and consummation of the Sale of the Purchased Assets and Spheris India Capital Stock at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is granted, as further described herein.

2.     Except with respect to the MModal Objection as set forth below, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits.

### Approval of the Agreement

3.     The Agreement, as amended, and all of the terms and conditions thereof, is hereby approved.

4.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement.

5.     The Debtors are authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments, documents, and agreements that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by Purchasers for the purpose of assigning, transferring, granting, conveying and conferring to Purchasers (or Purchaser Designee(s)) or reducing to possession, the Purchased Assets and Spheris India Capital Stock, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.     This Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, all non-debtor parties to the Assumed Contracts and Leases, all successors and assigns of Purchasers (and the Purchaser Designee(s)), the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code. Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases or the confirmation order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Agreement or this Order.

7.     The Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

**Transfer of Assets**

DB02:9228759.7

068920.1001

8. Except as expressly permitted or otherwise specifically provided for in the Agreement or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Purchased Assets and Spheris India Capital Stock shall be transferred to Purchasers (or Purchaser Designee(s)), free and clear of all Interests of any kind or nature whatsoever with all such Interests of any kind or nature whatsoever to attach to the portion of the Purchase Price ultimately attributable to the Purchased Assets and Spheris India Capital Stock that are subject to such Interests, in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and Spheris India Capital Stock, subject to any claims and defenses the Debtors may possess with respect thereto.

9. Except as expressly permitted or otherwise specifically provided by the Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts, customers, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or the Purchased Assets and Spheris India Capital Stock conveyed as of the date hereof (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets and Spheris India Capital Stock, the operation of the Debtors' business prior to the Closing, or the transfer of the Purchased Assets and Spheris India Capital Stock to Purchasers (or Purchaser Designee(s)), hereby are forever barred, estopped, and permanently enjoined from asserting against Purchasers, Purchaser Designee(s), their successors, designees or assigns, their property, or the Purchased Assets and Spheris India Capital Stock conveyed in accordance with the Agreement, such persons' or entities' Interests.

10.     The transfer of the Purchased Assets and Spheris India Capital Stock to Purchasers (or Purchaser Designee(s)) pursuant to the Agreement shall constitute a legal, valid, and effective transfer of such Purchased Assets and Spheris India Capital Stock on the Closing Date, and shall vest Purchasers (or Purchaser Designee(s)) with all right, title, and interest of the Debtors in and to the Purchased Assets and Spheris India Capital Stock free and clear of all Interests of any kind or nature whatsoever.

11.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests in the Debtors or the Purchased Assets and Spheris India Capital Stock conveyed pursuant to the Agreement shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtors or such Purchased Assets and Spheris India Capital Stock or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets and Spheris India Capital Stock, and (b) Purchasers (or Purchaser Designee(s)) are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets and Spheris India Capital Stock of any kind or nature whatsoever.

**Assumption and Assignment
of Contracts and Leases**

12.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to Medquist (or Medquist Designee(s)), and Medquist's (or Medquist Designee(s)') assumption on the terms set

DB02:9228759.7                                                                      068920.1001

forth in the Agreement, of the Assumed Contracts and Leases are hereby approved, and the requirements of section 365(b)(l) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

13.    The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchasers (or Purchaser Designee(s)), effective upon and subject to the occurrence of the Closing, the Assumed Contracts and Leases free and clear of all Interests of any kind or nature whatsoever, which Assumed Contracts and Leases by operation of this Order, shall be deemed assumed and assigned effective as of the Closing, and (b) execute and deliver to Purchasers (or Purchaser Designee(s)) such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts and Leases and Assumed Liabilities to Purchasers (or Purchaser Designee(s)).

14.    Subject to paragraph 15, the Assumed Contracts and Leases shall be transferred and assigned to, and following the Closing of the Sale, remain in full force and effect for the benefit of, Medquist (or Medquist Designee(s)) in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract and Lease (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts and Leases after such transfer and assignment to Medquist (or Medquist Designee(s)).  Subject to paragraph 15, the Debtors may assume Assumed Contracts and Leases which are executory contracts and unexpired leases of the Debtors in accordance with section 365 of the Bankruptcy Code.  Subject to paragraph 15, the Debtors may assign each Assumed Contract and Lease to Medquist (or Medquist Designee(s)) in accordance with sections 363 and 365 of the Bankruptcy

