IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SP Wind Down Inc., f/k/a Spheris Inc., et al.,[1] | Case No. 10-10352 (KG) <br> Jointly Administered |
| Debtors. | Objection Deadline: June 1, 2010 at 4:00 p.m. <br> Hearing Date: June 8, 2010 at 11:00 a.m. |

### DEBTORS' MOTION FOR ORDER, PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE (I) APPROVING PRIVATE SALE BY SP WIND DOWN INC. (F/K/A SPHERIS INC.) OF SUBORDINATED PROMISSORY NOTE; (II) AUTHORIZING DEBTORS' ENTRY INTO RELATED NOTE PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), through their undersigned counsel, submit this motion (the "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order: (i) authorizing the private sale to Riva Ridge Master Fund, Ltd. and Mariner LDC (together, the "Purchasers") of that certain Subordinated Promissory Note (the "Subordinated Note") entered into between SP Wind Down, Inc. (f/k/a Spheris Inc.) ("SP Wind Down") and MedQuist Transcriptions Ltd. ("Medquist"), dated April 22, 2010 (annexed hereto as Exhibit A, the "Subordinated Note"), free of liens, claims and encumbrances and pursuant to

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) SP Wind Down Inc., f/k/a/ Spheris Inc. (5254); (ii) SP Wind Down Holding II, Inc., f/k/a Spheris Holding II, Inc. (7969); (iii) SP Wind Down Canada Inc., f/k/a Spheris Canada Inc. (9757); (iv) SP Wind Down Leasing LLC, f/k/a Spheris Leasing LLC (4780); (v) SP Wind Down Operations LLC, f/k/a Spheris Operations LLC (1371); and (vi) VN Wind Down Communications, f/k/a Vianeta Communications (1121). The Debtors' executive headquarters are located at 9009 Carothers Parkway, Suite C-3, Franklin, Tennessee 37067.

that certain Subordinated Note Purchase Commitment Letter (annexed hereto as <u>Exhibit B</u>, the "<u>Commitment Letter</u>"); (ii) authorizing the Debtors' entry into a Subordinated Note Purchase Agreement related to the sale of the Subordinated Note (the "<u>Purchase Agreement</u>"); and (iii) granting related relief. In support of this Motion, the Debtors respectfully represent:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004 and 9014.

## BACKGROUND

2. On February 3, 2010 (the "<u>Petition Date</u>"), SP Wind Down and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. By order dated February 4, 2010, these chapter 11 cases have been consolidated for procedural purposes only.

4. On February 17, 2010, the Office of the United States Trustee for the District of Delaware (the "<u>United States Trustee</u>") appointed an official committee of unsecured creditors (the "<u>Committee</u>"). As of the date hereof, no request has been made for the appointment of a trustee or examiner.

5. On April 22, 2010, the Debtors consummated the sale of substantially all of their assets to Medquist, Inc. and CBay Inc. (together, "<u>CBay/Medquist</u>"). As part of

consideration provided by CBay/Medquist for such assets, Medquist issued the Subordinated Note to SP Wind Down.

## SUMMARY OF RELIEF REQUESTED

6. By this Motion, the Debtors request, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014, entry of an order approving the sale of the Subordinated Note to the Purchasers, pursuant to the Commitment Letter and the Purchase Agreement. Selling the Subordinated Note now will enhance the certainty that the Subordinated Note will be monetized, and will allow the Debtors to provide distributions to their creditors in the near term.

A.  Summary of Terms of the Subordinated Note[2]

7. The original principal amount of the Subordinated Note is $17.5 million, and the term of the Subordinated Note is five years. Payments of interest on the Subordinated Note are to be made semi-annually, at the following rates: (i) from the Closing Date through six months following the Closing Date, 8.00% per annum; (ii) from six months following the Closing Date through nine months following the Closing Date, 9.00% per annum; and (iii) from nine months following the Closing Date through the rest of the term, 12.50% per annum (up to 2.5% of which may be paid by increasing the principal amount of the Subordinated Note in accordance with applicable provisions thereof).

8. The Subordinated Note is subordinate to the obligations, indebtedness and liabilities as set forth in that certain credit agreement, entered into by and among Medquist,

---

[2] This section contains a summary of certain of the material terms set forth in the Subordinated Note. Capitalized terms used but not defined in this section have the meanings given to them in the Subordinated Note. To the extent that this summary differs in any way from the terms set forth in the Subordinated Note, the terms of the Subordinated Note shall control.

MedQuist, Inc. and certain other lenders, and General Electric Capital Corporation as administrative agent and collateral agent, dated as of April 22, 2010.

9. The Subordinated Note is prepayable at Medquist's option, with prepayment applied first to accrued interest and unpaid interest, and second to remaining payments of the principal amount, in accordance with certain applicable percentage rates depending on when prepayment is made. Specifically, Medquist can prepay the Subordinated Note in full for 77.5% of the outstanding principal amount prior to the date that is six months after the Closing Date (the "Initial Prepayment Price"). Medquist would continue to be able to prepay the Subordinated Note at less than par of the outstanding principal amount through one year after the Closing Date.