Code, and any provisions in any Assumed Contract and Lease that prohibit or condition the assignment of such Assumed Contract and Lease or allow the non-debtor party to such Assumed Contract and Lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract and Lease, shall constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment by the Debtors to Medquist (or Medquist Designee(s)) of each Assumed Contract and Lease have been satisfied. Upon Closing, and subject to paragraph 15, in accordance with sections 363 and 365 of the Bankruptcy Code, Medquist (or Medquist Designee(s)) shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract and Lease. Any portion of any Assumed Contract and Lease which purports to permit a landlord thereunder to cancel the remaining term of such Assumed Contract and Lease if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against Purchasers, any Purchaser Designee, its assignees and sublessees; and the landlords under any such Assumed Contract and Lease shall not have the right to cancel or otherwise modify the Assumed Contract and Lease or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assumed Contract and Lease to Medquist (or Medquist Designee(s)), or the interruption of business activities at any of the leased premises.

15.    All defaults or other obligations of the Debtors under the Assumed Contracts and Leases arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed, are deemed satisfied by the Cure

Amounts with respect to each Assumed Contract and Lease in those amounts set forth in the Notice of Debtor's Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases, which was served in substantial compliance with the Bidding Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, by Medquist.

16.     Except as set forth below with respect to MModal Objection, with the exception of the Cure Amounts set forth in the Notice of Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases, or as otherwise reflected in this Order, each non-Debtor party to an Assumed Contract and Lease hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors, any Purchaser or any Purchaser Designee, or the property of any of them, any default existing as of the date of the Sale Hearing; or, against any Purchaser or any Purchaser Designee, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors. Except as provided in the Agreement or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

## Additional Provisions

17.     The consideration provided by Purchasers for the Purchased Assets and Spheris India Capital Stock under the Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

18.    The consideration provided by Purchasers for the Purchased Assets and Spheris India Capital Stock under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

19.    On the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Purchased Assets and Spheris India Capital Stock, if any, as such Interests may have been recorded or may otherwise exist.

20.    This Order (a) shall be effective as a determination that, upon the Closing, all Interests of any kind or nature whatsoever existing as to the Debtors or the Purchased Assets and Spheris India Capital Stock prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets and Spheris India Capital Stock.

21.    Purchasers shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to employees of the Debtors, except as set forth in the Agreement.  Purchasers shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention,

benefit and/or incentive plan to which any Debtors are a party (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and Purchasers shall in no way be deemed a party to or assignee of any such agreement, and no employee of Purchasers shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against Purchasers any and all claims arising from or relating to such agreement.

22.     Any amounts that become payable by the Debtors to Purchasers pursuant to the Agreement (and related agreements executed in connection therewith) (a) shall constitute administrative expenses of the Debtors' estates under sections 503(b) and/or 507(a)(2) of the Bankruptcy Code (to the extent set forth in the Agreement and such related agreements), and (b) shall be paid by the Debtors in the time and manner provided for in the Agreement (and such related agreements) without further Court order.

23.     All non-Debtor entities who are presently, or on the Closing may be, in possession of some or all of the Purchased Assets and Spheris India Capital Stock are hereby directed to surrender possession of the Purchased Assets and Spheris India Capital Stock to Purchasers on the Closing.

24.     Except for the Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the Agreement or this Order, Purchasers shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets and Spheris India Capital Stock or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, Purchasers shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and Purchasers, Purchaser Designee(s), and each of their Affiliates shall have no

successor or vicarious liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing.

25.     Following the Closing, no holder of an Interest in the Debtors or the Purchased Assets and Spheris India Capital Stock shall interfere with Purchasers' title to or use and enjoyment of the Purchased Assets and Spheris India Capital Stock based on or related to such Interest, or any actions that the Debtors may take in their chapter 11 cases.

26.     The net proceeds of the Sale shall be earmarked for and remitted directly by Purchasers to, first, the agents (the "DIP Agents") under the Debtors' debtor in possession credit agreement (the "DIP Financing Agreement") and, then, the agents under the Senior Credit Agreement (the "Prepetition Agents") for and until all obligations under the DIP Financing Agreement and the Senior Credit Agreement have been indefeasibly paid in full in cash; provided, however, that in the event at the time of the Closing of the Sale (after giving effect thereto and to the payments contemplated by the Confidential Settlement Agreement and Release dated as of December 23, 2009 among certain of the Debtors and CHS Community Health Systems Inc., and Community Health Systems Professional Services Corporation (the "Settlement Agreement")) there are insufficient unencumbered assets of the Debtors to satisfy accrued and unpaid Priority Professional Expenses (as defined in the DIP Financing Agreement), there shall be withheld from such net proceeds an amount equal to the difference between (a) the