B. The Commitment Letter[3]

10. The Commitment Letter confirms the commitment of the Purchasers to purchase the Subordinated Note from SP Wind Down for the aggregate purchase price (the "Purchase Price") set forth on that certain Pricing Letter, dated May 4, 2010, between Spheris and the Purchasers (as annexed hereto as Exhibit C, the "Pricing Letter"), subject to certain conditions.[4]

11. The Commitment Letter provides, among other things, that unless the sale of the Subordinated Note is consummated by June 11, 2010, the Purchasers' obligations under the Commitment Letter shall automatically terminate. Additionally, the Commitment Letter

---

[3] This section contains a summary of certain of the material terms set forth in the Commitment Letter. Capitalized terms used but not defined in this section have the meanings given to them in the Commitment Letter. To the extent that this summary differs in any way from the terms set forth in the Commitment Letter, the terms of the Commitment Letter shall control.

[4] The Debtors have concurrently filed a motion requesting authority to file the Pricing Letter under seal, as SP Wind Down has agreed to use reasonable best efforts to keep the Pricing Letter confidential, which agreement the Purchasers sought as an integral component of the Sale. See Commitment Letter, § 7.

requires that SP Wind Down not sell the Subordinated Note to any other party until the Commitment Letter is terminated. Lastly, the Purchasers have required that the Pricing Letter be kept confidential, and SP Wind Down has agreed to use reasonable best efforts to maintain the confidentiality of the Pricing Letter.

12. The parties are currently working on the Purchase Agreement which will embody the terms of the Commitment Letter, and will file such Note Purchase Agreement with this Court prior to the hearing to consider this Motion.

## AUTHORITY FOR REQUESTED RELIEF

A. The Private Sale of the Subordinated Note is Within the Sound Business Judgment of the Debtors and Should be Approved

13. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

14. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business:

(a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) that the sale was negotiated in good faith. Abbotts Dairies, 788 F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

15. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a) of the Bankruptcy Code, a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

16. The Debtors submit that ample business justification exists to sell the Subordinated Note to the Purchasers, thereby satisfying the first prong of <u>Abbotts Dairies</u>. By selling the Subordinated Note now, the Debtors will immediately realize millions of dollars in cash, rather than receiving payments in semi-annual installments over the 5-year term of the Subordinated Note. The Debtors intend to distribute their assets to creditors pursuant to a liquidating plan of reorganization. The immediate monetization of the Subordinated Note will allow the Debtors' creditors to receive cash distributions under such plan, rather than interests in the Subordinated Note that would yield smaller payments over time. Accordingly, the proposed sale of the Subordinated Note is well-supported by the Debtors' business judgment.

17. Furthermore, Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code. <u>See, e.g.</u>, <u>In re Loral Space & Communications Ltd., et al.</u>, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Sep. 30, 2005); <u>In re International Wire Group, Inc., et al.</u>, Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. June 10, 2004); <u>Palermo v. Pritam Realty, Inc. (In re Pritam Realty, Inc.)</u>, 233 B.R. 619 (D.P.R. 1999) (upholding bankruptcy court approval of private sale); <u>In re Wieboldt Stores, Inc.</u>, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); <u>In re Condere Corp.</u>, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving private sale of chapter 11 debtor's assets when section 363(b) standards are met). In this case, the Debtors submit that the decision to proceed with the sale of the Subordinated Note to the Purchasers is based upon sound business judgment and should be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is

"simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

18. The Debtors and Committee determined that a prompt sale of the Subordinated Note will inure to the benefit of unsecured creditors, by allowing distributions to be made in cash in the near term. Indeed, in negotiations with Medquist, the Committee insisted on certain terms of the Subordinated Note that would encourage Medquist to prepay such security — the private sale of the Subordinated Note will achieve and exceed the Committee's objective. To that end, the Committee's financial advisors solicited interest from seven hedge funds and investors in distressed securities. Because of the distinctive nature of the Subordinated Note, the parties focused their sale efforts on credit-oriented funds with experience and interest investing and valuing a unique, illiquid security. Three bids were received for the acquisition of the Subordinated Note; the Purchasers offered the highest bid. Accordingly, the Committee and Debtors determined that it would be in the best interests of the estates and creditors to seek authority to sell the Subordinated Note to the Purchasers. Subsequently, the Debtors, the Committee and the Purchasers engaged in arms length and good-faith negotiation regarding the terms of the Commitment Letter.