unencumbered assets available for payment of such accrued and unpaid Priority Professional Expenses, and (b) the aggregate amount of such accrued and unpaid Priority Professional Expenses, subject to the limitations set forth in the order approving the Debtors' entry into, and the terms and conditions of, the DIP Financing Agreement (the "DIP Order"); provided, further, that to the extent that the Committee successfully challenges the validity, perfection or enforceability of the Prepetition Lenders' liens or otherwise obtains a judgment in connection with a cause of action that is brought pursuant to paragraph 15 of the DIP Order pursuant to a final non-appealable order, the Prepetition Agent and Prepetition Lenders shall disgorge any funds paid to it pursuant to this Order to the extent of the amount payable in accordance with such final non-appealable order.

27.     In the event the Sale does not close but Purchasers are required to pay, pursuant to the Agreement, court order or otherwise, the Debtors any amount (whether as a Purchaser Termination Fee (as defined in the Agreement), damages or otherwise), such payment(s) shall be earmarked for and remitted directly by Purchasers to the Prepetition Agents for and until all obligations under the Senior Credit Agreement have been indefeasibly paid in full in cash; provided, however, that in the event at the time such payment(s) are remitted (after giving effect thereto and to the Settlement Agreement) there are insufficient unencumbered assets of the Debtors to satisfy accrued and unpaid Priority Professional Expenses, there shall be withheld from such payment(s) an amount equal to the difference between (a) the unencumbered assets available for payment of such accrued and unpaid Priority Professional Expenses, and (b) the aggregate amount of such accrued and unpaid Priority Professional Expenses, subject to the limitations set forth in the DIP Order; provided, further, that to the extent that the Committee successfully challenges the validity, perfection or enforceability of the Prepetition Lenders' liens

or otherwise obtains a judgment in connection with a cause of action that is brought pursuant to paragraph 15 of the DIP Order pursuant to a final non-appealable order, the Prepetition Agent and Prepetition Lenders shall disgorge any funds paid to it pursuant to this Order to the extent of the amount payable in accordance with such final non-appealable order.

28.     As of the Closing, the Debtors are authorized to change the name of each Debtor to a name that does not include the Purchased Names; provided, however, following the Closing, the Debtors are authorized to include the Purchased Names solely for reference as "f/k/a" in any filings or other correspondence with this Court relating to the above-captioned cases.

29.     Notwithstanding anything in this or any other Order, the MModal *[handwritten: which are incorporated hereto in full by reference]* Objection shall be and hereby is SUSTAINED as set forth in the MModal Findings. Multimodal Technologies ("M*Modal") hereby consents to the assumption and assignment by the Debtors ~~to the Purchasers~~ of that certain Clinical Documentation Solution Agreement (the "M*Modal Agreement"), subject to the terms and conditions of the ~~Agreement~~ *[handwritten: that certain agreement dated March 25, 2010, by and between M*Modal and Medquist]*. The Cure Amount with respect to the M*Modal Agreement is $125,094.39.

30.     With respect to Oracle's Opposition and Rights Reservation to Debtors' Motion For Order: (A)(I) Approving Bid Procedures in Connection with Sale of Substantially All of Debtors' Assets; (II) Scheduling Hearing to Consider Sale of Assets; (III) Approving Form and Manner of Notice Thereof; and (IV) Approving Break-Up Fee and Expense Reimbursement; (B)(I) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief, filed by Oracle America, Inc., successor in interest to Oracle USA, Inc. and Oracle Corporation ("Oracle"),

Oracle and the Debtors have agreed that the Debtors are authorized, subject to compliance with the obligations set forth herein, and the occurrence of the Closing, to assume and assign to the Purchasers that certain Oracle Services Agreement, dated January 12, 2004 (the "SA"), and the related support contracts identified as numbers 2875768, 1859446, 273750, 1779938, 2961916 and 2386427 (collectively, the "Renewal Contracts," and, together with the SA, the "Oracle Contracts"). Subject to the assumption of the SA, if and when it occurs, the Debtors, Oracle and the Purchasers shall execute Oracle Assignment Agreements reflecting these assignments. Further, notwithstanding anything contained in the [Transitional Services Agreement], upon the assignment of the Oracle Contracts to the Purchaser, the Debtors will not be entitled to use the licenses and services provided by the Oracle Agreements. As of the date hereof, the aggregate amount of $42,567.39 was outstanding under the Oracle Contracts and, to the extent not paid prior to the Closing Date, such amount shall be satisfied by the Purchasers promptly after the Closing Date.