19. The terms and conditions of the proposed sale transaction are fair and reasonable, and the consideration to be received by the Debtors is fair and reasonable. As described above and in the Pricing Letter, the Debtors will receive a significant sum in cash, in

exchange for the Subordinated Note, rather than be subject to the 5-year term of the Subordinated Note, as well as the other terms thereof, and the intrinsic risks that accompany a long-term debt instrument. Moreover, because of the unique and illiquid nature of the Subordinated Note, there is very little, if anything, to be gained by conducting a formal auction. Even if there were other entities willing and able to increase the anticipated offers for the Subordinated Note, which the Debtors believe to be unlikely, the delay, uncertainty and added administrative expenses attendant to the auction process would be unfavorable to the Debtors, their estates and creditors. Accordingly, the terms of the Commitment Letter and the consideration to be received in exchange for the Subordinated Note are fair and reasonable and support the Debtors' decision to sell the Subordinated Note to the Purchasers.

B.  **The Debtors Will Provide Reasonable and Adequate Notice of the Sale to Interested Parties.**

20. With respect to reasonable and adequate notice, the Debtors are serving the Motion on twenty (20) days notice, as required by Fed. R. Bankr. P. 2002(a), upon those parties requesting notice in these cases. Moreover, the Debtors have provided adequate and reasonable notice of the terms and conditions of the Subordinated Note and the Commitment Letter herein. Furthermore, the Note Purchase Agreement will be filed prior to a hearing on this Motion. See Delaware & Hudson Ry., 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement). Accordingly, the Debtors submit that interested parties will have received reasonable and adequate notice of the sale transaction proposed herein.

YCST01:9662292.4                    068920.1001

C. The Proposed Sale is Proposed in "Good Faith"
   Under Section 363(m) of the Bankruptcy Code

21. The Debtors request that the Court find that the Purchasers are entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Subordinated Note.

22. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

23. Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the Sale is reversed on appeal. By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets.

24. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" Abbotts Dairies, 788 F.2d at 147. To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." Id. (citing In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)). See also In re Bedford Springs Hotel, Inc., 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); In re Perona Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." In re Pisces

10

Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

25. Here, the proposed sale of the Subordinated Note to the Purchasers is in good faith. As discussed herein, the proposed sale is the result of the Debtors' and Committee's efforts to find a viable purchaser for the Subordinated Note, in order to monetize such asset expediently, so that distributions could be made sooner (and with less administrative costs) to creditors. Neither Purchaser is an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arms length, good faith basis. Moreover, there is no evidence of fraud or collusion in terms of the proposed Sale. Under the circumstances, the Purchasers should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

D. The Proposed Sale of the Subordinated Note Satisfies the Requirements of Section 363(f) of the Bankruptcy Code

26. Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims, or interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the

subsections is met). Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). See, e.g., In re Trans World Airlines, Inc., 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). The Debtors submit that approval of the proposed sale of the Subordinated Note free and clear of liens, claims and encumbrances is appropriate, because they would be able to satisfy one or more of the requirements of section 363(f) with respect to any such lien, claim or encumbrance.[5] To the extent required, the Debtors will make such demonstration at the hearing to consider the Motion. Accordingly, approving the sale of the Subordinated Note to the Purchasers free and clear of all liens, claims and encumbrances is warranted.

E.     Relief from the Fourteen-Day Waiting Period Under Bankruptcy Rules 6004(h) is Appropriate

27.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors request that the proposed order be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rule 6004(h) be waived.

---

[5] MedQuist, Inc. has asserted that the Debtors owe it approximately $940,000 for failure to make certain payments to Spheris India Private Limited prior to the closing of the sale of substantially all of the Debtors' assets (the "Spheris India Claim"). MedQuist, Inc. has reserved its right, if any, to offset the Spheris India Claim against the redemption value of the Subordinated Note. The Debtors dispute any liability with respect to the Spheris India Claim and submit that even if such claim were valid — which it is not — the Subordinated Note can be sold free and clear of all liens, claims, defenses, rights of setoff, reductions and encumbrances, including, without limitation, the Spheris India Claim. Therefore, the Subordinated Note should be sold free and clear of all liens, claims, defenses, rights of setoff, reductions and encumbrances, including any right of MedQuist, Inc. to offset the Spheris India Claim, or any other claim, it may hold against the Debtors against the Subordinated Note.

28.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Subordinated Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Subordinated Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, Collier on Bankruptcy suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

29.     Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

30.     Notice of this Motion will be given to: (a) the United States Trustee; (b) counsel to the agent for the lenders under the Debtors' senior secured credit agreement; (c) counsel to the indenture trustee for the Debtors' subordinated notes; (d) counsel to the Committee; (e) counsel to CBay/Medquist; (f) counsel to the Purchasers; (g) all parties that have expressed a *bona fide* interest in purchasing the Subordinated Note; and (h) those parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof. The Debtors submit that, under the circumstances, no other or further notice is required.

31.     No previous request for the relief sought herein has been made to this or to any other Court.

YCST01:9662292.4                    068920.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the proposed order, substantially in the form attached hereto as <u>Exhibit D</u>, and such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      May 18, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Maris Finnegan*

Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
Maris J. Finnegan (No. 5294)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WILLKIE FARR & GALLAGHER LLP
Terence K. McLaughlin
Shaunna D. Jones
Elizabeth K. Horowitz
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel to the Debtors
and Debtors in Possession*