31.     In resolution of the letter objection received from Willowbrook Holdings, Inc. ("Willowbrook"), dated, March 31, 2010, the Cure Amount with respect to that certain Sublease Agreement between Willowbrook and Spheris Operations LLC, f/k/a Healthscribe, Inc., is $0.00 and the Debtors agree to promptly pay the $4,292.31 currently owing under the Sublease Agreement.

32.     The Cure Amount with respect to that certain Services Agreement between Sprint and Spheris Operations LLC, dated April 24, 2008, is $100,292.59, which Cure Amount will be paid promptly following the Closing.

33.     The Cure Amount with respect to that certain Health Screening and Support Services Agreement between Healthways Inc. and Spheris Operations LLC is

DB02:9228759.7                                                                                                    068920.1001

$96,757.36 and the Objection of Healthways, Inc. to Notice of Assumption and Assignment of Agreement and Associated Cure Amount, filed on April 13, 2010 [Docket No. 292], is hereby resolved.

34.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets and Spheris India Capital Stock to Purchasers; (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein; (d) interpret, implement, and enforce the provisions of this Order; and (e) protect Purchasers against (i) any of the Excluded Liabilities or (ii) any Interests in the Debtors or the Purchased Assets and Spheris India Capital Stock, of any kind or nature whatsoever.

35.     Notwithstanding Fed. R. Bankr. P. 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any entity obtaining a stay pending appeal, the Debtors and Purchasers are free to close under the Agreement at any time. The transactions contemplated by the Agreement are undertaken by Purchasers and Purchaser Designee(s) in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to Purchasers and Purchaser Designee(s) (including the assumption and assignment of any of the Assumed Contracts and Leases), unless such authorization is duly stayed pending such appeal. Purchasers and Purchaser Designee(s) are purchasers in good faith of the Purchased Assets and

DB02:9228759.7                                                                           068920.1001

Spheris India Capital Stock, and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

36.     The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, Purchasers, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Purchased Assets and Spheris India Capital Stock to be sold to Purchasers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

37.     To the extent of any conflict between the Agreement and this Order, the terms and provisions of this Order shall govern.

38.     The Debtors, on the one hand, and Spheris Holding III, Inc. ("Holding III"), on the other hand, agree that any and all U.S. federal or state income taxes arising from the Sale that would be entitled to administrative expense priority under section 503 of the Bankruptcy Code and for which Holding III would be liable solely as a result of being a part of any consolidated U.S. federal income tax group or similar combined, consolidated or unitary state income or franchise tax group ("Sale Income Taxes"), will be satisfied by the Debtors from the proceeds of the Sale. *After giving effect to the payments required to be made pursuant to paragraphs 26 and 27 hereof,* Any such Sale Income Taxes shall be funded and paid pursuant to the terms of that certain Tax Sharing Agreement, dated as of November 5, 2004 by and among Holding III and the Debtors (the "Tax Sharing Agreement"). In addition, notwithstanding anything in the Tax Sharing Agreement to the contrary, the Debtors and Holding III agree that the Debtors shall be entitled to the benefit of any and all tax refunds, credits, deductions, losses, loss carryovers and other tax attributes (collectively, "Tax Attributes") of Holding III or any

*, or as otherwise agreed to by the Debtors and Holding III, the Committee, if all other existing terms of the Tax Sharing Agreement are satisfied*

DB02:9228759.7                                                           068920.1001

member of a consolidated, combined, unitary or similar group of which the Debtors are a part for purposes of calculating the Debtors' liability with respect to any Sale Income Taxes or otherwise. Notwithstanding anything in the Tax Sharing Agreement to the contrary, Holding III further agrees that if it receives any tax refund or other payment in respect of any Tax Attribute *attributable to the Debtors* from any tax authority, it shall hold such refund or payment in trust for the Debtors, and it shall pay over the full amount of any such refund or other payment to the Debtors within 10 days of receipt.

39.     The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

Dated: Wilmington, Delaware
        April 15, 2010

_Kevin Gross_
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

DB02:9228759.7                                                        068920.1001